# EXHIBIT 3

Defendants' Motion to Dismiss
*League of Conservation Voters v. Trump*
No. 3:17-cv-00101-SLG

H.R. REP. 83-413, H.R. Rep. No. 413, 83RD Cong., 1ST Sess.
1953, 1953 U.S.C.C.A.N. 2177, 1953 WL 3152 (Leg.Hist.)
**\*2177** P.L. 83-212, OUTER CONTINENTAL SHELF LANDS ACT
Senate Report No. 83-411,
June 15, 1953 (To accompany S. 1901)
House Report No. 83-413,
May 12, 1953 (To accompany H.R. 5134)
Conference Report No. 83-1031,
July 19, 1953 (To accompany H.R. 5134)

The House bill was passed in lieu of the Senate bill and the House Report is more comprehensive than the Senate report. The Conference Report, also set out, outlines changes in the bill accepted by the Conference.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

House Report No. 83-413

May 12, 1953

THE Committee on the Judiciary, to whom was referred to the bill (H.R. 5134) to amend the Submerged Lands Act, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

LEGISLATIVE HISTORY OF H.R. 5134

The provisions contained in H.R. 5134 are substantially identical with the provisions of title III in the bill H.R. 4198 as it originally passed the House on April 1, 1953. These provisions had been considered by the Committee on the Judiciary during the course of its hearings and executive sessions on over 40 bills dealing with the overall question of the submerged lands.

When the bill, H.R. 4198, was considered by the Senate, it was amended by striking out all after the enacting clause and inserting new provisions which were similar to those contained in titles I and II of the House version. The Senate amendment, however, omitted title III.

H.R. 4198 is cited as the Submerged Lands Act and contains two titles. Title I contains the basic definitions of various terms used throughout the bill. Title II deals with the rights and claims by the States to the lands and resources beneath navigable waters within State boundaries.

Title III as contained in the bill, H.R. 4198, as it passed the House, dealt with the seabed and the natural resources therein of the outer Continental Shelf seaward and beyond State boundaries and recognizes that that area and the resources therein appertain to the United States and are subject to its jurisdiction and control. These same provisions are now contained in this bill, H.R. 5134.

PURPOSE OF THE BILL

The purpose of H.R. 5134 is to amend the Submerged Lands Act in order that the area in the outer Continental Shelf beyond boundaries of the States may be leased and developed by the Federal Government. At the present time the Submerged Lands Act merely established that the seabed and subsoil in the outer Continental Shelf beyond State boundaries appertained in the United States and was subject to its jurisdiction and control.

© 2017 Thomson Reuters. No claim to original U.S. Government Works.   1

**\*2178** There are no provisions for the leasing and development of the area by the Federal Government nor are provisions made for the exchange of States leases for Federal leases in the same area.

This bill contains provisions to accomplish those very objectives.

## OUTER CONTINENTAL SHELF OUTSIDE STATE BOUNDARIES

### What is the Continental Shelf?

Continental shelves have been defined as those slightly submerged portions of the continents that surround all the continental areas of the earth. They are a part of the same continental mass that forms the lands above water. They are that part of the continent temporarily (measured in geological time) overlapped by the oceans. The outer boundary of each shelf is marked by a sharp increase in the slope of the sea floor. It is the point where the continental mass drops off steeply toward the ocean deeps. Generally, this abrupt drop occurs where the water reaches a depth of 100 fathoms or 600 feet, and, for convenience, this depth is used as a rule of thumb in defining the outer limits of the shelf.

Along the Atlantic coast, the maximum distance from the shore to the outer edge of the shelf is 250 miles and the average distance is about 70 miles. In the Gulf of Mexico, the maximum distance is 200 miles and the average is about 93 miles. The total area of the shelf off the United States is estimated to contain about 290,000 square miles, or an area larger than New York, New Jersey, Pennsylvania, Ohio, Indiana, Illinois, and Kentucky combined. The area of the shelf off Alaska is estimated to contain 600,000 square miles, an area almost as large as Alaska itself.

That part of the shelf which lies within historic State boundaries, or 3 miles in most cases, is estimated to contain about 27,000 square miles or less than 10 percent of the total area of the shelf. The principal purpose of title III is to authorize the leasing by the Federal Government of the remaining 90 percent of the shelf.

### Necessity for legislation

Representatives of the Federal departments, the States, and the off-shore operators all urged the importance and necessity for the enactment of legislation enabling the Federal Government to lease for oil and gas operations the vast areas of the Continental Shelf outside of State boundaries. They were unanimously of the opinion, in which this committee agrees, that no law now exists whereby the Federal Government can lease those submerged lands, the development and operation of which are vital to our national economy and security. It is, therefore, the duty of the Congress to enact promptly a leasing policy for the purpose of encouraging the discovery and development of the oil potential of the Continental Shelf.

