# EXHIBIT 16

Defendants' Motion to Dismiss
*League of Conservation Voters v. Trump*
No. 3:17-cv-00101-SLG

*Administration of Barack Obama, 2016*

## Executive Order 13754—Northern Bering Sea Climate Resilience
*December 9, 2016*

By the authority vested in me as the President by the Constitution and the laws of the United States of America, including the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 *et seq.*, it is hereby ordered as follows:

*Section 1. Purpose.* As recognized in Executive Order 13689 of January 21, 2015, (Enhancing Coordination of National Efforts in the Arctic), Arctic environmental stewardship is in the national interest. In furtherance of this principle, and as articulated in the March 10, 2016, U.S.-Canada Joint Statement on Climate, Energy, and Arctic Leadership, the United States has resolved to confront the challenges of a changing Arctic by working to conserve Arctic biodiversity; support and engage Alaska Native tribes; incorporate traditional knowledge into decisionmaking; and build a sustainable Arctic economy that relies on the highest safety and environmental standards, including adherence to national climate goals. The United States is committed to achieving these goals in partnership with indigenous communities and through science-based decisionmaking. This order carries forth that vision in the northern Bering Sea region.

The Bering Sea and Bering Strait are home to numerous subsistence communities, rich indigenous cultures, and unique marine ecosystems, each of which plays an important role in maintaining regional resilience. The changing climate and rising average temperatures are reducing the occurrence of sea ice; changing the conditions for fishing, hunting, and subsistence whaling; and opening new navigable routes to increased ship traffic. The preservation of a healthy and resilient Bering ecosystem, including its migratory pathways, habitat, and breeding grounds, is essential for the survival of marine mammals, fish, seabirds, other wildlife, and the subsistence communities that depend on them. These communities possess a unique understanding of the Arctic ecosystem, and their traditional knowledge should serve as an important resource to inform Federal decisionmaking.

*Sec. 2. Policy.* It shall be the policy of the United States to enhance the resilience of the northern Bering Sea region by conserving the region's ecosystem, including those natural resources that provide important cultural and subsistence value and services to the people of the region. For the purpose of carrying out the specific directives provided herein, this order delineates an area hereafter referred to as the "Northern Bering Sea Climate Resilience Area," in which the exercise of relevant authorities shall be coordinated among all executive departments and agencies (agencies). All agencies charged with regulating, overseeing, or conducting activities in the Northern Bering Sea Climate Resilience Area shall do so with attention to the rights, needs, and knowledge of Alaska Native tribes; the delicate and unique ecosystem; the protection of marine mammals, fish, seabirds, and other wildlife; and with appropriate coordination with the State of Alaska.

The boundary of the Northern Bering Sea Climate Resilience Area includes waters within the U.S. Exclusive Economic Zone bounded to the north by the seaward boundary of the Bering Straits Native Corporation established pursuant to the Alaska Native Claims Settlement Act; to the south by the southern boundaries of the Northern Bering Sea Research Area, the St. Matthew Habitat Conservation Area, and the Nunivak-Kuskokwim Habitat Conservation Area; and to the west by the maritime boundary delimited by the Agreement Between the

1

United States of America and the Union of Soviet Socialist Republics on the Maritime Boundary, signed at Washington, June 1, 1990.

*Sec. 3. Withdrawal.* Under the authority granted to me in section 12(a) of the Outer Continental Shelf Lands Act, 43 U.S.C. 1341(a), I hereby withdraw from disposition by leasing for a time period without specific expiration the following areas of the Outer Continental Shelf: (1) the area currently designated by the Bureau of Ocean Energy Management as the Norton Basin Planning Area; and (2) the Outer Continental Shelf lease blocks within the Bureau of Ocean Energy Management's St. Matthew-Hall Planning Area lying within 25 nautical miles of St. Lawrence Island. The boundaries of the withdrawn areas are more specifically delineated in the attached map and, with respect to the St. Matthew-Hall Planning Area, the accompanying table of withdrawn Outer Continental Shelf lease blocks. Both the map and table form a part of this order, with the table governing the withdrawal and withdrawal boundaries within the St. Matthew-Hall Planning Area. This withdrawal prevents consideration of these areas for future oil or gas leasing for purposes of exploration, development, or production. This withdrawal furthers the principles of responsible public stewardship entrusted to this office and takes due consideration of the importance of the withdrawn area to Alaska Native tribes, wildlife, and wildlife habitat, and the need for regional resiliency in the face of climate change. Nothing in this withdrawal affects rights under existing leases in the withdrawn areas.

