James D. Linxwiler (Alaska Bar No. 7705185)
Christina A. Rankin (Alaska Bar No. 0306034)
Guess & Rudd P.C.
1029 W. 3rd Ave. #400
Anchorage, AK 99501
Tel: (907) 793-2200
Fax: (907) 793-2299
jlinxwiler@guessrudd.com
crankin@guessrudd.com

Steven J. Rosenbaum (*pro hac vice* forthcoming)
Bradley K. Ervin (*pro hac vice* forthcoming)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. N.W.
Washington, D.C. 20001
Tel: (202) 662-5568
Fax: (202) 778-5568
srosenbaum@cov.com
bervin@cov.com

*Attorneys for Applicant for Intervention American Petroleum Institute*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| LEAGUE OF CONSERVATION VOTERS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | No. 3:17-cv-00101 (SLG) |

**MOTION OF THE AMERICAN PETROLEUM INSTITUTE FOR LEAVE TO INTERVENE AS A DEFENDANT**

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ..... 1

A. Plaintiffs' Legal Challenge. ..... 1

B. API's Interests in Plaintiffs' Legal Challenge. ..... 2

I. API IS ENTITLED TO INTERVENE AS OF RIGHT. ..... 3

A. API Has Timely Moved For Intervention. ..... 5

B. API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding. ..... 5

C. API's Interests Will Not Be Adequately Protected By Plaintiffs Or Defendants. ..... 11

II. IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b). ..... 13

CONCLUSION ..... 13

i

Motion to Intervene

*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)

## TABLE OF AUTHORITIES

**Cases**

*Alaska v. Andrus*,
580 F.2d 465 (D.C. Cir. 1978) ........ 11

*Amgen, Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004) ........ 8

*Atlantic States Legal Found., Inc. v. EPA*,
325 F.3d 281 (D.C. Cir. 2003) ........ 8

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 9

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ........ 6

*California v. Watt*,
668 F.2d 1290 (D.C. Cir. 1981) ........ 9, 11

*California v. Watt*,
712 F.2d 584 (D.C. Cir. 1983) ........ 11

*Clarke v. Sec. Indus. Ass'n*,
479 U.S. 388 (1987) ........ 9

*Colwell v. Dep't of Health & Human Servs.*,
558 F.3d 1112 (9th Cir. 2009) ........ 4

*Conservation Law Found. of New England v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) ........ 10

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
563 F.3d 466 (D.C. Cir. 2009) ........ 11

*Ctr. for Sustainable Economy v. Jewell*,
779 F.3d 588 (D.C. Cir. 2015) ........ 3

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*,
684 F.3d 1242 (11th Cir. 2012) ........ 3

*Defenders of Wildlife v. Minerals Management Serv.*,
No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) ........ 3

*Diné Citizens Against Ruining our Env't v. Jewell*,
No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) ........ 3

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) ........ 11, 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*,
528 U.S. 167 (2000) ........ 4

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .......... 7, 8, 10

*Humane Society of the U.S. v. Clark*,
109 F.R.D. 518 (D.D.C. 1985) .......... 10

*Hunt v. Washington State Apple Adver. Comm'n*,
432 U.S. 333 (1977) .......... 4

*In re City of Fall River, Ma.*,
470 F.3d 30 (1st Cir. 2006) .......... 6

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3rd Cir. 1998) .......... 13

*Military Toxics Project v. EPA*,
146 F.3d 948 (D.C. Cir. 1998) .......... 7

*Nat'l Lime Ass'n v. EPA*,
233 F.3d 625 (D.C. Cir. 2000) .......... 4

*Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*,
947 F. Supp. 2d 1031 (D. Ak. 2013) .......... 3

*Natural Res. Def. Council v. Costle*,
561 F.3d 904 (D.C. Cir. 1977) .......... 9

*Natural Res. Def. Council, Inc. v. Hodel*,
865 F.2d 288 (D.C. Cir. 1988) .......... 11

