James D. Linxwiler (Alaska Bar No. 7705185)
Christina A. Rankin (Alaska Bar No. 0306034)
Guess & Rudd P.C.
1029 W. 3rd Ave. #400
Anchorage, AK 99501
Tel: (907) 793-2200
Fax: (907) 793-2299
jlinxwiler@guessrudd.com
crankin@guessrudd.com

Steven J. Rosenbaum (*Pro hac vice*)
Bradley K. Ervin (*Pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. N.W.
Washington, D.C. 20001
Tel: (202) 662-5568
Fax: (202) 778-5568
srosenbaum@cov.com
bervin@cov.com

*Attorneys for Intervenor-Defendant American
Petroleum Institute*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEAGUE OF CONSERVATION VOTERS, *et al.*, <br><br>                    *Plaintiffs*, <br><br>    v. <br><br> DONALD J. TRUMP, *et al.*, <br><br>                 *Defendants*. | No. 3:17-cv-00101 (SLG) |

## AMERICAN PETROLEUM INSTITUTE'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

CERTIFICATION OF MEET-AND-CONFER REGARDING THIS MOTION ......................... 3

ARGUMENT .................................................................................................................... 3

I.    OCSLA Mandates Expeditious Exploration And Development Of The Nation's Critical OCS Oil And Gas Resources. ................................................................. 4

II.   OCSLA's Staged Process For Oil And Gas Development And Corresponding Provisions For Judicial Review Foreclose Plaintiffs' Legal Challenge In The District Courts At This Time. ........................................................................ 8

      A.    Congress Designed A Four-Stage Government Review Process For OCS Exploration And Development. ............................................................... 8

            1.    The Five-Year Leasing Program. ................................................... 8

            2.    The Lease Sale. ............................................................................. 9

            3.    The Exploration Stage. ............................................................... 11

            4.    Development And Production. .................................................... 11

      B.    Congress Dictated The Timing And Venue For Challenges To The Government's Staged OCS Development Decisions, And No Stage Implicating Plaintiffs' Claimed Environmental Injuries Is Justiciable In This Court. ...................................................................................... 12

CONCLUSION ................................................................................................................ 18

i

# TABLE OF AUTHORITIES

**Cases**

*Alaska Wilderness League v. Kempthorne*,
548 F.3d 815 (9th Cir. 2008), *vacated*, 571 F.3d 859 (9th Cir. 2009) ..................................... 13

*American Bird Conservancy v. FCC*,
545 F.3d 1190 (9th Cir. 2008) ......................................................................................... 15, 16

*Banks v. Warner*,
No. 94-56732, 1995 WL 465773 (9th Cir. Aug. 7, 1995) ........................................................ 4

*California v. Watt*,
668 F.2d 1290 (D.C. Cir. 1981) ............................................................................................. 13

*California v. Watt*,
712 F.2d 584 (D.C. Cir. 1983) ............................................................................................... 13

*Chiron Corp. v. NTSB*,
27 F. Supp. 2d 257 (D.D.C. 1998) ......................................................................................... 15

*City of Rochester v. Bond*,
603 F.2d 927 (D.C. Cir. 1979) ............................................................................................... 15

*Coleman v. Dretke*,
409 F.3d 665 (5th Cir. 2005) ................................................................................................... 4

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
563 F.3d 466 (D.C. Cir. 2009) ........................................................................... 4, 8, 11, 12, 13

*Ctr. for Sustainable Economy v. Jewell*,
779 F.3d 588 (D.C. Cir. 2015) ........................................................................... 9, 13, 14, 16, 17

*Defenders of Wildlife v. BOEM*,
684 F.3d 1242 (11th Cir. 2012) ............................................................................................. 13

*Defenders of Wildlife v. BOEM*,
871 F. Supp. 2d 1312 (S.D. Ala. 2012) .................................................................................. 14

*Edwardsen v. U.S. Dep't of the Interior*,
268 F.3d 781 (9th Cir. 2001) ................................................................................................. 13

*ErieNet, Inc. v. Velocity Net, Inc.*,
156 F.3d 513 (3d Cir. 1998) .................................................................................................. 15

*Geertson Farms, Inc. v. Johanns*,
439 F. Supp. 2d 1012 (N.D. Cal. 2006) ................................................................................. 15

*Gulf Restoration Network, Inc. v. Salazar*,
683 F.3d 158 (5th Cir. 2012) ................................................................................................. 13

*Hunter v. FERC*,
569 F. Supp. 2d 12 (D.D.C. 2008) ......................................................................................... 15

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 3 of 24

*Inupiat Cmty. of the Arctic Slope v. Salazar,*
 486 F. App'x 625 (9th Cir. 2012) ........................................................ 13

*La Voz Radio de la Communidad v. FCC,*
 223 F.3d 313 (6th Cir. 2000) ............................................................... 15

*N. Slope Borough v. Andrus,*
 642 F.2d 589 (D.C. Cir. 1980) ............................................................. 10

*Native Vill. of Point Hope v. Salazar,*
 378 F. App'x 747 (9th Cir. 2010) ........................................................ 13

*Native Vill. of Point Hope v. Salazar,*
 680 F.3d 1123 (9th Cir. 2012) ............................................................. 13

*Natural Resources Def. Council, Inc. v. Hodel,*
 865 F.2d 288 (D.C. Cir. 1988) ............................................................. 13

*Schilling v. Rogers,*
 363 U.S. 666 (1960) ............................................................................ 15

*Sec'y of the Interior v. California,*
 464 U.S. 312 (1984) ................................................................ 8, 9, 10, 14

