JAHNA LINDEMUTH
ATTORNEY GENERAL
Bradley E. Meyen (AK Bar No. 8506067)
Jennifer E. Douglas (AK Bar No. 1605029)*
Assistant Attorneys General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK  99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: brad.meyen@alaska.gov
        jennifer.douglas@alaska.gov

Attorneys for State of Alaska

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| LEAGUE OF CONSERVATION VOTERS, *et al.,* | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) | Case No. 3:17-cv- 00101- SLG |
| DONALD J. TRUMP, *et al.,* | ) ) ) | **MOTION OF THE STATE OF** |
| *Defendants,* | ) ) | **ALASKA FOR LEAVE TO** **INTERVENE** |
| AMERICAN PETROLEUM INSTITUTE, | ) ) | |
| *Intervenor-Defendant.* | ) ) ) | |

Pursuant to Federal Rule of Civil Procedure 24, the State of Alaska ("State")

moves for leave to intervene as a defendant in this case. This motion is supported by the

accompanying Declaration of Chantal Walsh in Support of the State's Motion for Leave

to Intervene ("Walsh Decl."), the State's Proposed Answer, and a Proposed Order. The

State respectfully submits that it is entitled to intervene as of right, but in the alternative, asks the Court to grant it permissive intervention.

Counsel for the State consulted with counsel for Plaintiffs, the Federal Defendants, and Defendant-Intervenor American Petroleum Institute ("API") regarding the relief requested in the State's motion to intervene. API's counsel consented to the State's motion, and the Federal Defendants' and Plaintiffs' counsel both stated that they do not oppose the State's motion.

## I.    INTRODUCTION

League of Conservation Voters, Natural Resources Defense Council, Sierra Club, Alaska Wilderness League, Defenders of Wildlife, Northern Alaska Environmental Center, Resisting Environmental Destruction of Indigenous Lands, Center for Biological Diversity, Greenpeace, Inc., and the Wilderness Society (hereafter, "Plaintiffs") challenge the authority of President Donald J. Trump to adopt, and the ability of the Secretaries of the Departments of Interior and Commerce to implement, Section 5 of Executive Order 13795.[1] The declaratory, injunctive, and mandamus relief Plaintiffs seek would have substantial adverse impacts on the State.

Section 5 of Executive Order 13795 implements section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a), a provision that authorizes the president to withdraw unleased lands from disposition for oil and gas leasing. President Trump modified prior executive orders issued by former

---

[1]    "Implementing an America-First Offshore Energy Strategy," Exec. Order 13795, 82 Fed. Reg. 20,816 (May 3, 2017).

President Barack Obama by withdrawing only areas of the Outer Continental Shelf that had been designated as marine sanctuaries as of July 14, 2008. Former President Obama's implementation of this same provision of OCSLA had withdrawn extensive areas of the outer continental shelf in the Chukchi and Beaufort seas from oil and gas leasing indefinitely;[2] President Trump's executive order allows these Arctic areas to be re-opened for energy exploration.

With respect to the Chukchi and Beaufort seas, Plaintiffs assert that the federal waters "border sensitive federal lands and provide habitat to a rich array of unique wildlife species" as well as "support thriving indigenous Alaska Native cultural and subsistence activities." (Compl. ¶ 21; Dkt. No. 1). Plaintiffs also identify Arctic mammals that have been listed under the Endangered Species Act (polar bears and bearded seals). (Compl. ¶ 21). They further assert that the region has "little infrastructure" to support industrial activities, and "contains only eight small communities, unconnected to one another by roads." (Compl. ¶ 22).

The federal waters in the Arctic outer continental shelf extend from the State's three-mile offshore boundary;[3] State offshore land within the coastal zone of the Beaufort Sea is available for oil and gas leasing, and in some cases, already subject to lease.

---

[2]     President Obama's presidential memoranda implementing Section 12(a) of OCSLA were issued on January 27, 2015 and December 20, 2016.

[3]     *See* 43 U.S.C. § 1331(a) (defining "outer Continental Shelf" as "all submerged lands lying seaward and outside of the area of lands beneath navigable waters"); 43 U.S.C. § 1301(a)(2) (defining "lands beneath navigable waters" to include those lands covered by tidal waters seaward to a line three geographical miles from the state coast line).

