JAHNA LINDEMUTH
ATTORNEY GENERAL
Bradley E. Meyen (AK Bar No. 8506067)
Jennifer E. Douglas (AK Bar No. 1605029)*
Assistant Attorneys General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: brad.meyen@alaska.gov
 jennifer.douglas@alaska.gov

Attorneys for State of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEAGUE OF CONSERVATION VOTERS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*,<br><br>AMERICAN PETROLEUM INSTITUTE,<br><br>*Intervenor-Defendant.* | Case No. 3:17-cv-00101-SLG<br><br>**DECLARATION OF CHANTAL WALSH IN SUPPORT OF STATE OF ALASKA'S MOTION FOR LEAVE TO INTERVENE** |

Pursuant to 28 U.S.C. § 1746, I, Chantal Walsh, declare as follows:

1. I submit this declaration in support of the State of Alaska's Motion for Leave to Intervene. If called as a witness, I have personal knowledge of the matters set forth below, and will competently testify on these matters if called to do so.

2. I am the Director of the Division of Oil and Gas within the Alaska

*Application for admission pending

Department of Natural Resources. I have worked in this position since November, 2016. Prior to my appointment as Director, I worked for Petrotechnical Resources of Alaska, a consulting firm I co-founded in 1997. I am a certified professional engineer (petroleum engineering) with 30 years of private-sector experience in Alaska's petroleum industry on matters including strategic planning, commercial analysis, litigation, well work operations, production optimization, completions, and drilling design and coordination. I have experienced the impacts federal decisions and regulatory actions have on oil and gas exploration and development decisions by industry actors and the economic and other effects of these decisions on both the industry and state revenue.

3. In my present position, I am responsible for balancing the development of oil and gas resources on Alaska state lands with minimizing adverse impacts on the environment. I also review and consider how decisions taken or not taken by the federal government can impact State resource development on State lands or in State waters. Moreover, as Director, I regularly approve contracts for the lease of state land for oil and gas development. When approving such contracts, I make written findings that consider and discuss the potential effects of the lease on fish and wildlife species and habitat and on subsistence uses of resources by Alaskans.

4. The Plaintiffs in *League of Conservation Voters v. Trump* seek to invalidate President Trump's executive order that re-opened areas of the federal outer continental shelf, specifically the Arctic areas in the Beaufort and Chukchi seas, to oil and gas leasing, which former President Obama had declared off-limits to leasing. Any order that declares President Trump's executive order invalid or prevents its implementation will

*League of Conservation Voters, et al. v. Trump, et al.* Case No. 3:17-cv-00101-SLG
Declaration of Chantal Walsh Page 2 of 6

Case 3:17-cv-00101-SLG   Document 31   Filed 08/31/17   Page 2 of 5

have substantial adverse impacts on the State.

5. The oil and gas industry is Alaska's largest non-governmental industry, providing the State with approximately 72 percent of its unrestricted general revenues in FY 2016.

6. Oil and gas exploration and development in the Arctic waters off of Alaska's coast, both in State and federal waters, is expensive relative to similar activities in less harsh climates. Industry bidding on lease tracts in either State or federal waters is typically preceded by substantial expenditures to acquire data necessary for industry to lease tracts with hydrocarbon development potential. Changing the availability of the federal Arctic outer continental shelf for leasing by invalidating President Trump's order creates substantial uncertainty for industry to realize a return on investment for engaging in exploration of these areas. This uncertainty will cause oil and gas development investment to go elsewhere where the rewards are greater and the regulatory environment more stable.

7. In some instances, the successful progress of oil and gas development within the onshore and offshore federal lands has a direct impact on state revenue. In other instances, successful progress of oil and gas projects on federal lands—particularly within the outer continental shelf—has an indirect impact on the economics of oil and gas projects on state lands. For example, in August 2017, the State approved a permit for Eni US to use infrastructure on its existing state offshore leases to explore federal leases that it holds in the Beaufort Sea. In addition, at the Northstar Unit, a federal lease is producing from infrastructure on state offshore land. Other operators have staged equipment on

federal land to access drill sites on state offshore land. The State is also aware of plans by ConocoPhillips Alaska, Inc. to use infrastructure on state leases to develop federal onshore leases in the National Petroleum Reserve-Alaska. While the latter example is entirely onshore, all of these demonstrate the synergies between the development of adjacent state and federal lands.

8. The State can indirectly benefit from oil and gas development on federal lands, including the OCS. Where successful oil and gas production occurs on federal lands, adjacent state lands with hydrocarbon production potential become more economic to develop given infrastructure investments made to accommodate federal lands production. Any potential development of hydrocarbon bearing state lands adjacent or near the federal outer continental shelf become increasingly uneconomic should the federal areas remain unavailable for leasing.

9. The State has already issued a number of leases in the offshore State lands within three-miles of the coast of the Beaufort Sea, and anticipates holding another lease sale for unleased state lands in that area before the end of this year.

10. The State usually has a pecuniary interest in federal lease sales because 27 percent of the bonuses, rent and royalties received by the federal government on the outer continental shelf lands within three-to-six miles of the Alaska three-mile offshore boundary must be shared with the State. Although the acreage withdrawn from leasing by President Obama includes federal lands outside the three-to-six mile zone, preventing those areas from being leased may negatively affect development decisions in other Arctic lease sale areas where the state does enjoy this royalty sharing potential.

*League of Conservation Voters, et al. v. Trump, et al.*    Case No. 3:17-cv-00101-SLG
Declaration of Chantal Walsh    Page 4 of 6
Case 3:17-cv-00101-SLG   Document 31   Filed 08/31/17   Page 4 of 5

11. State royalties and taxes are based on the value of oil taken within Alaska, net of the cost of transportation to market (a "netback" value). Transportation costs incurred include tariffs charged to ship oil by pipelines. In general, where throughput is high, the tariff rate per barrel becomes lower because the costs of operating a pipeline can be spread over greater volumes shipped. To the extent any oil discovered in the Chukchi or Beaufort Sea Planning Areas would go to market through the Trans Alaska Pipeline System ("TAPS"), it would result in an increase in TAPS throughput — or in the throughput of any other pipeline built to ship outer continental shelf oil and gas — which will lower the unit cost for all Alaskan oil also shipped on that pipeline. Thus, oil and gas developed in Alaska's OCS acts to increase state royalties and taxes from oil and gas developed on state lands as well as incentivize hydrocarbon production on state lands on the margin. An order declaring Section 5 of Executive Order 13795 invalid will act to delay hydrocarbon production from federal outer continental shelf lands in the Chukchi and Beaufort Seas and adversely impact transportation tariffs for all state lands production that would share pipeline capacity.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 30, 2017 in Anchorage, Alaska.

By: _____
Chantal Walsh
Director
Division of Oil and Gas
Alaska Department of Natural Resources

*League of Conservation Voters, et al. v. Trump, et al.*   Case No. 3:17-cv-00101-SLG
Declaration of Chantal Walsh   Page 5 of 5

Case 3:17-cv-00101-SLG   Document 31   Filed 08/31/17   Page 5 of 5

## CERTIFICATE OF SERVICE

I certify that on August 31, 2017 the foregoing was served electronically on all parties via CM/ECF.

/s/Bradley E. Meyen_____
Bradley E. Meyen
Senior Assistant Attorney General