The committee is also of the opinion that legislative action is necessary in order to confirm and give validity to Presidential Proclamation 2667 of September 8, 1945, wherein the President, by Executive declaration asserted, in behalf of the United States, jurisdiction, control, and power of disposition over the natural resources of the subsoil and seabed of the Continental Shelf. Many other nations have made assertions to a similar effect with respect to their continental shelves, and the committee believes it proper and necessary that the Congress make such an assertion in behalf of the United States.

**\*2179** H.R. 5134 does not vest in the States the power to take or dispose of the natural resources of the parts of the Continental Shelf outside the original boundaries of the States. That power is vested by H.R. 4198 in the Secretary of the Interior even though some States have extended their boundaries as far as the outer edge of the shelf. Section 9(a) of H.R. 5134 asserts as against the other nations of the world the claim of the United States to the natural resources in the Continental Shelf. This Nation's claim to the natural resources was strengthened by the earlier action of some of the States

in leasing, and consequently bringing about the actual use and occupancy of the Continental Shelf. The benefits flowing to the United States from such State action was recognized by the Supreme Court in the Louisiana case, for it said:

So far as the issues presented here are concerned, Louisiana's enlargement of her boundary emphasizes the strength of the claim of the United States to this part of the ocean and the resources of the soil under that area, including oil.

Under the provisions of section 9(a), the Secretary of the Interior is given discretionary power to administer the provisions of this title and to adopt such regulations as are not inconsistent with Federal law for the entire area.

## ANALYSIS OF THE BILL

Section 1 of the bill, H.R. 5134, amends section 2 of the Submerged Lands Act by adding thereto four new paragraphs. Subsection (i) defines the term 'outer Continental Shelf' as those submerged lands which lie outside of seaward of lands beneath navigable waters as defined in section 2 of that act, and of which the subsoil and natural resources appertain to the United States. The term 'Secretary' is defined as the Secretary of the Interior. The term 'lease ' is also defined, as is also the term 'Mineral Leasing Act.'

The above terms are added to section 2 of the Submerged Lands Act since they refer exclusively to the area in the outer Continental Shelf beyond State boundaries.

Section 2 of the bill further amends the Submerged Lands Act by striking out therefrom sections 9, 10, and 11. Section 9 of the Submerged Lands Act constitutes a legislative confirmation of jurisdiction over the natural resources of the seabed and subsoil of the Continental Shelf seaward of the original State boundaries, which was asserted in the Presidential proclamation of 1945. The need for this section is obviated by the addition of title III which deals specifically with the same area, particularly with regard to the new matter set forth in section 9(a) of the bill H.R. 5134. Section 10 of the Submerged Lands Act is also made unnecessary by the new matter being added to the Act as specifically contained in section 19.

The provisions of section 11 which is stricken from the Submerged Lands Act by this bill are exactly the same as contained in section 21 of H.R. 5134. In this regard the bill merely transposes the section from one title to another title and is a clarifying amendment to that extent.

Title III relates solely to the outer Continental Shelf outside of State boundaries.

**\*2180** Section 9(a) constitutes a legislative confirmation of the jurisdiction of the United States over the natural resources of the subsoil and seabed of the outer Continental Shelf outside State boundaries. It makes applicable to that area Federal laws and authorizes the Secretary of the Interior to administer the provisions of this title and to adopt such rules and regulations as are not inconsistent with Federal laws to apply therein.

The Secretary of the Interior is also given the discretionary power to adopt the laws of coastal States, if the State so provides, to be applicable to that portion of the area which would be within the boundaries of the State should such boundaries be extended seaward to the outer margin of the Continental Shelf. In this regard, the Secretary determines and publishes the lines limiting each such area.

Provision is made, however, that State taxation laws cannot apply in these areas. But provision is made for reimbursement of abutting States for the reasonable cost of the administration of such laws.

The further provision is made that this act should be construed so that the character of these waters above the shelf as high seas and the right of free navigation and navigational servitude shall not be affected. Under subsection (b),

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 3

provision is made that the oil and gas deposits in the area should be controlled and disposed of in accordance with the provisions of this act.

Section 10 provides for the leasing of the outer Continental Shelf area. Under subsection (a) the Secretary of the Interior may, when there is a demand for the purchase of leases, offer for sale on competitive sealed bidding oil and gas leases on the unleased areas of the outer Continental Shelf. The sale of the leases are to be made to the responsible and qualified bidder bidding the highest cash bonuses per leasing unit. Thirty-day notice of sale is to be given by the Secretary which shall describe the tract to be leased, the minimum bonus per acre acceptable for each leasing unit, the amount of royalty, the rental per acre per annum, and the time and place for opening the bids in public.