*Sec. 4. Task Force on the Northern Bering Sea Climate Resilience Area.* (a) There is established a Task Force on the Northern Bering Sea Climate Resilience Area (Bering Task Force), under the Arctic Executive Steering Committee (AESC) established in Executive Order 13689, to be co-chaired by an office of the Department of the Interior, the National Oceanic and Atmospheric Administration, and the U.S. Coast Guard.

(b) The membership of the Bering Task Force (member agencies) shall include, in addition to the Co-Chairs, designated senior-level representatives from:

>   (i) the Department of State;
>
>   (ii) the Department of Defense;
>
>   (iii) the Department of Transportation;
>
>   (iv) the Environmental Protection Agency;
>
>   (v) the U.S. Army Corps of Engineers;
>
>   (vi) the U.S. Arctic Research Commission;
>
>   (vii) the National Science Foundation; and
>
>   (viii) such agencies and offices as the Co-Chairs may designate.

(c) Consistent with the authorities and responsibilities of its member agencies, the Bering Task Force, with the purpose of advancing the United States policy in the Northern Bering Sea Climate Resilience Area as set forth in section 2 of this order, shall:

>   (i) Establish and provide regular opportunities to consult with the Bering Intergovernmental Tribal Advisory Council as described in section 5 of this order;
>
>   (ii) Coordinate activities of member agencies, including regulatory, policy, and research activities, affecting the Northern Bering Sea Climate Resilience Area and its value for subsistence and cultural purposes;

(iii) Consider the need for additional actions or strategies to advance the policies established in section 2 of this order and provide recommendations as appropriate to the President through the AESC;

(iv) Consider and make recommendations with respect to the impacts of shipping on the Northern Bering Sea Climate Resilience Area including those described in sections 7 and 8 of this order; and

(v) In developing and implementing recommendations, coordinate or consult as appropriate with existing AESC working groups, the State of Alaska, regional and local governments, Alaska Native tribal governments, Alaska Native corporations and organizations, the private sector, other relevant organizations, and academia.

*Sec. 5. The Bering Intergovernmental Tribal Advisory Council.* (a) The Bering Task Force, within 6 months of the date of this order, and after considering recommendations from Alaska Native tribal governments, shall, in accordance with existing law, establish a Bering Intergovernmental Tribal Advisory Council, for the purpose of providing input to the Bering Task Force and facilitating effective consultation with Alaska Native tribal governments.

(b) The Bering Intergovernmental Tribal Advisory Council shall be charged with providing input and recommendations on activities, regulations, guidance, or policy that may affect actions or conditions in the Northern Bering Sea Climate Resilience Area, with attention given to climate resilience; the rights, needs, and knowledge of Alaska Native tribes; the delicate and unique ecosystem; and the protection of marine mammals and other wildlife.

(c) The Bering Intergovernmental Tribal Advisory Council should include between 9 and 11 elected officials or their designees representing Alaska Native tribal governments with a breadth of interests in the Northern Bering Sea Climate Resilience Area, and may include such additional Federal officials and State and local government elected officials as the Bering Task Force deems appropriate. The Bering Intergovernmental Tribal Advisory Council will adopt such procedures as it deems necessary to govern its activities.

*Sec. 6. Traditional Knowledge in Decisionmaking.* It shall be the policy of the United States to recognize and value the participation of Alaska Native tribal governments in decisions affecting the Northern Bering Sea Climate Resilience Area and for all agencies to consider traditional knowledge in decisions affecting the Northern Bering Sea Climate Resilience Area. Specifically, all agencies shall consider applicable information from the Bering Intergovernmental Tribal Advisory Council in the exercise of existing agency authorities. Such input may be received through existing agency procedures and consultation processes.