*Oceana v. Bureau of Ocean Energy Mgmt.*,
37 F. Supp. 3d 147 (D.D.C. 2014) .......... 3

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) .......... 7

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) .......... 6

*Sierra Club v. Glickman*,
82 F.3d 106 (5th Cir. 1996) .......... 4

*Sierra Club v. U.S. EPA*,
995 F.2d 1478 (9th Cir. 1993) .......... 10

*Suffolk Cnty. v. Sec'y of the Interior*,
562 F.2d 1368 (2d Cir. 1977) .......... 11

*Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*,
275 F.3d 432 (5th Cir. 2001) .......... 8

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 4, 6, 9, 10, 11, 12

*The Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) .......... 4

*The Wilderness Society v. Babbitt*,
104 F. Supp. 2d 10 (D.D.C. 2000) .......... 13

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... 11, 12

*United States v. Comprehensive Drug Testing, Inc.*,
513 F.3d 1085 (9th Cir. 2008) .......... 4

*WildEarth Guardians v. U.S. Forest Serv.*,
573 F.3d 992 (10th Cir. 2009) .......... 12

**Statutes**

43 U.S.C. § 1332 .......... 12

43 U.S.C. § 1332(3) .......... 9

43 U.S.C. § 1340(c) .......... 5

43 U.S.C. § 1341(a) .......... 1

43 U.S.C. § 1351 .......... 5

**Other Authorities**

Exec. Order 13795, 82 Fed. Reg. 20,815 (April 28, 2017) .......... 1

H.R. Rep. No. 95-590 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450 .......... 9

**Rules**

Fed. R. Civ. P. 24 .......... 1, 3, 4, 6, 10, 13, 14

**Treatises**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice & Procedure* § 1922 (3d ed. 2010) .......... 14

**Regulations**

30 C.F.R. § 550.201 .......... 5

30 C.F.R. § 550.281(a)(1) .......... 5

30 C.F.R. §§ 250.410–418 .......... 5

30 C.F.R. §§ 250.465–469 .......... 5

30 C.F.R. §§ 550.211–235 .......... 5

30 C.F.R. §§ 550.241–273 .......... 5

## INTRODUCTION AND BACKGROUND

Pursuant to Federal Rule of Civil Procedure 24, the American Petroleum Institute ("API") respectfully moves for leave to intervene as a defendant in the above captioned matter. Counsel for API consulted with counsel for Plaintiffs and counsel for the Federal Defendants regarding the relief requested in API's motion to intervene. Counsel for Plaintiffs has indicated that the Plaintiffs do not oppose API's intervention in this matter. Counsel for the Federal Defendants was not able to provide a position regarding the merits of API's request to intervene at this time.

### A. Plaintiffs' Legal Challenge.

This lawsuit challenges Executive Order 13795, entitled "Implementing an America-First Offshore Energy Strategy," signed by Defendant President Trump on April 28, 2017 to be implemented by Defendants Secretary of the Interior, and Secretary of Commerce (collectively, "Federal Defendants"). Among other things, Section 5 of the Executive Order revised orders issued by President Obama on December 20, 2016 and January 27, 2015 withdrawing certain areas of the Outer Continental Shelf ("OCS") in the Arctic Ocean and the Atlantic Ocean from potential disposition for oil and gas leasing pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a). As revised by the April 28, 2017 Executive Order, only "those areas of the Outer Continental Shelf designated as of July 14, 2008, as Marine Sanctuaries under the Marine Protection, Research, and Sanctuaries Act of 1972" remain withdrawn from potential disposition. *See* Exec. Order 13795 § 5, 82 Fed. Reg. 20,815, 20,816 (April 28, 2017). In short, Executive Order 13795 re-opens certain sections of the Arctic and Atlantic OCS for future potential disposition for oil and gas leasing.