*Shell Oil Co. v. FERC,*
 47 F.3d 1186 (D.C. Cir. 1995) ............................................................. 13

*Telecomms. Research & Action Ctr. v. FCC,*
 750 F.2d 70 (D.C. Cir. 1984) ............................................................... 15

*Time Warner Entm't Co. v. FCC,*
 93 F.3d 957 (D.C. Cir. 1996) ............................................................... 15

*Tribal Vill. of Akutan v. Hodel,*
 869 F.2d 1185 (9th Cir. 1989) ............................................................. 14

*Trustees for Alaska v. U.S. Dep't of Interior,*
 919 F.2d 119 (9th Cir. 1990) ............................................................... 12

*Vill. of False Pass v. Clark,*
 733 F.2d 605 (9th Cir. 1984) ........................................................... 3, 14

## **Statutes**

28 U.S.C. § 1331 ....................................................................................... 15

28 U.S.C. § 1361 ....................................................................................... 15

43 U.S.C. § 1331(a) ..................................................................................... 4

43 U.S.C. § 1331(b) ..................................................................................... 8

43 U.S.C. § 1332(3) ..................................................................................... 4

43 U.S.C. § 1337(a)(1) ................................................................................. 9

43 U.S.C. § 1340(c) ................................................................................... 11

iii

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG Document 25 Filed 07/28/17 Page 4 of 24

43 U.S.C. § 1341(a) ................................................................................................. 1

43 U.S.C. § 1344(a) .............................................................................................. 8, 9

43 U.S.C. § 1344(d)(3) ............................................................................................ 9

43 U.S.C. § 1346(d) .............................................................................................. 11

43 U.S.C. § 1349 ..................................................................................................... 3

43 U.S.C. § 1349(b) .............................................................................................. 12

43 U.S.C. § 1349(c)(1) ............................................................................... 12, 13, 16

43 U.S.C. § 1349(c)(2) ................................................................................... 12, 17

43 U.S.C. § 1351 ............................................................................................ 11, 12

43 U.S.C. § 1802(1) ..................................................................................... 4, 5, 6, 7

## **Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................ 1, 2

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 1, 2

Federal Rule of Evidence 201(c) ............................................................................. 4

## **Regulations**

30 C.F.R. § 250.410 .............................................................................................. 12

30 C.F.R. § 550.202(e) .......................................................................................... 10

30 C.F.R. § 550.207 .............................................................................................. 10

30 C.F.R. § 550.208 .............................................................................................. 10

30 C.F.R. § 550.208(a) .......................................................................................... 10

30 C.F.R. § 550.209 .............................................................................................. 10

30 C.F.R. § 551.2 .................................................................................................. 10

30 C.F.R. § 551.5 .................................................................................................. 10

30 C.F.R. § 551.6 .................................................................................................. 10

Motion to Dismiss

*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)

# INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the American Petroleum Institute ("API") respectfully moves to dismiss the above-captioned case because the asserted claims fail to state a cognizable claim against the Federal Defendants, are not justiciable, and could not in any event be asserted in this Court.

This lawsuit challenges Executive Order 13795, entitled "Implementing an America-First Offshore Energy Strategy," signed by Defendant President Trump on April 28, 2017 to be implemented, in part, by Defendants Secretary of the Interior and Secretary of Commerce. Among other things, Section 5 of the Executive Order revised orders issued by President Obama on December 20, 2016 and January 27, 2015 withdrawing certain areas of the Outer Continental Shelf ("OCS") in the Arctic Ocean and the Atlantic Ocean from potential disposition for oil and gas leasing pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a). Section 5 re-opens certain sections of the Arctic and Atlantic OCS for future potential disposition for oil and gas leasing.

Plaintiffs contend that Section 5 of the Executive Order "exceeds [the President's] constitutional authority and his statutory authority under OCSLA." Complaint (Dkt. No. 1), ¶ 1. To remedy the alleged violations, Plaintiffs ask the Court to, *inter alia*, (1) declare that the Executive Order's "revers[al]" of prior "withdrawals of portions of the Arctic and Atlantic Oceans from oil and gas leasing[] is in excess of [the President's] statutory powers" and "in violation of[] the United States Constitution;" (2) "[e]njoin Defendants from complying with or relying in any way on Section 5" of the Executive Order; and (3) "[i]ssue a writ of mandamus compelling [the Secretaries of Interior and Commerce] to comply with the January 27, 2015, and

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 6 of 24

December 20, 2016, withdrawals of portions of the Arctic and Atlantic Oceans from oil and gas leasing." *Id.*, Relief Requested, ¶¶ 1–4.

On June 30, 2017, the Federal Defendants filed a motion to dismiss the Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. to Dismiss (Dkt. No. 12). As explained in the Federal Defendants' memorandum in support of dismissal, Plaintiffs do not state a cognizable claim because they lack both an applicable waiver of the Federal Defendants' sovereign immunity from suit, and a private right of action to enforce federal rights. *See* Defs.' Mem. (Dkt. No. 13) at 11–14. In addition, Plaintiffs' claims are not justiciable because (1) the constitutional separation of powers precludes a court from issuing the requested equitable remedies against a co-equal branch—here, the President—of the Federal Government, (2) Plaintiffs challenge a preliminary step to the consideration of oil and gas leasing that is not ripe (if ever) until after the Government completes further statutorily-mandated steps—such as the development of an initial five-year leasing program or issuance of permits—necessary for leasing and exploration of the affected areas of the Atlantic and Arctic OCS, and (3) Plaintiffs lack Article III standing because they face no imminent, concrete, or particularized harm from the Executive Order's authorization of the consideration of future OCS leasing in the affected areas of the Atlantic and Arctic OCS. *See id.* at 14–25.