*League of Conservation Voters, et al. v. Trump, et al.*        Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant                    Page 2

(Walsh Decl. ¶ 9). Oil and gas development on federal lands adjacent to state lands helps to create more favorable economics for development of state lands, enables the use of shared facilities to develop state and federal resources, increases job prospects for Alaskans, and benefits the State financially. (Walsh Decl. ¶¶ 6 – 8, 10 – 11). The State has a Constitutional duty to protect Alaska's natural resources, both for conservation and to maintain their use and enjoyment by all Alaskans.[4] The State also has duties to develop its natural resources, promote economic development, and make economic opportunities available to its residents.[5] If Plaintiffs' claims succeed, and the Arctic outer continental shelf is forever off-limits for oil and gas leasing, the State will ultimately lose money.

Furthermore, the State has general management authority over fish and wildlife within Alaska, and has lead responsibility for such management absent federal preemption.[6] Various state agencies are further charged with the responsibility of protecting these resources.[7] This balance of interests is unique to the State, and no other

---

[4]     Alaska Const. Art. VIII, §§ 1, 2.

[5]     *Id.*; *see also* AS 44.33.020(a)(30) – (35); AS 44.99.100(a); AS 38.05.180(a)(1)(A) ("The legislature finds that … the people of Alaska have an interest in the development of the state's oil and gas resources to … maximize the economic and physical recovery of the resources …").

[6]     Exec. Order 10857, 25 Fed. Reg. 33 (Jan. 5, 1960); *Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976) (recognizing that states have broad trustee and police powers over wild animals within their jurisdictions unless preempted by federal law).

[7]     Alaska Const. Art. VIII, § 4 (requiring the State's replenishable resources to be "utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses."); AS 38.05.035(e) (requiring a written finding that the interests of the state will be best served prior to leasing land or resources); AS 46.03.010(a) ("It is the policy of the state to … protect its natural resources and environment and control water, land, and air pollution, in order to enhance the health,

*League of Conservation Voters, et al. v. Trump, et al.*          Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant                    Page 4 of 16
Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 4 of 16

party will represent those interests in this litigation. Accordingly, the State moves to intervene, both as a matter of right and, alternatively, through permissive intervention.

## II.     THE STATE IS ENTITLED TO INTERVENE AS OF RIGHT

The Ninth Circuit recognizes a four-part test for intervention as of right under Federal Rule of Civil Procedure 24(a)(2): (1) timely application for intervention; (2) a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may impair or impede the applicant's ability to protect its interests; and (4) the applicant's interests would not be adequately represented by existing parties.[8] Each of these factors is satisfied here.

### A.     The State's motion to intervene is timely.

The Court will consider three factors in determining whether a motion to intervene is timely: (a) the stage of the proceedings, (b) prejudice to existing parties, and (c) the reason for delay in moving to intervene.[9] Prejudice to existing parties is the most important timeliness consideration.[10]

API and the Federal Defendants have filed motions to dismiss, and Plaintiffs' response is due September 8, 2017. If permitted leave to intervene, the State would support the existing motions to dismiss [Dkt. Nos. 12, 13, & 25], and does not intend to

---

safety, and welfare of the people of the state and their overall economic and social well-being.")

[8]      *See Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*).

[9]      *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

[10]      *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

*League of Conservation Voters, et al. v. Trump, et al.*          Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant                              Page 5 of 16

request any alterations of the Court's existing order [Dkt. No. 29] establishing the briefing schedule for those motions. Thus, none of the existing parties will be prejudiced by the State intervening. The proceedings are still at an early stage and there is no delay associated with the State's current request.

### B. The State has significant protectable interests related to leasing on the Arctic outer continental shelf.

A prospective intervenor must demonstrate that it has a "significantly protectable interest" by showing that "the injunctive relief sought by the plaintiffs will have direct, immediate and harmful effects upon [its] legally protectable interests."[11] Generally it is enough that the interest asserted is protectable under some law and there is a relationship between the protected interest and the claims at issue.[12]

With respect to the issues raised in Plaintiffs' Complaint, the State has protectable interests both in protecting the natural resources potentially affected by development of the Arctic outer continental shelf, as well as in developing adjacent state resources and promoting economic development.