Subsection (b) requires the leasing units to be reasonably compact in form and to contain not more than 640 acres if located within the known geologic structure of a producing oil or gas field, and not more than 2,560 acres if outside a known geologic structure of a producing oil or gas field.

Subsection (c) fixes the term of the lease as a primary term of 5 years which shall continue so long thereafter as oil or gas it produced in paying quantities therefrom. Further provision is made that each lease shall contain a provision requiring the exercise of reasonable diligence in the operation of the lease and to conduct his operations in a sound and efficient oilfield practice so as to prevent waste therein.

Subsection (d) provides that on or after the discovery of gas or oil, the royalty shall be fixed at a minimum of 12 1/2 percent in the amount or value of the production saved, removed, or sold from the leasing unit, and in any event a minimum of $1 per acre per annum in lieu of rental for each lease year commencing after discovery, in addition to any taxes imposed by Congress. It further imposes conditions for operations under the lease with regard to the renewal of drilling operations and the payments due thereunder.

*2181 Subsection (e) provides that if at the end of the primary term oil or gas is not being produced in paying quantities on the leasing unit and drilling operations are started not less than 180 days before the end of the primary term, and such operations have been and are being diligently prosecuted, and all other obligations have been performed by the lessee, the lease shall remain in force so long as these conditions are continued.

Under subsection (f) provision is made for the cancellation of any lease for the failure to comply with the provisions of this title. It requires the Secretary to give the lessee 20 days notice by registered mail at his last known address of the claim defaults. If, at the end of that period, the defaults are not cured, the Secretary may proceed to cancel the lease, and the person complaining may have such action reviewed in the United States District Court for the District of Columbia. These provisions would cover a situation where the lease or any interest therein is owned or controlled directly or indirectly in violation of any of the provisions of this act, and a person so owning or controlling can be compelled to dispose of such interest in appropriate court or proceeding.

Under subsection (g) nine provisions of the Federal Mineral Leasing Act are made applicable insofar as they are not inconsistent with the terms of this act.

Under subsection (h) the Secretary of the Interior is authorized to use his discretion regarding the use of facilities available in adjacent States and their leasing agencies. It is further provided that a lease may contain such of the terms and provisions as are consistent with the provisions of the act which the Secretary may prescribe. The Secretary of the Interior is also empowered to delegate his authority herein to officers and employees of the Department of the Interior, and he may authorize subdelegation to the extent he deems proper.

Under subsection (i) the Secretary of the Interior may deny an application for a lease should it appear that any interest therein would be owned or controlled by the citizen of another country wherein a similar privilege is denied to citizens

or corporations of this country. If such a condition arises after the granting of a lease, it may be canceled, but in no event can it be held for more than 2 years should such interest have been acquired by design, will, judgment, or decree. Provision is also made that such lands cannot be leased in any way that violates the antitrust laws.

Subsection (j) permits the Secretary to invalidate any lease obtained by fraud or misrepresentation subject to the right of judicial review.

Section II of this title deals with the exchange of existing States leases in the outer Continental Shelf for Federal leases. The committee is of the opinion that the holders of these State leases are entitled as a matter of equity and right to the issuance by the Federal Government of exchange leases for the State leases in accordance with the provisions set forth herein.

Under subsection (a), the Secretary is authorized and directed to issue a lease in exchange for a lease covering lands in these areas which was issued prior to December 21, 1948, and would have been in force and effect on June 5, 1950, had the issuing State such paramount rights and dominion over the areas as it had assumed when it issued the lease. Such an exchange lease shall be from the effective date thereof for a term equal to **\*2182** the unexpired term. Provision is made that the leases shall be in accordance with the terms and provisions except as modified in regard to the payment of additional royalties as later set forth. Provision is made that if oil and gas was not being produced under the old lease on or before December 11, 1950, the new lease shall be for a term from the effective date hereof equal to the term remaining unexpired on December 11, 1950, under the terms and conditions of the old lease and it shall cover the same resources and same portion of the area as the old lease and shall provide for payment to the United States of the same rentals, royalties, and other payments as set forth in the old lease. However, a sum may be charged as an additional royalty equal to any severance tax charged by an abutting State in addition to any taxes imposed by Congress. These leases may also contain such other terms and provisions as the Secretary may prescribe so long as they are consistent with the terms of this act. If fraud or misrepresentation was involved in a lease it shall not be accepted for exchange. Refusal on the part of the Secretary to so exchange the lease is subject to judicial review in the United States District Court for the District of Columbia.