*Sec. 7. Pollution from Vessels.* The Bering Task Force, within 9 months of the date of this order and after coordination as needed with existing working groups within the AESC, shall provide the AESC with recommendations on:

(a) Actions to ensure or support implementation of the International Code for Ships Operating in Polar Waters, as adopted by the International Maritime Organization, especially with respect to limitations on discharges from vessels in the Northern Bering Sea Climate Resilience Area; and

(b) Any additional measures necessary to achieve the policies established in section 2 of this order, such as the potential identification of zero-discharge zones, assessments of the pollution risks posed by increased vessel traffic, or noise reduction measures associated with sensitive ecological and cultural areas within the Northern Bering Sea Climate Resilience Area.

*Sec. 8. Shipping Routing Measures.* (a) In recognition of the United States commitment to reduce the impact of shipping within the Bering Sea and the Bering Strait and the many environmental factors in the Northern Bering Sea Climate Resilience Area that inform the best routes for navigation, safety, and the marine environment, the U.S. Coast Guard should conclude its ongoing port access route study for the Chukchi Sea, Bering Strait, and Bering Sea (Bering Sea PARS) pursuant to the Ports and Waterways Safety Act, 33 U.S.C. 1221 *et seq*.

(b) In designation of routes and any areas to be avoided, and consistent with existing authorities, consideration should be given to the Northern Bering Sea Climate Resilience Area, including the effects of shipping and vessel pollution on the marine environment, fishery resources, the seabed and subsoil of the Outer Continental Shelf, marine mammal migratory pathways and other biologically important areas, and subsistence whaling, hunting, and fishing.

(c) In recognition of the value of participation of Alaska Native tribal governments in decisions affecting the Northern Bering Sea Climate Resilience Area, the U.S. Coast Guard should consider traditional knowledge, including with respect to marine mammal, waterfowl, and seabird migratory pathways and feeding and breeding grounds, in the development of the Bering Sea PARS, establishment of routing measures and any areas to be avoided, and subsequent rulemaking and management decisions.

(d) No later than December 30, 2016, the U.S. Coast Guard shall publish preliminary findings for the Bering Sea PARS in the *Federal Register*, including information related to its status, potential routing measures, and its projected schedule. The U.S. Coast Guard should also consider using this opportunity to provide notice of any new information or proposed measures resulting from its ongoing consultation process.

(e) Upon completion of the Bering Sea PARS, the U.S. Coast Guard shall promptly issue a notice of proposed rulemaking for any designation contemplated on the basis of the study. The U.S. Coast Guard shall coordinate as appropriate with the Department of State and other coastal nations and submit any proposed routing measures to the International Maritime Organization by 2018 for the purpose of their adoption and implementation.

*Sec. 9. Oil Spill Preparedness.* The U.S. Coast Guard, in coordination with all relevant agencies and the State of Alaska, shall update the Area Contingency plans, the Subarea Response Plans, and the Geographic Response Strategies relevant to the Northern Bering Sea Climate Resilience Area. These plans and strategies shall be consistent with the National Contingency Plan, and shall include appropriate measures to improve local response capacity and preparedness such as spill response training opportunities for local communities, including Hazardous Waste Operations and Emergency Response training for Village Public Safety Officers and other first responders.

*Sec. 10. Continuity of Existing Habitat Protection.* The area included in the Northern Bering Sea Climate Resilience Area is currently closed to commercial non-pelagic trawl gear under rules implementing the Fishery Management Plans of the Bering Sea and Aleutian Islands Management Area and the Arctic Management Area. Consistent with existing law, the National Oceanic and Atmospheric Administration, in coordination with the North Pacific Fishery Management Council, shall take such actions as are necessary to support the policy set forth in section 2 of this order, including actions to maintain the existing prohibitions on the use of commercial non-pelagic trawl gear.

*Sec. 11. General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

   (1) the authority granted by law to a department, agency, or the head thereof; or

   (2) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

 (b) This order shall be implemented consistently with applicable law and subject to the availability of appropriations.

 (c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

 (d) The policies set forth in this order are consistent with existing U.S. obligations under international law and nothing in this order shall be construed to derogate from obligations under applicable international law.

BARACK OBAMA

The White House,
December 9, 2016.

[Filed with the Office of the Federal Register, 11:15 a.m., December 13, 2016]

NOTE: This Executive order and its attached annex were published in the *Federal Register* on December 14.

*Categories:* Executive Orders : Northern Bering Sea, climate resilience.

*Subjects:* Environment : Climate change; Northern Bering Sea.

*DCPD Number:* DCPD201600836.