Plaintiffs League of Conservation Voters, Natural Resources Defense Council, Sierra Club, Alaska Wilderness League, Defenders of Wildlife, Northern Alaska Environmental Center, Resisting Environmental Destruction of Indigenous Lands, Center for Biological Diversity, Greenpeace, Inc., and the Wilderness Society (collectively, "Plaintiffs") contend that the Executive Order "exceeds [the President's] constitutional and his statutory authority under OCSLA" because OCSLA expressly "authorizes Presidents to withdraw unleased public lands on the outer continental shelf from disposition," but "[n]either OCSLA nor any other provision of law authorizes Presidents to undo such withdrawals." Complaint (Dkt. No. 1), ¶ 1. To remedy the alleged violations, Plaintiffs ask the Court to, *inter alia*, (1) declare that the Executive Order's "revers[al]" of prior "withdrawals of portions of the Arctic and Atlantic Oceans from oil and gas leasing[] is in excess of [the President's] statutory powers" and "in violation of[] the United States Constitution;" (2) "[e]njoin Defendants from complying with or relying in any way on Section 5" of the Executive Order; and (3) "[i]ssue a writ of mandamus compelling [the Secretaries of Interior and Commerce] to comply with the January 27, 2015, and December 20, 2016 withdrawals of portions of the Arctic and Atlantic Oceans from oil and gas leasing." *Id.*, Relief Requested, ¶¶ 1–4.

**B. API's Interests in Plaintiffs' Legal Challenge.**

API is the primary national trade association of the oil and natural gas industry, representing more than 625 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil. *See* Declaration of Erik G. Milito, ¶ 1 ("Milito Decl.") (attached as Exhibit 2 hereto). Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry

capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner. *See* Milito Decl. ¶ 2.

API's members are deeply engaged in the exploration for and development of oil and gas resources, and their interests are directly affected by the instant legal challenge. *See infra* pp. 5–10. To protect their interests, API is entitled to intervene in this action as of right, or, in the alternative, through permissive intervention. Indeed, this Court and federal courts elsewhere have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging Governmental actions with respect to oil and gas activities, including but not limited to lease sales and the issuance of leases. *See, e.g.*, *Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*, 947 F. Supp. 2d 1031 (D. Ak. 2013) (intervened in challenge to geological and geophysical survey permit); *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (intervened in challenge to five-year leasing program); *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (intervened in challenge to lease sales and agency use of categorical exclusions to approve exploration plans); *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147 (D.D.C. 2014) (intervened in challenge to lease sales); *Diné Citizens Against Ruining our Env't v. Jewell*, No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) (intervened in challenges to drilling permits); *Defenders of Wildlife v. Minerals Management Serv.*, No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) (intervened in challenge to lease sale).

## I. API IS ENTITLED TO INTERVENE AS OF RIGHT.

Fed. R. Civ. P. 24 (a) provides for intervention as of right if each of the following tests are met: (1) the motion is timely made, (2) the applicant claims a legally protectable interest relating to the property or transaction which is the subject of the action; (3) the interest could be

impaired or impeded as a result of the litigation; and (4) existing parties do not adequately represent the applicant's interests. Fed. R. Civ. P. 24(a); *see also*, *e.g.*, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Courts in the Ninth Circuit "construe Rule 24(a) liberally in favor of potential intervenors," and assess a motion for intervention "primarily by practical considerations, not technical distinctions." *Id*. at 818 (quotation and citation omitted). *See also The Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) ("[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." (quotation and alteration omitted)). As set forth below, API's intervention satisfies each of the criteria for intervention as of right.[1]

[1] For purposes of applying Rule 24 requirements, API may assert the interests of its members. An association may act on behalf of its members when its members would otherwise have standing in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000); *accord United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1096 (9th Cir. 2008). API's showing that Fed. R. Civ. P. 24 standards are met in this case also establishes that its members would themselves have standing. *See infra*. *E.g., Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001). Representation in litigation is germane to API's overall purposes of advancing the interests of the oil and gas industry, and "mere pertinence between litigation subject and organizational purpose is sufficient." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000); *see also Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1122–23 (9th Cir. 2009) (finding interests "germane" where opponents' position "will interfere with the achievement of [associations'] goals"); *Sierra Club v. Glickman*, 82 F.3d 106, 108–10 (5th Cir. 1996) (goals of suit to limit farmers' water pumping germane to association purpose to advance farmers' interests); Milito Decl. ¶ 2. It is not necessary for API members to be included in this case individually, especially because no monetary relief is being sought. *See Comprehensive Drug Testing*, 513 F.3d at 1096; *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44 (1977). API thus satisfies the three requirements of associational standing.