API hereby adopts and incorporates the Federal Defendants' arguments by reference, and focuses in this motion on an additional ground that precludes this Court from exercising subject matter jurisdiction over Plaintiffs' complaint. Congress crafted a carefully delineated structure for OCS oil and gas development, along with corresponding provisions governing the appropriate courts of original jurisdiction for challenges to Government actions at different stages of the process. According to those congressional directives, not only is judicial review not

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 7 of 24

yet available—even assuming that Plaintiffs have Article III standing (which they do not) or state a cognizable claim for relief (which they have not)—but the first time Plaintiffs' claims even arguably could be ripe, judicial review is not available in this Court. *See* 43 U.S.C. § 1349. Having sought to challenge Government decisions regarding OCS development in the wrong forum, this Court should dismiss Plaintiffs' claims for lack of jurisdiction.

## CERTIFICATION OF MEET-AND-CONFER REGARDING THIS MOTION

In accordance with the requirements of this Court's Order, undersigned counsel for API met and conferred with Plaintiffs' counsel regarding this motion to dismiss. Because API contends that the claims must be dismissed on grounds that cannot be cured, the parties were unable to reach an agreement that would obviate the need for filing this motion.

## ARGUMENT

The overall structure of oil and gas exploration and development under OCSLA provides the framework for any challenge to the Government's OCS decisions. *See*, *e.g.*, *Vill. of False Pass v. Clark*, 733 F.2d 605, 608–09 (9th Cir. 1984) (considering "the structure of oil and gas exploration under [the] OCSLA" and the proper application of, *inter alia*, National Environmental Policy Act ("NEPA") claims to that structure). As the Federal Defendants have shown, even if the Plaintiffs' statutory and constitutional claims are otherwise justiciable (which they are not), Plaintiffs' claims are not yet ripe because, among other things, "[t]here will be no harm to the Plaintiffs from deferring the resolution of their claims until they can be reviewed in the context of a new five-year program" at a later stage of the OCS development process. Defs.' Mem. (Dkt. No. 13) at 16. More fundamentally, Plaintiffs' challenge would frustrate fundamental congressional objectives regarding the timing, character, and judicial review of the four-stage approval process for offshore oil and gas activities in the OCS.

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 8 of 24

I. **OCSLA Mandates Expeditious Exploration And Development Of The Nation's Critical OCS Oil And Gas Resources.**

The OCS is the area of submerged lands that lie seaward of a state's jurisdiction and that are subject to the "jurisdiction and control" of the United States. *See* 43 U.S.C. § 1331(a); *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 472 (D.C. Cir. 2009). OCSLA mandates and governs the development of offshore oil and gas resources on the OCS. *See* 43 U.S.C. § 1331, *et seq*. Congress enacted OCSLA, and amended the statute in 1978, to promote and ensure the "expedited exploration and development of the [OCS] in order to achieve national economic and energy policy goals, assure national security, reduce dependence on foreign sources, and maintain a favorable balance of payments in world trade." *Id*. § 1802(1); *see also id*. § 1332(3) (the OCS "should be made available for expeditious and orderly development, subject to environmental safeguards, in a manner which is consistent with the maintenance of competition and other national needs").

If the exploration and development of the OCS were critical national goals when Congress reiterated OCSLA's statutory purposes in the 1978 amendments, *see* 43 U.S.C. § 1802(1), they are even more so today. While total OCS production represented less than ten percent of total domestic oil production in 1981,[1] the OCS currently accounts for eighteen

_____

[1] U.S. Energy Information Administration ("EIA"), Crude Oil Production Statistics, *compare* Federal Offshore Production of Crude Oil (Thousand Barrels) http://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=MCRFP5F1&f=M, *with* U.S. Field Production of Crude Oil (Thousand Barrels) http://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=MCRFPUS1&f=M (last visited July 26, 2017). This Court may take judicial notice of government records and materials available on government websites. *See, e.g.*, Fed. R. Evid. 201(c); *Banks v. Warner*, No. 94-56732, 1995 WL 465773, at *1 (9th Cir. Aug. 7, 1995) ("It is entirely proper for a court to take judicial notice of records and reports of administrative agencies."); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) ("fail[ing] to see any merit to an objection to the [Fifth Circuit] panel taking judicial notice of the state agency's own website").

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)

percent of all domestic oil production, and contains an estimated 90 billion barrels of oil and 327 trillion cubic feet of natural gas in undiscovered fields.[2]  Among federal lands, the OCS accounts for more than seventy-five percent of oil production.[3]  Moreover, the Department of the Interior's ("DOI") Bureau of Ocean Energy Management ("BOEM") estimates that the Alaska and Atlantic OCS together contain roughly 41 percent of the undiscovered technically recoverable resources of the nation's OCS.[4]

Likewise, a motivation for the 1978 amendments to OCSLA—the desire to "reduce dependence on foreign sources," 43 U.S.C. § 1802(1)—applies at least as fully today as it did forty years ago.  In 2008, U.S. crude oil production had fallen to the lowest level since 1946.[5]  But due largely to a combination of massive private investment and the oil industry's continuous development of innovative techniques for locating and producing hydrocarbon resources, that

---

[2] *See* BOEM, *Oil and Gas Energy Program*, *available at* http://www.boem.gov/Oil-and-Gas-Energy-Program/index.aspx. (last visited July 26, 2017).

[3] Congressional Research Service, *U.S. Crude Oil and Natural Gas Production in Federal and Nonfederal Areas* (June 22, 2016), at Table 1, *available at* https://fas.org/sgp/crs/misc/R42432.pdf (last visited July 26, 2017).