The State's Constitutional responsibility for natural resources includes equally important duties to conserve and to develop. The State has specific duties "to encourage the . . . development of its resources" and to provide for "development . . . of all natural resources belonging to the State."[13] The Alaska state legislature, in turn, has charged state

---

[11]  *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

[12]  *Id.*

[13]  Alaska Const. Art. VIII, §§ 1, 2.

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 6 of 16

agencies with encouraging assessment and development of natural resources to maximize economic and physical recovery.[14]

Development of oil and gas on federal lands has direct and indirect impacts on state land development. (Walsh Decl. ¶¶ 6 – 8, 10 – 11). Although the challenged portion of Executive Order 13795 covers federal land, its proximity to state land creates potential effects on the State's resource development interests. Successful oil and gas production on federal lands generally encourages development on adjacent state lands with hydrocarbon production potential. (Walsh Decl. ¶¶ 6 – 8). When companies invest in infrastructure to accommodate federal land production, this infrastructure can in turn make adjacent state land more economical to develop. Conversely, potential development of state lands adjacent to the federal land here will become increasingly uneconomical to develop if companies cannot also explore and develop federal prospects. (*Id.*)

In addition to conserving and developing natural resources, the State has a duty to promote economic development within its borders, including making economic opportunities available to Alaskans.[15] With respect to the Arctic, the State has also adopted a policy of "uphold[ing] [its] commitment to economically vibrant communities sustained by development activities … including efforts to … ensure that Arctic residents and communities benefit from economic and resource development activities in the region."[16] The oil and gas industry currently provides numerous jobs in Alaska. If the

---

[14]     *See*, *e.g.*, AS 38.05.180(a).

[15]     *See*, *e.g.*, AS 44.33.020(a)(30)–(35).

[16]     AS 44.99.105(a)(1)(A).

*League of Conservation Voters, et al. v. Trump, et al.*          Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant                          Page 7 of 16
Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 7 of 16

Arctic outer continental shelf is largely unavailable for leasing, additional job opportunities for Alaska residents will disappear. Any loss of job production in the State, particularly in the remote communities on the North Slope where opportunities are limited, acutely affects the State's interest in promoting economic development for its residents. The State's interests on behalf of its residents provides sufficient basis to intervene.[17]

Lastly, the State has a significant interest in maximizing state revenue as well. Courts have specifically recognized a state's economic interests and potential loss of revenues as protectable interests.[18] Invalidating Section 5 of Executive Order 13795 could have direct and indirect impacts on the State's revenue. The oil and gas industry is the largest non-governmental industry in the state, providing approximately 72 percent of the state's unrestricted revenues in FY2016. (Walsh Decl. ¶ 5). Precluding any oil and gas development opportunities on the Arctic outer continental shelf would likely have a direct and harmful impact on the oil and gas industry's willingness to participate in future lease sales of off-shore state land. Because of the oil and gas industry's role as an

---

[17]      *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (allowing State of Texas to intervene as a matter of right in suit for injunctive relief under the Endangered Species Act in part because Texas had important interests in protecting the health and well-being of residents).

[18]      *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1492, 1497 (9th Cir. 1995) (potential loss of revenue from timber sales was protectable interest for intervention as of right), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011) (*en banc*) ; *see also Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135 (1967) (state's interests in a competitive system sufficient for intervention as of right); *Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 927 (9th Cir. 1990) (city's interest in tax and regulatory concerns were significantly protectable interest for intervention as of right).

*League of Conservation Voters, et al. v. Trump, et al.*      Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant      Page 8 of 16
Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 8 of 16

employer and revenue generator, a decrease in the industry's willingness or ability to do business in the state could have direct and potentially devastating economic consequences for the State and its residents.

Invalidating Section 5 could also indirectly affect the State's revenue interests by decreasing its tax and royalty revenues. The State's taxes and royalties are based on the value of oil taken within Alaska, net of the cost of transportation to market ("netback"). (Walsh Decl. ¶ 11). Presumably oil and gas development in federal Arctic outer continental shelf will be transported through the Trans Alaska Pipeline System ("TAPS"), thereby increasing the flow of oil through TAPS. In general, the per-barrel amount of a pipeline tariff is a function of the volume of oil shipped through the pipeline — the lower the throughput volume, the higher the tariff; and the higher the tariff, the lower the royalty revenue for the State. (*See id.* ¶ 11). Thus any oil produced from the federal Arctic outer continental shelf would in turn increase the State's revenues by increasing throughput volume and lowering tariffs. (*Id.* ¶ 11). In addition, a lower netback value can impact oil and gas development on state lands on the margin. (*Id.* ¶ 11). Thus development of the federal outer continental shelf would have a very real effect on the State's revenues.[19]

---

[19] In its May 2, 2016 comments on the Bureau of Ocean Energy Management's proposed 2017 - 2022 lease program, the State estimated the change in TAPS tariff alone based on estimated production from the Beaufort and Chukchi Seas could increase State revenue by $8 billion over a 20-year period. Available at www.regulations.gov and attached as Exhibit 1.