Subsection (b) provides that no exchange lease shall issue unless (1) the application, accompanied by a copy of the old lease, is filed with the Secretary of the Interior within 6 months from the effective date of this act or as later provided in section 18 hereof or as the Secretary may fix from time to time; (2) the applicant must state that the lease applied for shall be subject to the same royalty obligations as the lease issued by the State in addition to any taxes imposed by Congress; (3) the applicant pays the United States all rentals, royalties, and other sums payable after June 5, 1950, which have not been paid to the lessor or to the Secretary of the Interior under the old lease; (4) furnishes surety bond as the Secretary may require and complies with such reasonable requirements as the Secretary deems necessary to protect the interest of the United States; and (5) files with the Secretary a certificate issued by the State official or agency having jurisdiction which shows that the old lease was in force and effect in accordance with its terms and provisions in the law of the issuing State on the applicable date as set forth in subsection (a) of this section. In the absence of such certificate the applicant may file other evidence setting forth such facts.

Subsection (c) provides that where a lease overlaps the areas under State control and those in the outer Continental Shelf beyond State boundaries, the provisions of this section shall be applicable only to the lease insofar as it covers the lands of the outer Continental Shelf.

Section 12 provides that all rentals, royalties, and other sums payable under any lease on the outer Continental Shelf from the period of June 5, 1950, to date and thereafter shall be deposited in the Treasury of the United States.

Section 13 merely provides for the jurisdiction and venue in a United States district court in legal proceedings involving a lease or the rights thereunder in the outer Continental Shelf.

Section 14 authorizes refunds to be paid when the Secretary determines that an excess of the amount lawfully required to be paid has been paid. Such request for repayments must be filed within 2 years after the issuance of the lease or the making of the payment.

**\*2183** Section 15 provides a waiver of liability for a State or its political subdivision for past operations in the outer Continental Shelf prior to June 5, 1950. It is the opinion of the committee that under this section the waiver is limited to proprietary claims of the United States in these areas, but in no case shall the waivers be effective if it is determined that fraud has been practiced in obtaining or operating under the lease.

Section 16 deals with the powers reserved to the United States. Subsection (a) provides that in time of war or for necessary national defense, or when so prescribed by Congress or the President, the United States retains in addition to all other rights it may have under the law, the right of first refusal to buy any of the oil or gas being produced from the area, to terminate any lease or to suspend operations under any lease, in which event the United States shall become the owner of the wells, fixtures, and improvements located in the area for which it shall pay just compensation. In the event operations are suspended under any lease, the United States shall be liable for such compensation as it must pay under the Constitution of the United States. Also, the payment of rentals and royalties, shall likewise be suspended during any period wherein operations are suspended and the term of the suspended lease shall be extended by adding to it any suspension period. Subsection (b) provides that the Secretary of Defense, with the approval of the President, shall have the power to prohibit any operations in those areas of the shelf which are needed for navigational purposes, or for the purpose of national defense. Subsection (c) provides for the retention of the ownership and the right to extract helium from all gas produced on the outer Continental Shelf under such rules and regulations as prescribed by the Secretary.

Section 17 relates to the exploration of the area and recognizes the right of any person, subject to applicable provisions of law, as well as any agency of the United States to conduct geological or geophysical explorations in the outer Continental Shelf area so long as they do not interfere with or endanger any lease issued pursuant to this act.

Section 18 sets forth in detail the interpleader and interim arrangements involving legal determinations regarding leases and actions filed in the United States District Court for the District of Columbia.

Title IV contains three general provisions which are set forth as a separate title for perfecting and clarifying purposes only.

Section 19 revokes the Executive Order No. 10426, dated January 16, 1953, which set aside the submerged lands of the Continental Shelf as a petroleum reserve. That order had been revoked insofar as applied to those lands located within the State boundaries and therefore, should be revoked with regard to the lands in the outer Continental Shelf beyond State boundaries.

Section 20 is merely an authorization for necessary appropriations to effectuate provisions of the act.

Section 21 is a detailed and elaborate separability clause which is designed to preserve the validity of the entire remainder of the act if any particular section should be held to be invalid. This section transposes the identical separability clause which was section 11 of the Submerged Lands Act.

(Note: 1. PORTIONS OF THE SENATE, HOUSE AND CONFERENCE REPORTS, WHICH ARE DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY TO THE INTERPRETATION OF THE LAWS, ARE OMITTED. OMITTED MATERIAL IS INDICATED BY FIVE ASTERISKS: \*\*\*\*\*. 2. TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOPIC FIELD SEARCH USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 6

H.R. REP. 83-413, H.R. Rep. No. 413, 83RD Cong., 1ST Sess. 1953, 1953 U.S.C.C.A.N. 2177, 1953 WL 3152 (Leg.Hist.)

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.