### A. API Has Timely Moved For Intervention.

This motion to intervene is timely because it has been filed before the Federal Defendants have filed their answer, and before any non-ministerial action of the parties has taken place in this litigation other than the filing of the Complaint itself.

### B. API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding.

Oil and gas development on the OCS is carried out exclusively through private oil and gas companies, which acquire leases through a sealed bidding process and then engage in exploration efforts that, if successful, will lead to production. *See* Milito Decl. ¶ 5. Operations for the exploration and development of oil and gas resources on a lease—including drilling—are conducted pursuant to plans and permits that must be approved by the Department of the Interior. *See* 43 U.S.C. § 1340(c); 30 C.F.R. § 550.201; 30 C.F.R. §§ 550.211–235; 43 U.S.C. § 1351; 30 C.F.R. § 550.201; 30 C.F.R. §§ 550.241–273; Milito Decl. ¶ 6. Before conducting drilling activities under an approved exploration or development plan, a lessee must also obtain the Department's approval of, *inter alia*, an application for a permit to drill. *See* 30 C.F.R. § 550.281(a)(1); 30 C.F.R. §§ 250.410–418; 30 C.F.R. §§ 250.465–469; Milito Decl. ¶ 6.

API members are among the principal bidders for offshore leases, are directly engaged in the resulting exploration and production, and, indeed, have been for decades among the principal explorers and developers of leases throughout the United States, including on the OCS. *See* Milito Decl. ¶ 5. API members include leaseholders in every leased OCS region, and API members have been among the principal bidders on—and have expended significant sums to obtain leases from the Government for—OCS leases for the opportunity to explore for and develop valuable oil and gas resources. *See* Milito Decl. ¶ 5. Indeed, API has previously submitted comments to the Department of Interior on behalf of its members supporting leasing

and oil and gas development in both the Arctic and Atlantic OCS, and indicating the members' interests in such leasing. *See* Milito Decl. ¶ 7. Plaintiffs' claims that large sections of the Arctic and Atlantic OCS must remain "permanently" withdrawn from potential disposition for oil and gas leasing under the OCSLA, *see* Complaint (Dkt. 1), ¶¶ 46–47, and that any attempt by a President to re-open withdrawn areas for disposition violates the Constitution and the OCSLA, *see id*., Relief Requested 1–4, thus directly affects the members' interests. Milito Decl. ¶ 7.

Although Governmental officials are named as the defendants, in practice, the exploration and development activities of API's members are the "object of" the agency action that Plaintiffs' lawsuit challenges—Federal Defendants' Executive Order and implementing actions re-opening portions of the Arctic and Atlantic OCS for leasing to, and oil and gas exploration and development activities by, API members. Indeed, Plaintiffs rely on "industry interest," Complaint (Dkt. 1), ¶ 39, in oil and gas development of the OCS to support the overwhelming majority of Plaintiffs' alleged injuries, which accordingly arise from the exploration and development activities of API members, including leaseholders, lease operators, and companies that provide support services for oil and gas development. *See* Complaint (Dkt. 1), ¶¶ 26–43; Milito Decl. ¶ 5. This clearly qualifies API for intervention as of right. *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (party has standing when its activities are the ultimate object of the legal challenge); *see also, e.g.*, *Sw. Ctr. for Biological Diversity*, 268 F.3d at 821; *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *In re City of Fall River, Ma.*, 470 F.3d 30, 31 (1st Cir. 2006) (recognizing that intervenor's application to export natural gas was "Petitioners' ultimate target" in seeking to compel agency to issue regulations); Fed. R. Civ. P. 24 advisory

committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

Ultimately, Plaintiffs ask this Court to permanently preclude the activities of API members. *See* Complaint (Dkt. 1), Relief Requested 1–4. Private parties may intervene in defense of challenged conduct when their interests could thus be directly affected. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (foreign governmental agency may intervene in defense of legal challenge to federal regulations that would, if successful, limit sport hunting by U.S. citizens in that country; the country's sheep "are the subject of the disputed regulations"); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor.").