[4] BOEM, *Assessment of Undiscovered Technically Recoverable Oil and Gas Resources of the Nation's Outer Continental Shelf, 2016*, Factsheet at 2, *available at* https://www.boem.gov/2016-National-Assessment-Fact-Sheet/ (last visited July 26, 2017).  The Alaska OCS ranks second among OCS regions in future resources (behind the Gulf of Mexico), with the Chukchi and Beaufort Seas at issue in this litigation, *see*, *e.g.*, Compl. (Dkt. No. 1), ¶ 21, accounting for the overwhelming majority of the Alaska OCS resources.  *See* BOEM, *Assessment of Undiscovered Technically Recoverable Oil and Gas Resources of the Nation's Outer Continental Shelf, 2016*, *available at* https://www.boem.gov/2016-National-Assessment-Map/ (last visited July 26, 2017).  The Atlantic OCS ranks third in natural gas and fourth in oil reserves.  *See* BOEM, *Assessment of Undiscovered Technically Recoverable Oil and Gas Resources of the Nation's Outer Continental Shelf, 2016*, Factsheet at 2, *available at* https://www.boem.gov/2016-National-Assessment-Fact-Sheet/ (last visited July 26, 2017).

[5] EIA, *Crude Oil Production Statistics*, *available at* http://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=pet&s=mcrfpus1&f=a (last visited July 26, 2017).

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 10 of 24

production had risen to 8.9 million barrels a day in 2016,[6] and the EIA expects U.S. crude oil production to reach 9.9 million barrels a day in 2018, "which would mark the highest annual average production in U.S. history."[7] Continuing current trends, the EIA expects the United States to become a net energy exporter—with oil products continuing to dominate national energy trade—by 2026,[8] progressing toward the Congress' stated goal of increased energy self-sufficiency.

Oil and natural gas currently supply more than fifty-three percent of our nation's energy production.[9] Notwithstanding progress in the development of alternative energy sources, the federal government predicts that oil and natural gas will still contribute over fifty percent of our nation's energy production in 2050.[10] The federal government estimates that sixty-five percent of OCS oil and gas resources remain to be discovered and produced.[11] Thus, the continued development of the OCS is essential in order to "assure national security, reduce dependence on foreign sources, and maintain a favorable balance of payments in world trade." 43 U.S.C. § 1802(1).

---

[6] EIA, *Short-Term Energy Outlook* (July 2017), at 1, *available at* https://www.eia.gov/outlooks/steo/pdf/steo_full.pdf (last visited July 26, 2017).

[7] *Id.*

[8] EIA, *Annual Energy Outlook 2017*, at 18 (January 5, 2017), *available at* https://www.eia.gov/outlooks/aeo/pdf/0383(2017).pdf (last visited July 26, 2017)

[9] *Id.*, at Table A1, *available at* https://www.eia.gov/outlooks/aeo/data/browser/#/?id=1-AEO2017&cases=ref2017&sourcekey=0 (last visited July 26, 2017).

[10] *Id.* Renewable energy sources—other than hydroelectric power—are expected to increase over that period, but are starting from a small base, and are therefore expected to supply only roughly ten percent of the nation's energy needs in 2050. *Id.*

[11] *See* BOEM, *Assessment of Undiscovered Technically Recoverable Oil and Gas Resources of the Nation's Outer Continental Shelf, 2016*, Factsheet at 3, *available at* https://www.boem.gov/2016-National-Assessment-Fact-Sheet/ (last visited July 26, 2017).

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)

Oil and gas production also has ripple effects throughout the national economy. The most recent comprehensive analysis of these effects found that the oil and gas industry supports 9.8 million full time and part time jobs, accounting for 5.6 percent of total national employment.[12] The industry adds more than $1.2 trillion annually to the national economy.[13] Moreover, OCS leasing and development contributes substantially to federal coffers. For example, total federal oil and gas revenues from the federal OCS amounted to more than $2.7 billion in FY2016 alone.[14]

In short, it remains the case that the exploration and development of the OCS serves "to achieve national economic and energy policy goals." 43 U.S.C. § 1802(1). A reviewing Court should therefore be hesitant to frustrate the OCS development promoted through the carefully delineated development structure created in OCSLA. In particular, courts should heed the express limitations on the timing, scope, and venue of judicial review of OCS-related decisions that Congress designed to further promote the national interest in offshore development.

---

[12] PricewaterhouseCoopers, *The Economic Impacts of the Oil and Natural Gas Industry on the U.S. Economy in 2011*, at E-2 (July, 2013), *available at* http://www.api.org/~/media/Files/Policy/Jobs/Economic_impacts_Ong_2011.pdf (last visited July 26, 2017).

[13] *Id.* Production alone on federal lands contributed $166 billion in national economic output in 2015. *See* U.S. Dep't of the Interior, *Economic Report, FY 2015* (July 17, 2016), at vi, *available at* https://www.doi.gov/sites/doi.gov/files/uploads/fy2015_doi_econ_report_2016-06-20.pdf (last visited July 26, 2017). Indeed, lessees expend billions of dollars to place their federal leases into production. *See*, *e.g.*, BOEM, *Annual Progress Report on the Outer Continental Shelf (OCS) Oil and Gas Leasing Program 2012-2017* (Oct. 2013), at 14, *available at* http://www.boem.gov/Five-Year-Program-Annual-Progress-Report-2013/ (describing "newly sanctioned $4 billion development project" by two lessees in the Gulf of Mexico) (last visited July 26, 2017).