*League of Conservation Voters, et al. v. Trump, et al.*          Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant                    Page 9 of 16

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 9 of 16

At its core, the State's interest in maximizing revenue is an interest in funding schools, public safety, local governments, and state agencies that employ and benefit the public. Any direct or indirect effect on the State's revenues impairs its ability to provide for its residents, thus providing a substantial interest in this case.

### C.    The outcome of this lawsuit could impact the State's interests.

The Ninth Circuit has held that "'[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'"[20] The State needs to participate as a party in order to protect its interests in promoting natural resource and economic development and maximizing revenue, in balance with conserving state natural resources.

As detailed above, invalidating Section 5 and enjoining the Federal Defendants from implementing it (or requiring them to implement the former withdrawals) will adversely impact the State's many interests. It will contribute to loss of revenue, loss of job opportunities, and loss of in-state investment. The State anticipates conducting a lease for state land in the Beaufort Sea before the end of this year, and the uncertainty of the availability of adjacent federal lands may impact the success of that sale. The injunctive relief could also affect the State's ability to manage fish and wildlife within its coastal zone. Intervention of right is essential to allow the State to protect these interests adequately.

---

[20]    *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes).

*League of Conservation Voters, et al. v. Trump, et al.*          Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant          Page 10 of 16
Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 10 of 16

**D.      The existing parties do not adequately represent the State's interests.**

Some parties may share some interests with the State, but no party shares all of its interests or has the State's unique balance of interests. No party has interests in both conservation and development of the State's natural resources, or the State's interests in maximizing its revenue and in economic development for Alaskans. Since no party shares the State's array of interests, or the balance it must strike between them, no party would adequately represent the State's interest in this case.

The State's unique balance of interests satisfies the "minimal" burden of showing that existing parties "may" not adequately represent these interests.[21] Representation by existing parties is inadequate if (1) there is any doubt the parties will make *all* of the State's arguments; (2) the existing parties are not willing or able to make the State's arguments; and (3) the State would offer any necessary element other parties would neglect.[22] "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."[23] Each of the factors weighs in favor of intervention.

Plaintiffs are non-governmental organizations whose "members visit or otherwise use and enjoy … the Chukchi and Beaufort Seas, and coastal regions adjacent to these waters for cultural and subsistence purposes, recreation, wildlife viewing, education, research, photography, aesthetic and spiritual enjoyment, or their professions or

---

[21]      *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d at 823.

[22]      *Id.* at 822.

[23]      *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

*League of Conservation Voters, et al. v. Trump, et al.*      Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant      Page 11 of 16

Case 3:17-cv-00101-SLG      Document 30      Filed 08/31/17      Page 11 of 16

livelihoods, or they enjoy or use wildlife that utilizes these areas." (Compl. ¶ 15). The State shares interests with Plaintiffs in conserving natural resources and promoting subsistence uses, but does not share their interests in opposing any and all oil and gas exploration and development activities in the Arctic outer continental shelf. Plaintiffs would not represent the State's interests in natural resource development, wildlife management authority, revenue generation or job creation.

The Federal Defendants include the President and the Secretaries of the Departments of Interior and Commerce. The Federal Defendants lack the same economic stake in Arctic offshore oil and gas development that the State has, as they are not as reliant on the oil and gas industry as the State is for revenue. These activities bring jobs and income to Alaskan communities, tax revenue to local and state government, and royalties to the State. The Federal Defendants also do not have the same interest in developing adjacent state land, apart from perhaps a generalized preference for national versus foreign energy resources. Because the Federal Defendants' interests are not identical to the State's, there is no reason to believe they will make all of the arguments that the State would raise in support of its unique interests.