In this regard, API's members are in a similar situation as the members of the association seeking intervention in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998). The plaintiffs there challenged an EPA rule excluding munitions from stringent hazardous waste regulation, and the D.C. Circuit held that the Chemical Manufacturers Association ("CMA") had standing to intervene in defense of the EPA rule:

> CMA has standing because some of its members produce military munitions and operate military firing ranges regulated under the Military Munitions Rule. These companies are directly subject to the challenged Rule, and they benefit from the EPA's "intended use" interpretation (under which most military munitions at firing ranges are not solid waste) . . . that the [petitioner] is challenging in this appeal. These CMA members would suffer concrete injury if the court grants the relief the petitioners seek; they would therefore have standing to intervene in their own right, and we agree with the litigants that the CMA has standing to intervene on their behalf in support of the EPA.

146 F.3d at 954.

API likewise has Article III standing—and thus a sufficient interest to support intervention—here because its members include OCS leaseholders, OCS lease operators, OCS development and production companies, and OCS service companies, and are thus engaged in activities that are "directly subject to the challenged" Government policy, and "would suffer concrete injury if the court grants the relief petitioners seek," *i.e.*, permanently precluding the Federal Defendants' from leasing portions of the Arctic and Atlantic OCS to API members and approving API members' exploration and development activities on API member leases. *Military Toxics*, 146 F.3d at 954. *See also*, *e.g.*, *Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had Article III standing and sufficient interest to intervene where lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's] members"); *Fund for Animals*, 322 F.3d at 733–34 (agreeing that Article III standing exists where "injury is fairly traceable to the regulatory action . . . that the [plaintiff] seeks in the underlying lawsuit" and "it is likely that a decision favorable to the [applicant for intervention] would prevent that loss from occurring"); *id*. at 734 (in identifying a qualifying injury under Rule 24(a), "we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property"); *Atlantic States Legal Found., Inc. v. EPA*, 325 F.3d 281, 282, 285 (D.C. Cir. 2003) (intervention by trade association of utilities regulated by EPA regulation).

In addition, API's members undoubtedly satisfy prudential standing in this litigation because their activities are the "subject of the contested regulatory action," *Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004) (quotation omitted)—namely, the Federal Defendants'

decision to re-open portions of the Arctic and Atlantic OCS for leasing and development by API members.

Furthermore, the interests of API members correspond with the OCSLA's purpose to make the OCS "available for expeditious and orderly development, subject to environmental safeguards," 43 U.S.C. § 1332(3), and "promote the swift, orderly and efficient exploitation of our almost untapped domestic oil and gas resources in the [OCS]." H.R. Rep. No. 95-590, at 8 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1460; *see California v. Watt*, 668 F.2d 1290, 1316 (D.C. Cir. 1981) ("The first stated purpose of the Act, then, is to establish procedures to expedite exploration and development of the OCS."); Milito Decl. ¶ 2. *See also, e.g., Bennett v. Spear*, 520 U.S. 154, 162 (1997) (With respect to prudential standing, a party's interests need only "*arguably* fall within the zone of interests protected *or regulated* by the statutory provision" at issue) (emphasis added); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987) (holding that trade associations had standing, because even "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the [zone of interest] test denies a right of review [only] if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.").