[14] *See* DOI, Office of Natural Resource Revenue, Statistical Information, *available at* http://statistics.onrr.gov/ReportTool.aspx (Reported Revenues (Single Year Only), FY2016, Federal Offshore, All Offshore Regions) (last visited July 26, 2017).

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG   Document 25   Filed 07/28/17   Page 12 of 24

## II.    OCSLA's Staged Process For Oil And Gas Development And Corresponding Provisions For Judicial Review Foreclose Plaintiffs' Legal Challenge In The District Courts At This Time.

### A.    Congress Designed A Four-Stage Government Review Process For OCS Exploration And Development.

To facilitate OCSLA's stated purpose to "promote the swift, orderly and efficient exploration" of OCS oil and gas resources,[15] Congress created "four distinct statutory stages to developing an offshore oil [or gas] well: (1) formulation of a five year leasing plan . . .; (2) lease sales; (3) exploration by the lessees; (4) development and production."  *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984); *see also Ctr. for Biological Diversity*, 563 F.3d at 472–73.[16]  Congress has specified the analyses—including environmental reviews—and standard for Government review attendant to each stage.

### 1.    The Five-Year Leasing Program.

The five-year leasing program is the first step in the process, in which DOI prepares "a schedule of proposed lease sales indicating, as precisely as possible, the size, timing, and location of leasing activity which [the Secretary] determines will best meet national energy needs for the five-year period following its approval or reapproval."  43 U.S.C. § 1344(a). "[P]rospective lease purchasers acquire no rights to explore, produce, or develop at this first stage . . . ."  *Sec'y of Interior*, 464 U.S. at 338.

In deciding upon the five-year leasing program, OCSLA directs the Secretary to "consider[] [the] economic, social, and environmental values of the renewable and nonrenewable resources contained in the [OCS], and the potential impact of oil and gas exploration on other

---

[15] H.R. Rep. No. 95-590, at 8 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1460.

[16] Responsibility for the OCS program resides principally in the Secretary of the Interior ("Secretary"), *see* 43 U.S.C. § 1331(b), much of whose authority is delegated to BOEM.

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 13 of 24

resource values of the [OCS] and the marine, coastal, and human environments." 43 U.S.C. § 1344(a)(1). The Secretary must also base the "[t]iming and location of exploration, development, and production of oil and gas among the oil- and gas-bearing physiographic regions" of the OCS on a consideration of eight defined factors concerning, among other things, environmental risks, the needs of energy markets, other uses of the OCS regions, and the interest of oil and gas producers in developing a region. *See* 43 U.S.C. § 1344(a)(2). Finally, the Secretary must assure that the Government receive "fair market value" for any leasing, and "select the timing and location of leasing, to the maximum extent practicable, so as to obtain a proper balance between the potential for environmental damage, the potential for the discovery of oil and gas, and the potential for adverse impact on the coastal zone." 43 U.S.C. § 1344(a)(3)–(4).

In short, "[t]he key national decisions as to the size, timing, and location of OCS leasing . . . are made at this first stage." *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588, 595 (D.C. Cir. 2015). Indeed, "no lease shall be issued unless it is for an area included in the approved leasing program . . . ." 43 U.S.C. § 1344(d)(3). The five-year leasing program is also the basis of "long-term plans" for oil and gas leasing and development for "[f]ederal, state, and local governments, and the companies that participate in national and international energy markets." *Ctr. for Sustainable Economy*, 779 F.3d at 595.

### 2. The Lease Sale.

The second stage in the OCS process is the conduct of the lease sales provided for in the previously-adopted five-year program. 43 U.S.C. § 1337(a)(1). "A lessee does not, however, acquire an immediate or absolute right to explore for, develop, or produce oil or gas on the OCS; those activities require separate, subsequent federal authorization." *Sec'y of Interior*, 464 U.S. at

9

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 14 of 24

317. *N. Slope Borough v. Andrus*, 642 F.2d 589, 593 (D.C. Cir. 1980) (noting that "no drilling—not even of an exploratory nature" is permitted with the purchase of a lease).

Preliminary OCS activities conducted on a lease—particularly "seismic" surveying—principally "fall under the broad rubric of 'testing'" such as "geological, geophysical, and other surveys necessary to develop a comprehensive exploration plan." *Id*. at 594 (alteration and quotation marks omitted); *see also*, *e.g.*, 30 C.F.R. § 550.207. Such preliminary activities are generally available after issuance of a lease and have generally been considered along with legal challenges to lease sales. *See*, *e.g.*, *Sec'y of Interior*, 464 U.S. at 338–39 ("Lease [sale] purchasers acquire the right to conduct only limited 'preliminary' activities on the OCS—geophysical and other surveys that . . . do not result in any significant environmental impacts."); *N. Slope Borough*, 642 F.2d at 606 ("At this stage of review, then, we are chiefly (though not exclusively) concerned about those hazards associated with the limited preliminary activities permitted to the lessees during the lease sale phase . . . .").

While some preliminary activities, such as seismic surveys, may be conducted off-lease and prior to a lease sale, *see* 30 C.F.R. § 551.2, whether conducted on a lease or off-lease, these preliminary activities must first be approved by BOEM, *see* 30 C.F.R. § 551.5 (off-lease); 30 C.F.R. § 550.208 (on-lease), and are subject to continuing BOEM control through regulations, lease stipulations, and mitigation measures, *see*, *e.g.*, 30 C.F.R. § 550.208(a) (requiring lessees to provide notice of activities); 30 C.F.R. §§ 550.209, 550.202(e) (explaining that notice must show that activity "[d]oes not cause undue or serious harm or damage to the human, marine, or coastal environment"); 30 C.F.R. § 551.6 (prohibiting approved activities from, *inter alia*, "caus[ing] harm or damage to life" of "caus[ing] pollution").