API has already been permitted to intervene as a defendant. [Dkt. No. 22]. API will not raise all of the same arguments as the State either. API's members are ultimately royalty payees, and are presumably adverse to the State's interests in revenue generation. API has no duty to seek to ensure that local community needs are met, that schools and public safety are fully funded, or that conservation issues are adequately considered. The

*League of Conservation Voters, et al. v. Trump, et al.*          Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant          Page 12 of 16

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 12 of 16

lack of symmetry between the industry's interests and the State's demonstrate that API would inadequately represent the State's sovereign interests.

Just as no party shares all of the State's interests, no party is likely to be "capable and willing" to make the arguments that the State would make.[24] In her declaration, Director Walsh illustrates some of the interests that are unique to the State. (Walsh Decl. ¶¶ 5 – 11). No other party would have standing to raise all of these interests. The State is further unaware of any party "willing" to make its arguments.

Lastly, because of its unique balance of interests, the State can offer this Court a necessary element to the proceeding that the other parties would neglect.[25] As explained above, no party shares the same dual interests in both conserving and developing the State's natural resources. These interests may run parallel to some degree with the interests of other parties, but they remain unique nonetheless. Federal Defendants' interests are limited to federal land; Plaintiffs' interests are limited to conservation and subsistence; and API's interests would no doubt lie more heavily in favor of development. Further, the State has unique interests that no party shares, namely its interests in economic and job development for Alaskans and in maximizing state revenue. No other party could bring to this case the State's perspective in seeking to establish and preserve a stable framework within which OCS development can proceed in Alaska. No other party shares the State's role. The Court should recognize the value of the State's perspective and participation in this case and grant leave to intervene.

---

[24]    *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d at 822.

[25]    *Id.*

*League of Conservation Voters, et al. v. Trump, et al.*        Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant        Page 13

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 13 of 16

## III. IN THE ALTERNATIVE, THE STATE SEEKS PERMISSIVE LEAVE TO INTERVENE

As set forth above, the State believes it is entitled to intervene in this case as of right. In addition, the State is alternatively entitled to permissive intervention under Rule 24, which provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (b)(3).

The State, by virtue of its statutory and constitutional responsibilities described above, has a definite stake in the availability of the federal Arctic OCS for oil and gas leasing, and should be entitled an opportunity to be heard regarding the merits of Plaintiffs' claims and requested remedies. The State's participation will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."[26]

Allowing the State to intervene will not unduly delay or prejudice the rights of any parties. The State does not anticipate prolonging the briefing schedule in any way, and commits to taking every effort to avoid duplicative briefing. The case will be able to proceed on schedule, with the State's participation and unique perspective.

---

[26] *U.S. Postal Service v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978); *accord, Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) *abrogated in part on other grounds by Wilderness Soc. v. U.S. Forest Service*, 630 F.3d at 1180.

*League of Conservation Voters, et al. v. Trump, et al.*     Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant     Page 14 of 16

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 14 of 16

## IV. CONCLUSION

The State has significant and unique interests in the availability of the federal Arctic outer continental shelf for oil and gas leasing. The State meets the requirements for intervention on Federal Rule of Civil Procedure 24, and asks that Court grant its motion for leave to intervene without limitation.

DATED: August 31, 2017.

JAHNA LINDEMUTH
ATTORNEY GENERAL

By:     /s/ Bradley E. Meyen_____
Bradley E. Meyen
AK Bar No. 8506067
Senior Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK  99501
Phone: (907) 269- 5232
Facsimile: (907) 276-3697
Email:  brad.meyen@alaska.gov

Jennifer E. Douglas
AK Bar No. 1605029
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK  99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email:  jennifer.douglas@alaska.gov

*League of Conservation Voters, et al. v. Trump, et al.*     Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant     Page 15 of 16

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 15 of 16

## CERTIFICATE OF SERVICE

I certify that on August 31, 2017 the foregoing was served electronically on all parties via CM/ECF.

/s/Bradley E. Meyen_____

Bradley E. Meyen
Senior Assistant Attorney General

*League of Conservation Voters, et al. v. Trump, et al.*      Case No. 3:17-cv-00101-SLG
State of Alaska's Motion for Leave to Intervene as Defendant      Page 16 of 16

Case 3:17-cv-00101-SLG   Document 30   Filed 08/31/17   Page 16 of 16