Finally, the Court's disposition of this action would impair the ability of API (and its members) to protect their interests. The impairment prong of Rule 24(a) "look[s] to the practical consequences of denying intervention." *Natural Res. Def. Council v. Costle*, 561 F.3d 904, 909 (D.C. Cir. 1977) (quotation omitted). *See also Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 ("Whether an applicant for intervention demonstrates sufficient interest in an action is a

practical, threshold inquiry.") (quotation and alteration omitted); *id*. at 822 (quoting Fed. R. Civ. P. 24 advisory committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .")). It is irrelevant whether the applicant "could reverse an unfavorable ruling" in subsequent proceedings because "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds . . . will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735.

Here, after the challenged Executive Order, API's members currently possess an opportunity to advocate and bid for leasing, and conduct exploration and development, on additional portions of the Arctic and Atlantic OCS, and would face practical difficulty in restoring the status quo following a victory by Plaintiffs permanently withdrawing those portions of the Arctic and Atlantic OCS from disposition. At a minimum, such action would impose a lengthy administrative delay and related costs and uncertainty upon API members. *See Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (fishing group may intervene to defend lawsuit seeking to force government to change regulatory status quo, when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future") (citation omitted); Milito Decl. ¶ 8. *Cf. Humane Society of the U.S. v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (sufficient interest of recreational hunting and trapping groups in "present right of their members to hunt and trap on public lands"). At worst, any subsequent lawsuit filed by API to restore the status quo "would be constrained by the *stare decisis* effect of" the present lawsuit, thereby supporting intervention in this initial lawsuit. *See Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993), *abrogated on other grounds*, 630 F.3d 1173 (9th Cir. 2011).

For all these reasons, API is entitled to intervene. Indeed, federal district courts have routinely and repeatedly permitted oil industry trade associations to intervene on behalf of their members' interests in litigation involving oil and gas leasing and operations. *See supra* p. 3; *see also e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466 (D.C. Cir. 2009) (API granted intervention in challenge to Government's five-year OCS leasing program under NEPA and OCS Lands Act); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 293 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (same); *California v. Watt*, 668 F.2d 1290, 1294 n.1 (D.C. Cir. 1981) (same); *Alaska v. Andrus*, 580 F.2d 465 (D.C. Cir. 1978) (Western Oil and Gas Association granted intervention in defense of first OCS lease sale offshore Alaska); *Suffolk Cnty. v. Sec'y of the Interior*, 562 F.2d 1368 (2d Cir. 1977) (National Ocean Industries Association granted intervention in defense of first Atlantic OCS lease sale).

### C. API's Interests Will Not Be Adequately Protected By Plaintiffs Or Defendants.

An applicant for intervention need only show that representation of its interest by an existing party "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972); *see also*, *e.g.*, *Sw. Ctr. for Biological Diversity*, 260 F.3d at 823 (citing *Trbovich*). The burden of the applicant in meeting that test is "minimal." *Id*.

In this case, Plaintiffs' position is inimical to that of API, and the Federal Defendants are "required to represent a broader view than the more narrow, parochial interests," *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (granting intervention), *abrogated on other grounds*, 630 F.3d 1173 (9th Cir. 2011), of the oil and gas industry. As the Supreme Court explained in *Trbovich*, a government agency cannot be characterized as able adequately to represent the interests of an intervenor if the agency has

substantially similar interests to a potential intervenor, but has a statutory charge to pursue a different goal as well. *Trbovich*, 404 U.S. at 538–39. Here, while the goals of the OCSLA include the interest of the API's members in "expeditious development" of oil and gas resources on public land, these goals are not limited to those interests. *See* 43 U.S.C. § 1332.

Although the Federal Defendants' and API's interests could be expected to coincide in defending the claim of violations asserted in this action, these differing goals support API's intervention as of right. *See Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))); *Forest Conservation Council*, 66 F.3d at 1499 ("The government must present the broad public interest, not just the economic interest of . . . industry.") (quotation and alteration omitted). Because "[t]he interests of government and the private sector may diverge," "[o]n some issues [industry] will have to express their own unique private perspectives." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

Because their interests are not adequately represented by either the Plaintiffs or the Federal Defendants, API should be allowed to intervene in this case as of right.