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG   Document 25   Filed 07/28/17   Page 15 of 24

### 3. The Exploration Stage.

The third stage of the OCS process is exploratory drilling, which must be carried out pursuant to an exploration plan submitted by the lessee. 43 U.S.C. § 1340(c). "Interior reviews and determines whether to approve the lessees' . . . exploration plans." *Ctr. for Biological Diversity*, 563 F.3d at 473. In making this decision, the Secretary "shall disapprove such plan if he determines that (A) any proposed activity under such plan would result in any condition described in section 1334(a)(2)(A)(i) of this title [serious harm or damage to life (including fish and other aquatic life), to property, to any mineral (in areas leased or not leased), to the national security or defense, or to the marine, coastal, or human environment], and (B) such proposed activity cannot be modified to avoid such condition." 43 U.S.C. § 1340(c)(1).

OCSLA further dictates the information the Secretary shall use in making exploration plan approval decisions: "The Secretary shall consider available relevant environmental information in making decisions [including those relating to exploration plans . . . ]." 43 U.S.C. § 1346(d).

### 4. Development And Production.

The fourth and final phase of the OCS process is development and production, which is reached only if the company's exploratory efforts discover commercially recoverable quantities of hydrocarbons. At the development and production stage, DOI, along with affected state and local governments, reviews an additional and more detailed plan from the lessee, *see* 43 U.S.C. § 1351, for (in typical cases) construction of a production platform, installation of processing equipment, and the laying of pipelines, all of which may remain in place for decades. *See* 43 U.S.C. § 1351(c). "If Interior finds that the plan would 'probably cause harm or damage . . . to the marine, coastal or human environments,' then the plan, and consequently the leasing

11

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG   Document 25   Filed 07/28/17   Page 16 of 24

program, may be terminated." *Ctr. for Biological Diversity*, 563 F.3d at 473 (quoting 43 U.S.C.

§ 1351(h)(1)(D)(i)).[17]

### B. Congress Dictated The Timing And Venue For Challenges To The Government's Staged OCS Development Decisions, And No Stage Implicating Plaintiffs' Claimed Environmental Injuries Is Justiciable In This Court.

In addition to defining the nature of offshore oil and gas operations at each stage of

development, Congress specified both the standard of review and the federal courts of exclusive

jurisdiction for legal challenges at each stage. While OCSLA also provides jurisdiction in the

district courts with respect to cases and controversies arising out of certain specific OCS

operations, *see* 43 U.S.C. § 1349(b), none of them are implicated by the instant lawsuit.[18]

The statute includes special provisions that vest exclusive jurisdiction in the courts of

appeals. Section 1349(c)(1) provides that "[a]ny action of the Secretary to approve a [five-year]

leasing program . . . shall be subject to judicial review only in the United States Court of Appeal

for the District of Columbia," and Section 1349(c)(2) provides that "[a]ny action of the Secretary

to approve, require modification of, or disapprove any exploration plan or any development and

---

[17] A lessee operating under an approved exploration or development plan must also obtain a permit prior to drilling a well pursuant to the plan. *See* 30 C.F.R. § 250.410.

[18] This district court jurisdiction is limited to "cases and controversies arising out of, or in connection with (A) any operation conducted on the [OCS] which involves exploration, development, or production of the minerals, of the subsoil and seabed of the [OCS], or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit . . . ." 43 U.S.C. § 1349(b)(1). *See also Trustees for Alaska v. U.S. Dep't of Interior*, 919 F.2d 119, 121 (9th Cir. 1990). Plaintiffs do not allege jurisdiction under this provision. Nor could they given that no covered OCS leases or exploration, development, or production operations or permits may occur until later stages of the OCS development process.

12

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)

production plan under this subchapter shall be subject to judicial review only in a United States court of appeals for a circuit in which an affected State is located."[19]

Congress's use of the term "only" makes clear that the jurisdiction in the courts of appeals established by Section 1349 is exclusive. *See*, *e.g.*, *Edwardsen v. U.S. Dep't of the Interior*, 268 F.3d 781, 784 (9th Cir. 2001) ("Because the alleged NEPA violation arises under [the OCS Lands Act], which provides for exclusive jurisdiction in the court of appeals, we have original jurisdiction over the NEPA claim."); *Shell Oil Co. v. FERC*, 47 F.3d 1186, 1192 (D.C. Cir. 1995) (recognizing that that OCSLA "provides that judicial review of decisions with respect to . . . exploration, development or production plans shall take place only in the courts of appeals").

For this reason, parties asserting claims in connection with DOI's approval of five-year leasing programs must, and have routinely, brought direct challenges in the D.C. Circuit, [20] and in the circuit of the state adjacent to the proposed drilling operations in connection with exploration and development plans.[21]

---

[19] Section 1349(c)(3) also sets forth various requirements that must be met with respect to a challenge brought pursuant to Sections 1349(c)(1) or (2).

[20] *See Ctr. for Sustainable Economy*, 779 F.3d at 595 (asserting OCSLA and NEPA violations); *Ctr. for Biological Diversity*, 563 F.3d at 471–72 (asserting NEPA, APA and other violations); *Natural Resources Def. Council, Inc. v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (asserting NEPA and other violations); *California v. Watt*, 668 F.2d 1290 (D.C. Cir. 1981) (asserting NEPA, APA and other violations).