## II. IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b).

Fed. R. Civ. P. 24(b)(1) and (3) provide in pertinent part:

> On timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact . . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties . . . .

API's and the Federal Defendants' defenses to the Complaint will involve common questions of law and fact regarding the Federal Defendants' fulfillment of their obligations under OCSLA and the Constitution. In addition, as shown above, API has a substantial interest in the outcome of this litigation. Moreover, this litigation's basic simplicity as a primarily legal dispute belies any concern that API's intervention will result in prejudice to the original parties, and, at any rate, API's intervention vindicates "a major premise of intervention—the protection of third parties affected by pending litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3rd Cir. 1998). Finally, API applied to intervene in a timely manner, and no delay or prejudice can be shown to the rights of the original parties herein. Thus, if the Court did not allow API to intervene as of right, it should allow API permissive intervention in the exercise of its sound discretion.

## CONCLUSION

For the foregoing reasons, API meets the requirements for intervention pursuant to both Fed. R. Civ. P. 24(a) and 24(b). API respectfully requests that this Court grant this motion for leave to intervene in this proceeding without limitation.[2]

[2] *See The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (finding "the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of this litigation…without limitation"); 7C Charles Alan Wright, Arthur R. Miller & (continued…)

A proposed Order is submitted herewith. As required by Fed. R. Civ. P. 24(c), API has included with this motion, as Exhibit 1 hereto, its proposed Answer to the Complaint.

Respectfully submitted,

_/s/ James D. Linxwiler_
James D. Linxwiler (Alaska Bar No. 7705185)
Christina A. Rankin (Alaska Bar No. 0306034)
Guess & Rudd P.C.
1029 W. 3rd Ave. #400
Anchorage, AK 99501
Tel: (907) 793-2200
Fax: (907) 793-2299
jlinxwiler@guessrudd.com
crankin@guessrudd.com

Steven J. Rosenbaum (*pro hac vice* forthcoming)
Bradley K. Ervin (*pro hac vice* forthcoming)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. N.W.
Washington, D.C. 20001
Tel: (202) 662-5568
Fax: (202) 778-5568
rosenbaum@cov.com
bervin@cov.com

*Attorneys for Applicant for Intervention American Petroleum Institute*

June 30, 2017

Mary Kay Kane, *Federal Practice & Procedure* § 1922 (3d ed. 2010) (questioning authority of courts to impose conditions on intervenor-of-right beyond those of a housekeeping nature).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2017, I caused a true and correct copy of the foregoing Motion to Intervene and all accompanying documents to be filed with the Court electronically and served by the Court's CM/ECF System upon the following:

Erik Grafe
Earthjustice
441 W. 5th Ave., Suite 301
Anchorage, AK 99501
Tel: 907-792-7102
Fax: 907-277-1390
Email: egrafe@earthjustice.org

Eric P. Jorgensen
Earthjustice
325 Fourth Street
Juneau, AK 99801
Tel: 907-586-2751
Fax: 907-463-5891
Email: ejorgensen@earthjustice.org

Nathaniel S.W. Lawrence
Natural Resources Defense Council
3723 Holiday Drive, SE
Olympia, WA 98501
Tel: 360-534-9900
Email: nlawrence@nrdc.org

Nancy S. Marks
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, NY 10011
Tel: 212-727-2700
Fax: 415-795-4799
Email: nmarks@nrdc.org

*Counsel for Plaintiffs*

I further certify that on this 30th day of June, 2017, I caused a true and correct copy of the foregoing to be served by email upon the following:

Sarah D. Himmelhoch
Senior Litigation Counsel
Environment & Natural Resources Division
U.S. Department of Justice
Tel: 202-514-0180
Email: Sarah.Himmelhoch@usdoj.gov

*Counsel for Federal Defendants*

*/s/ James D. Linxwiler*
James D. Linxwiler