[21] *See Native Vill. of Point Hope v. Salazar*, 680 F.3d 1123 (9th Cir. 2012); *Inupiat Cmty. of the Arctic Slope v. Salazar*, 486 F. App'x 625 (9th Cir. 2012); *Defenders of Wildlife v. BOEM*, 684 F.3d 1242 (11th Cir. 2012) (asserting NEPA and ESA claims); *Gulf Restoration Network, Inc. v. Salazar*, 683 F.3d 158 (5th Cir. 2012); *Native Vill. of Point Hope v. Salazar*, 378 F. App'x 747 (9th Cir. 2010) (asserting NEPA and other violations); *Alaska Wilderness League v. Kempthorne*, 548 F.3d 815 (9th Cir. 2008) (same), *vacated*, 571 F.3d 859 (9th Cir. 2009); *Edwardsen*, 268 F.3d at 784 (same).

13

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG   Document 25   Filed 07/28/17   Page 18 of 24

Congress thus vested the federal courts of appeals with exclusive jurisdiction over three of the four stages of OCS development—leaving only the lease sale stage, and attendant decisions, to the district courts. But that stage comes only after the five-year leasing program stage. And, it is well-established that a lease sale itself does not involve any concrete environmental injury.[22]

These delineations of judicial jurisdiction were carefully developed. "If the distinction between a sale of a 'lease' and the issuance of a permit to 'explore,' 'produce,' or 'develop' oil or gas seems excessively fine, it is a distinction that Congress has codified with great care." *Sec'y of Interior*, 464 U.S. at 335–36. Indeed, "[t]he stated reason for th[e] four part division [of OCS development] was to forestall ***premature litigation regarding adverse environmental effects*** that all agree will flow, if at all, only from the latter stages of OCS exploration and production." *Id.* at 341 (emphasis added).

That Plaintiffs cite other statutes as the basis of jurisdiction, *see* Compl. (Dkt. 1), ¶¶ 2–3, does not alter the exclusivity vested in the courts of appeals for the majority of the Government's OCS development decisions, including the "key national decisions" that "are made at th[e] first stage," *Ctr. for Sustainable Economy*, 779 F.3d at 595, and thus committed to review in the D.C.

_____

[22] *See Sec'y of Interior*, 464 U.S. at 338–39 ("Lease [sale] purchasers acquire the right to conduct only limited 'preliminary' activities on the OCS—geophysical and other surveys that . . . do not result in any significant environmental impacts."); *see also Tribal Vill. of Akutan v. Hodel*, 869 F.2d 1185, 1194 (9th Cir. 1989) (recognizing that "the risks to endangered species during the lease sale stage ***are virtually nonexistent***" (emphasis added)); *False Pass*, 733 F.2d at 610–11 ("The lease sale decision itself could not directly place gray or right whales in jeopardy . . . ."); *Defenders of Wildlife v. BOEM*, 871 F. Supp. 2d 1312, 1329 (S.D. Ala. 2012) ("The inescapable fact of the matter is that BOEM's approval of a [lease] bid, and the issuance of a lease . . ., is a narrowly circumscribed event, in terms of its repercussions for listed species and their habitat.") (rejecting ESA challenge).

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)

Circuit. Instead, when a special statute commits review to the court of appeals, "neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1361 provides jurisdiction to district courts." *Chiron Corp. v. NTSB*, 27 F. Supp. 2d 257, 260 (D.D.C. 1998) (citing *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 72, 77–78 (D.C. Cir. 1984)). "'[F]ederal statutes frequently assign jurisdiction to a court other than the federal district courts,' and when they do so, 'Congress negates district court jurisdiction under [28 U.S.C.] § 1331.'" *La Voz Radio de la Communidad v. FCC*, 223 F.3d 313, 319 (6th Cir. 2000) (quoting *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 518–19 (3d Cir. 1998)).

Nor can Plaintiffs' reliance on the Declaratory Judgment Act, *see* Compl. (Dkt. 1), ¶ 3, overcome OCSLA's exclusive jurisdiction provisions, *see American Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008), and in any event, the Declaratory Judgment Act does not grant federal courts jurisdiction, but rather, authorizes a specific type of relief in cases where jurisdiction already exists. *See*, *e.g.*, *Schilling v. Rogers*, 363 U.S. 666, 676 (1960).

Even to the extent that Plaintiffs challenge the procedure through which a decision regarding OCS development was made, "where a statute commits review of agency action to the Court of Appeals . . . , challenges 'to the manner in which the agency has exercised' its statutory authority do not generally overcome the prohibition of district court review." *Hunter v. FERC*, 569 F. Supp. 2d 12, 15 (D.D.C. 2008) (quoting *Time Warner Entm't Co. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996)). Thus, "courts regularly hold that a challenge to the procedure of an agency action is tantamount to challenging the action itself." *Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1020 (N.D. Cal. 2006). *See also City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979) ("[W]e disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 20 of 24

courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be.").  Otherwise, a plaintiff could "through careful pleading . . . avoid the strict jurisdictional limits imposed by Congress."  *American Bird Conservancy*, 545 F.3d at 1194 (rejecting argument that exclusive review provision did not apply because the plaintiff was not challenging the agency decision itself but merely a purported "failure to follow the procedural and substantive steps outlined in statutes outside the purview of" the agency) (citation omitted).

Here, Plaintiffs' pleading cannot avoid the "strict jurisdictional limits imposed by Congress," *id.*, but rather makes clear the applicability of those limits to preclude jurisdiction in this Court.  Plaintiffs claim that "[m]embers of the Plaintiff organizations visit or otherwise use and enjoy" the affected regions of the Arctic and Atlantic OCS, and "[a]ny activities, such as oil and gas exploration or development . . . that destroy, degrade, or diminish the wild and natural state of these areas . . . interfere with Plaintiffs' members' use and enjoyment . . . ."  Compl. (Dkt. No. 1), ¶ 15.  Plaintiffs therefore claim injury from Section 5 of Executive Order 13795 because, they allege, "[t]he purpose and likely result of the order are oil and gas exploration and development in the regions affected by the reversals . . . ."  *Id.*, ¶ 16.

Viewing Plaintiffs' prospective fears of harm from oil and gas development in the context of OCSLA's four-stage process, however, no OCS leasing—let alone development—can occur until after the affected areas of the Arctic and Atlantic OCS are included in a five-year leasing program.  *See supra* pp. 8–9; Defs.' Mem. (Dkt. No. 13) at 16–17.  Only then will "[t]he key national decisions as to the size, timing, and location of OCS leasing" be made.  *Ctr. for Sustainable Economy*, 779 F.3d at 595.  Judicial review at that stage is restricted to the D.C. Circuit.  *See supra* pp. 12–15; 43 U.S.C. § 1349(c)(1).  Moreover, Government authorization of OCS activities capable of impacting the environment in the ways that allegedly harm Plaintiffs,

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG   Document 25   Filed 07/28/17   Page 21 of 24

*see* Compl. (Dkt. No. 1), ¶¶ 15–16, cannot occur until the exploration and development stages of OCSLA's four-stage process. *See supra* pp. 9–11, 14 & n.22.[23] Again, judicial review is restricted to the courts of appeals. *See supra* pp. 12–15; 43 U.S.C. § 1349(c)(2). Plaintiffs' lawsuit in this federal district court, thus, seeks to circumvent the structure for OCS development created, and the underlying policy choices made, by Congress.

As Congress determined in OCSLA, the consideration and development of OCS mineral reserves is critical to achieving national energy goals. Judicial review of that consideration and development must proceed at the time, and in the place, that Congress authorized suit. By challenging the President's authority to "re-open withdrawn areas [of the OCS] to disposition" for oil and gas leasing, Compl. (Dkt. No. 1), ¶ 58; *see also id.*, ¶ 64, Plaintiffs raise the type of challenge—whether areas of the OCS should be made available for leasing—that Congress has exclusively consigned to the D.C. Circuit's review of a five-year leasing program where "[t]he key national decisions as to the size, timing, and location of OCS leasing . . . are made." *Ctr. for Sustainable Economy*, 779 F.3d at 595.

While Plaintiffs' future challenge to Section 5 in the context of a final five-year program including the affected areas of the Arctic and Atlantic OCS would suffer from the same defects that the Federal Defendants have identified in this case, that is a determination to be made exclusively by the D.C. Circuit. For present purposes, Plaintiffs' attempt to challenge—and claim harm from—OCS development activities at the wrong time, *see* Defs.' Mem. (Dkt. No. 13) at 16–17, and in the wrong place, *see supra*, should be dismissed.

---

[23] Off-lease seismic surveying may occur prior to the exploration and development stages, but only pursuant to permits approved by BOEM. *See supra* p. 10. No such permits have issued in the affected areas of the Arctic and Atlantic OCS.

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Federal Defendants' Motion to Dismiss, this Court should dismiss the Complaint.

Respectfully submitted,

/s/ James D. Linxwiler
James D. Linxwiler (Alaska Bar No. 7705185)
Christina A. Rankin (Alaska Bar No. 0306034)
Guess & Rudd P.C.
1029 W. 3rd Ave. #400
Anchorage, AK 99501
Tel: (907) 793-2200
Fax: (907) 793-2299
jlinxwiler@guessrudd.com
crankin@guessrudd.com

Steven J. Rosenbaum (*Pro hac vice*)
Bradley K. Ervin (*Pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St. N.W.
Washington, D.C. 20001
Tel: (202) 662-5568
Fax: (202) 778-5568
rosenbaum@cov.com
bervin@cov.com

*Attorneys for Intervenor-Defendant American Petroleum Institute*

July 28, 2017

18

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.,* No. 3:17-cv-00101 (SLG)
Case 3:17-cv-00101-SLG    Document 25    Filed 07/28/17    Page 23 of 24

# CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2017, I caused a true and correct copy of the

foregoing Motion to Dismiss to be filed with the Court electronically and served by the Court's

CM/ECF System upon the following:

Erik Grafe
Earthjustice
441 W. 5th Ave., Suite 301
Anchorage, AK 99501
Tel: 907-792-7102
Fax: 907-277-1390
Email: egrafe@earthjustice.org

Eric P. Jorgensen
Earthjustice
325 Fourth Street
Juneau, AK 99801
Tel: 907-586-2751
Fax: 907-463-5891
Email: ejorgensen@earthjustice.org

Nathaniel S.W. Lawrence
Natural Resources Defense Council
3723 Holiday Drive, SE
Olympia, WA 98501
Tel: 360-534-9900
Email: nlawrence@nrdc.org

Nancy S. Marks
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, NY 10011
Tel: 212-727-2700
Fax: 415-795-4799
Email: nmarks@nrdc.org

*Counsel for Plaintiffs*

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
U.S. Department of Justice
Environment & Natural Resources Division
601 D Street, N.W.
Washington, D.C. 20004
Tel: 202-514-0180
Fax: 202-514-0057
Email: sarah.himmelhoch@usdoj.gov

*Counsel for Federal Defendants*

 */s/  James D. Linxwiler*
James D. Linxwiler

19

Motion to Dismiss
*League of Conservation Voters, et al., v. Trump, et al.*, No. 3:17-cv-00101 (SLG)