Erik Grafe (Alaska Bar No. 0804010)
EARTHJUSTICE
441 W. 5th Avenue, Suite 301
Anchorage, AK 99501
T: 907.792.7102 / F: 907.277.1390
E: egrafe@earthjustice.org

Eric P. Jorgensen (Alaska Bar No. 8904010)
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751 / F: 907.463.5891
E: ejorgensen@earthjustice.org

Nathaniel S.W. Lawrence (Wash. Bar No. 30847) (admitted *pro hac vice*)
NATURAL RESOURCES DEFENSE COUNCIL
3723 Holiday Drive, SE
Olympia, WA 98501
T: 360.534.9900
E: nlawrence@nrdc.org

Nancy S. Marks (N.Y. Bar No. 2121820) (admitted *pro hac vice*)
NATURAL RESOURCES DEFENSE COUNCIL
40 West 20th Street, 11th Floor
New York, NY 10011
T: 212.727.4414 / F: 415.795.4799
E: nmarks@nrdc.org

*Attorneys for Plaintiffs League of Conservation Voters et al.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEAGUE OF CONSERVATION VOTERS *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) No. 3:17-cv-00101-SLG |
| | ) |
| DONALD J. TRUMP *et al.*, | ) |
| | ) |
| *Defendants*, | ) |
| | ) |
| AMERICAN PETROLEUM INSTITUTE and STATE OF ALASKA, | ) |
| | ) |
| *Intervenor-Defendants*. | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 5

I.     SOVEREIGN IMMUNITY POSES NO BAR TO PLAINTIFFS' SUIT ...... 6

II.    PLAINTIFFS HAVE A CAUSE OF ACTION ............................................. 7

III.   SECTION 1349(c) DOES NOT APPLY TO PLAINTIFFS' CLAIMS ....... 12

IV.   THE COURT MAY GRANT THE RELIEF PLAINTIFFS SEEK .............. 16

V.    PLAINTIFFS' ALLEGATIONS ESTABLISH INJURY-IN-FACT ........... 19

     A.    Plaintiffs allege an imminent injury ................................................... 20

     B.    Plaintiffs allege a geographically specific injury ............................... 25

     C.    Plaintiffs allege a particularized injury .............................................. 29

VI.   PLAINTIFFS' CLAIMS ARE RIPE ......................................................... 31

CONCLUSION ......................................................................................................... 37

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG      i

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 2 of 47

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ....................................................................................12

*Alaska Wildlife All. v. Jensen*,
108 F.3d 1065 (9th Cir. 1997) ....................................................................30

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ..............................................................................11, 12

*Allen v. Wright*,
468 U.S. 737 (1984) ....................................................................................30

*Am. Int'l Grp v. Islamic Republic of Iran*,
657 F.2d 430 (D.C. Cir. 1981) ....................................................................10

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ..................................................................................7, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................20, 22

*Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation*,
792 F.2d 782 (9th Cir. 1986) ......................................................................12

*Attias v. CareFirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) ..............................................................20, 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................20

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ..........................................................................21, 22-23

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    ii

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 3 of 47

*Brown v. Glines*,
444 U.S. 348 (1980) ................................................................................7

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) ..................................................................22

*Carroll v. Safford*,
44 U.S. (3 How.) 441 (1845) ................................................................17

*Ctr. for Biological Diversity v. Kempthorne*,
588 F.3d 701 (9th Cir. 2009) ...............................................................29

*Ctr for Biological Diversity v. U.S. Dep't of the Interior*,
563 F.3d 466 (D.C. Cir. 2009) .............................................................35

*Chamber of Commerce of the U.S. v. Reich*,
57 F.3d 1099 (D.C. Cir. 1995) .............................................................34

*City of Oakland v. Lynch*,
798 F.3d 1159 (9th Cir. 2015) .............................................................21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..............................................................................23

*Clear Sky Car Wash, LLC v. City of Chesapeake*,
743 F.3d 438 (4th Cir. 2014) ...............................................................11

*Clinton v. Jones*,
520 U.S. 681 (1997) ..............................................................................17

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) ................................................................................8

*Dames & Moore v. Regan*,
453 U.S. 654 (1981) ..........................................................................9, 10

*Dugan v. Rank*,
372 U.S. 609 (1963) ................................................................................6

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                        iii
Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 4 of 47

*Duncan v. Muzyn*,
    833 F.3d 567 (6th Cir. 2016) ........................................................................12

*Eagle Picher Indus. v. EPA*,
    759 F.2d 905 (D.C. Cir. 1985) .....................................................................34

*Ecological Rights Found. v. Pac. Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) .....................................................................25

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ..................................................................... 8, 16, 17-18

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ............................................................................. 10-11

*Glines v. Wade*,
    586 F.2d 675 (9th Cir. 1978) ..........................................................................7

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) .......................................................................................11

*Hawaii v. Trump*,
    859 F.3d 741 (9th Cir. 2017) ...................................................8, 9, 17, 18, 36

*Int'l Refugee Assistance Project v. Trump*,
    857 F.3d 554 (4th Cir.) ..................................................................................9

*Jayne v. Sherman*,
    706 F.3d 994 (9th Cir. 2013) ......................................................................25

*Kunaknana v. U.S. Army Corps of Eng'rs*,
    23 F. Supp. 3d 1063 (D. Alaska 2014) ........................................................28

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) ........................................................................................6

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ............................................................... 19-20

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    iv
Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 5 of 47

*Lexmark Int'l, Inc. v. Static Control Components*,
134 S. Ct. 1377 (2014) ................................................................ 30-31, 32

*Lindahl v. Office of Pers. Mgmt.*,
470 U.S. 768 (1985) ................................................................ 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................ 20, 26, 29-30

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ................................................................ 26

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ................................................................ 17

*Mashiri v. Dep't of Educ.*,
724 F.3d 1028 (9th Cir. 2013) ................................................................ 7

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
526 U.S. 172 (1999) ................................................................ 8

*Mont. Envtl. Info. Ctr. v. Stone-Manning*,
766 F.3d 1184 (9th Cir. 2014) ................................................................ 32

*Nat'l Inst. of Family & Life Advocates v. Harris*,
839 F.3d 823 (9th Cir. 2016) ................................................................ 33

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
538 U.S. 803 (2003) ................................................................ 35

*Nat'l Treasury Emps. Union v. Nixon*,
492 F.2d 587 (D.C. Cir. 1974) ................................................................ 9, 19

*Newdow v. Bush*,
355 F. Supp. 2d 265 (D.D.C. 2005) ................................................................ 18, 19

*NLRB v. Noel Canning*,
134 S. Ct. 2550 (2014) ................................................................ 8

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    v

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 6 of 47

*Nw. Requirements Utils. v. FERC*,
   798 F.3d 796 (9th Cir. 2015) ......................................................20

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
   402 F.3d 846 (9th Cir. 2005) ...............................................27, 30

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
   776 F. Supp. 2d 960 (D. Alaska 2011) ........................................36

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
   795 F.3d 956 (9th Cir. 2015) (en banc) ......................................36

*Pit River Home & Agric. Coop. Ass'n v. United States*,
   30 F.3d 1088 (9th Cir. 1994) ........................................................7

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
   697 F.3d 1192 (9th Cir. 2012) ....................................................26

*Reno v. Catholic Soc. Servs., Inc.*,
   509 U.S. 43 (1993) ......................................................................33

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ....................................................................31

*Sec'y of the Interior v. California*,
   464 U.S. 312 (1984) ....................................................................15

*Sprint Commc'ns, Inc. v. Jacobs*,
   134 S. Ct. 584 (2013) ..................................................................32

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ....................................................................33

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009) ..............................................................28, 29

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) ..........................................................20, 32

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                          vi
Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 7 of 47

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ..................................................................9, 18

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) (en banc) .........................................32, 33, 34

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017) (per curiam)...........................................................8, 9

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
    412 U.S. 669 (1973) ...............................................................................24, 25

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ......................................................................................31

*Vill. of False Pass v. Clark*,
    733 F.2d 605 (9th Cir. 1984) .......................................................................15

*W. Watersheds Project v. Kraayenbrink*,
    620 F.3d 1187 (9th Cir. 2010) .....................................................................25

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ......................................................................................30

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ..................................................................................8, 17

## STATUTES

42 U.S.C. § 1983 .................................................................................................11

42 U.S.C. §§ 4321, *et seq.*................................................................................35

43 U.S.C. § 1341(a) .................................................................................*passim*

43 U.S.C. § 1349................................................................................................13, 35

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                              vii
Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 8 of 47

43 U.S.C. § 1349(c) ..................................................................12, 13, 14, 15, 16

43 U.S.C. § 1349(c)(1) & (2) ...................................................................14

43 U.S.C. § 1349(c)(3)(A) .......................................................................14

43 U.S.C. § 1349(c)(6)..............................................................................14

## REPORTS

H.R. Rep. No. 95-590 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450 .............14, 15

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                                                        viii

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 9 of 47

# INTRODUCTION

Under the U.S. Constitution, Congress holds sole authority over lands and waters that are the property of the United States, except to the degree it explicitly delegates that authority to the executive branch. Through the Outer Continental Shelf Lands Act, Congress authorized presidents to preserve federal offshore areas by withdrawing them from any oil and gas leasing. Starting with President Eisenhower's withdrawal of regions off the Florida Keys, five presidents have used that power to confer permanent protections on selected areas of the outer continental shelf. Consistent with this tradition, President Obama permanently withdrew sensitive areas of the Arctic and Atlantic Oceans from disposition for oil and gas leasing. Until now, no president has ever attempted to reverse such a permanent withdrawal, and there is no statutory or constitutional authority for doing so. President Trump's executive order purporting to remove these permanent protections in the Arctic and Atlantic Oceans, simultaneously directing expedited offshore oil and gas exploration and development, exceeds the limited power Congress gave presidents over those lands and thus violates the separation of powers. His action threatens imminent injury, including from seismic activity that often precedes offshore leasing by years, to Plaintiffs' members who use and enjoy the resources of the withdrawn areas for subsistence, recreational,

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                1

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 10 of 47

commercial, and aesthetic benefit.  Federal district courts have long-established

ability to remedy such abuses by the executive branch, including by declaring the

acts of presidents *ultra vires* and ordering subordinate officials not to implement

them.  Plaintiffs' properly alleged claim for relief from unconstitutional action

does not hinge on statutory authorization, and the Court should deny the motions to

dismiss it.

## BACKGROUND

In 2015 and 2016, President Obama permanently withdrew sensitive

portions of the Arctic and Atlantic Oceans from disposition for oil and gas leasing.

Complaint, Dkt. 1 ¶¶ 46-48.  The areas he protected harbor irreplaceable wildlife—

such as whales, seals, walrus, polar bears, seabirds, and fish—many of them

imperiled; they also sustain vibrant ecosystems, a subsistence culture, and

commercial enterprises like fishing and tourism.  *Id.* ¶¶ 49-52.  For the Arctic,

President Obama's memorandum in support of the withdrawal described how the

interconnected ecosystem, containing species that rely on and migrate through

large areas, is uniquely under stress from rapid climate change.  *Id.* ¶ 50.  It

described the risks of oil and gas activities in the remote, harsh, and unpredictable

Arctic Ocean.  *Id.* ¶¶ 49-50.  These risks include oil spills, which the government

has concluded are likely if the area were to be developed fully and which could not

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    2

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 11 of 47

be contained or cleaned up if they occurred. *Id.* ¶¶ 31, 49-50. Even without oil spills, oil and gas exploration and development threaten widespread harm to marine mammals and fish from disturbance and displacement caused by drilling and seismic surveying. *Id.* ¶¶ 26-30. President Obama concluded that these risks are not worth taking, in part in light of the imperative to address climate change by transitioning from fossil fuels to renewable sources of energy and the recognition of much more readily available sources of energy closer to existing infrastructure. *Id.* ¶¶ 49-50. For the Atlantic, the supporting memorandum described research showing that the marine canyons subject to the presidential withdrawal are biological hotspots, contributors to climate stability, and sources of economic benefits, and that oil and gas activities would threaten these values. *Id.* ¶ 52.

In making these withdrawals, President Obama acted pursuant to limited and specific authority over public lands delegated to him by Congress through section 12(a) of the Outer Continental Shelf Lands Act (OCSLA). That provision provides in full that "[t]he President of the United States may, from time to time, withdraw from disposition any of the unleased lands of the outer Continental Shelf." 43 U.S.C. § 1341(a); *see* Dkt. 1 ¶ 33. Areas withdrawn from disposition pursuant to section 12(a) are not eligible for OCSLA's four-stage agency process in which the

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    3

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 12 of 47

Interior Department determines whether to offer, and permit exploration and development of, offshore oil and gas leases. *Id.*

President Obama's withdrawals are in keeping with a long history of prior presidential withdrawals going back nearly six decades and through five presidential administrations. *Id.* ¶ 44; *see also* Federal Defendants' Motion to Dismiss, Dkt. 13 at 14-15 & n.5. Consistent with the limited delegation of authority in section 12(a), in all that time, no president has attempted to reverse a permanent withdrawal. Dkt. 1 at ¶ 45.

Nonetheless, on April 28, 2017, President Trump issued an executive order in which—breaking from this long line of precedent—he purported to reverse President Obama's Arctic and Atlantic Ocean withdrawals. *Id.* ¶ 53. President Trump's order opens these areas to disposition for oil and gas exploration and development by making them eligible for the Interior Department's OCSLA process. *Id.* ¶ 33. It threatens the areas with all the attendant risks and direct impacts of oil exploration and development. These threats include seismic surveying—the loudest and most geographically far-reaching exploration activity—which can be permitted and proceed at once and which can harm thousands of marine mammals and fish over great distances. *Id.* ¶¶ 26-31, 33.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                  4

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 13 of 47

Plaintiffs challenge President Trump's decision to reverse the Arctic and Atlantic Ocean withdrawals because it is unlawful and threatens injury to their members. It is unlawful, because it exceeds Congress's specific, limited delegation of its Property Clause authority in section 12(a)—to protect areas of the outer continental shelf by withdrawing them from disposition for oil and gas leasing—thus violating constitutional separation of powers principles. It injures Plaintiffs' members because opening the areas to disposition under OCSLA threatens harm from oil and gas activities, including from seismic surveying. *See* Dkt. 1 ¶¶ 15-17. Seismic surveying is imminent, because it can occur outside the staged OCSLA development process, it generally occurs years prior to leasing, and industry and the government have expressed keen interest in expediting the collection of seismic surveying data. *Id.* ¶¶ 33, 39, 43. Seismic surveying would cause widespread disruption of marine mammals and fish upon which Plaintiffs' members depend for subsistence and cultural practices, commercial activities, and aesthetic and educational purposes. *Id.* ¶¶ 15-17, 26-29, 41.

## ARGUMENT

Plaintiffs allege a straightforward violation of law and seek equitable relief that is well within the powers of this Court to grant. Federal and Intervenor Defendants posit a multitude of jurisdictional roadblocks that do not apply. The

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    5

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 14 of 47

Court may determine that presidential action is unlawful and enjoin executive

officials from acting outside their authority to the detriment of Plaintiffs' members'

interests. The provisions of OCSLA that specify venue for record review of

agency actions taken following an administrative process do not govern a

challenge to the President's *ultra vires* executive order. Plaintiffs' members face

imminent harm from an action that has already taken effect, and their claims are

ripe.

I.  SOVEREIGN IMMUNITY POSES NO BAR TO PLAINTIFFS' SUIT

The executive branch is not immune from claims that its officials have acted

beyond their powers, because such actions are not considered to be those of the

sovereign. *Cf.* Dkt. 13 at 18-19. No waiver of sovereign immunity is required

here, then, because Plaintiffs seek a declaration that the President acted in a non-

sovereign capacity. Dkt. 1 ¶¶ 56-60, 63-65. As the Supreme Court has explained:

"where the officer's powers are limited by statute, his actions beyond those

limitations are considered individual and not sovereign actions. The officer is not

doing the business which the sovereign has empowered him to do." *Larson v.*

*Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *id.* at 690-91

(this view "frequently" recognized by the Supreme Court); *see also Dugan v.*

*Rank*, 372 U.S. 609, 621-22 (1963) (no sovereign immunity against allegations that

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                              6

Case 3:17-cv-00101-SLG   Document 36   Filed 09/08/17   Page 15 of 47

"action by officers [is] beyond their statutory powers"); *Glines v. Wade*, 586 F.2d 675, 681 (9th Cir. 1978) ("[In] actions claiming that a government official acted in violation of the Constitution or of statutory authority . . . Congress has either waived sovereign immunity or the doctrine does not apply."), *rev'd on other grounds sub nom. Brown v. Glines*, 444 U.S. 348 (1980); *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1098 n.5 (9th Cir. 1994) ("[S]uits for relief against federal officers for specific violations that are outside the scope of statutory authority are not against the United States and are not precluded by sovereign immunity . . . ."); *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031-32 (9th Cir. 2013) (per curiam) (applying the exception to adjudicate a mandamus petition against the Secretary of Education). That is the category of violation pursued in this case: President Trump, in nullifying a permanent offshore leasing ban expressly authorized by Congress, acted beyond his delegated powers.

## II.   PLAINTIFFS HAVE A CAUSE OF ACTION

The government is also wrong that Plaintiffs need express congressional authorization for a cause of action. Dkt. 13 at 19-21. The Supreme Court long ago concluded that "in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108 (1902). That the action in question is the President's

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                7

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 16 of 47

rather than a lower officer's does not affect reviewability under this doctrine. *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)). In *Youngstown*, the Supreme Court invalidated President Truman's executive order directing seizure of steel mills. 343 U.S. at 587-89. Similarly, the Supreme Court recently found a President's recess appointment *ultra vires*. *NLRB v. Noel Canning*, 134 S. Ct. 2550, 2557 (2014); *see also Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 189-90 (1999) (holding that presidential order terminating Chippewa treaty rights lacked statutory or constitutional authority); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 795 (1985) (reviewing constitutionality of President Reagan's order restricting participation in federal charitable giving campaign).

The Ninth Circuit recently reaffirmed this principle in *Hawaii v. Trump*, finding properly before it a claim that a presidential order "exceeds the statutory authority delegated by Congress and constitutional boundaries" and calling it "a familiar judicial exercise." 859 F.3d 741, 768 (9th Cir. 2017), *cert. granted sub nom. Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017) (per curiam) (internal quotation marks and citation omitted). The Fourth Circuit enjoined implementation of the same presidential order on constitutional grounds.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG
8

Case 3:17-cv-00101-SLG   Document 36   Filed 09/08/17   Page 17 of 47

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 587-88, 597 n.19 (4th Cir.), *as amended* (May 31, 2017), *as amended* (June 15, 2017), *cert. granted*, 137 S. Ct. at 2080.  And, pending its own further review, the Supreme Court allowed parts of the two lower court injunctions against the order to remain in force without noting any uncertainty about justiciability.  *Int'l Refugee Assistance Project*, 137 S. Ct. at 2088.  Nor is it novel for courts to entertain such claims naming the president as a defendant.  *See, e.g.*, *Swan v. Clinton*, 100 F.3d 973, 988 (D.C. Cir. 1996); *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974).

In none of these cases nor numerous similar intervening ones was there an authorization from Congress for the claim.  *See, e.g.*, *McAnnulty*, 187 U.S. at 110, 102 (concluding "the courts . . . must have power in a proper proceeding to grant relief" even though the statute "provide[d] for no tribunal, court, or authority to hear or determine any violation of the statute or claimed violation of the statutes"); *Hawaii v. Trump*, 859 F.3d at 768 ("This case is justiciable because Plaintiffs seek judicial review of [a presidential order], contending that [it] exceeds the statutory authority delegated by Congress and constitutional boundaries.").  Thus, in *Dames & Moore v. Regan*, for instance, the Supreme Court adjudicated a cause of action like Plaintiffs' here, that the President and Secretary of the Treasury acted "beyond their statutory and constitutional powers."  453 U.S. 654, 667 (1981).  The Court

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                          9
Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 18 of 47

agreed with the complainants that the President lacked statutory authority to suspend pending litigation claims. *Id.* at 675-77. It then, with no inquiry into congressional authorization, considered their claim that in doing so he had "circumscribed the jurisdiction of the United States courts in violation of Art. III of the Constitution." *Id.* at 684; *see also Am. Int'l Grp. v. Islamic Republic of Iran*, 657 F.2d 430, 446 (D.C. Cir. 1981) (considering claims challenging the same order and "tak[ing] cognizance of the separation-of-powers problems raised by an executive effort to affect the outcome of a pending case"). Just so, Plaintiffs in this case assert that presidential action without statutory or constitutional authority trenched on powers assigned by the Constitution to a co-equal branch of government. They no more need an express statutory cause of action than did the plaintiffs in *Dames & Moore*, or in any of these other cases.

Similarly, in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, plaintiffs sued over harm they asserted was done to their interests by a separation-of-powers violation. 561 U.S. 477, 487 (2010). The government argued that the plaintiffs had no cause of action. *Id.* at 491 n.2. The Supreme Court, though, found that the plaintiffs could sue over restrictions on removal of federal board members that interfered with the President's "take care" duties and hence were "incompatible with the Constitution's separation of powers." *Id.* at

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    10

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 19 of 47

493, 498.  Notwithstanding the lack of a congressionally bestowed cause of action, the Court found the plaintiffs had as much "a right to relief as a general matter" for that constitutional claim as for any other.  *Id.* at 491 n.2.

Not to the contrary are cases cited by the government, Dkt. 13 at 19, where plaintiffs sought to enforce congressionally created requirements against third parties, arguing Congress created a private cause of action for them to do so.  *Alexander v. Sandoval*, for instance, considered only whether a statute prohibiting conduct and authorizing implementing regulations revealed congressional intent to create a right for the public to enforce the regulations against third parties.  532 U.S. 275, 286-87 (2001); *id.* at 279 (describing the issue as "whether there is a private cause of action to enforce the regulation").  Similarly, *Gonzaga University v. Doe* concerned a party suing a university for violating the Family Educational Rights and Privacy Act.  536 U.S. 273, 290 (2002) ("[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms . . . .").  In *Clear Sky Car Wash, LLC v. City of Chesapeake*, the Fourth Circuit considered whether plaintiffs had a right of action to enforce a federal law against a city government and state agency.  743 F.3d 438, 441-42 (4th Cir. 2014).  Here, Plaintiffs do not seek to step into the statute-enforcing shoes of the federal government as to third parties, and therefore the presumption against review and

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                11

Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 20 of 47

the test for a right to review established by such decisions do not apply. Plaintiffs' concern here is solely that federal officers stay within their constitutionally delegated authority, an issue on which *Sandoval* and its kin have no bearing. In fact, outside of the above context, there is a contrary presumption: "'[O]nly upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review.' *Abbott Labs. v. Gardner,* 387 U.S. 136, 141 . . . (1967)." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 778 (1985); *see Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 791-92 (9th Cir. 1986) (affirming presumption of reviewability for claims that the Secretary of the Interior exceeded his authority under the Indian Mineral Leasing Act); *see also Duncan v. Muzyn*, 833 F.3d 567, 579 (6th Cir. 2016) ("*Sandoval* did not overturn the presumption of reviewability.").

## III.   SECTION 1349(c) DOES NOT APPLY TO PLAINTIFFS' CLAIMS

Intervenor American Petroleum Institute (API) is mistaken that venue restrictions in the citizen suit provision of OCSLA bar this Court from hearing Plaintiffs' case. API spells out how in OCSLA Congress established four separate administrative steps that the Interior Department must go through to authorize oil and gas development on the outer continental shelf, beginning with the preparation

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    12

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 21 of 47

of a five-year leasing program through an extensive public planning process. API

Motion to Dismiss, Dkt. 25 at 13-16. API also describes the statutorily prescribed

means and fora for legal challenges to the agency's decisions at each of those

stages. *Id.* at 17-19. Plaintiffs agree. Were Plaintiffs challenging one of those

statutorily described Interior Department decisions, they would be required to do

so in accordance with 43 U.S.C. § 1349, OCSLA's citizen suit provision. This

case, however, is a challenge to a different decision, one outside of and prior to the

four stages, that was made by presidential order rather than an agency

administrative process, and that is thus not subject to the restrictions section 1349

imposes on challenges to those agency decisions.[1]

Ignoring the plain language of the statute, API argues that section 1349(c)

requires that cases like this be brought only in the D.C. Circuit Court of Appeals.

Dkt. 25 at 17. The closest API comes to a rationale linked to this case is the

assertion that the challenge to President Trump's order is the same "type of

challenge" as one to a five-year program decision made by the Secretary of the

Interior, which could be brought only under section 1349(c) and in the D.C.

Circuit. *Id.* at 22 (describing this as a case about "whether areas of the [outer

---

[1]Likewise, because Plaintiffs do not raise a "challenge to the procedure of an agency action" covered by OCSLA's citizen suit provision, Dkt. 25 at 20, API's citation to cases addressing procedural challenges to decisions subject to venue provisions, *id.* at 20-21, is also misplaced.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    13

continental shelf] should be made available for leasing"). That section, however, on its face applies only to "action[s] of the Secretary." *See* 43 U.S.C. § 1349(c)(1) & (2). It relates only to very specifically described secretarial decisions—i.e. "to approve a leasing program," or to approve, disapprove, or modify a plan for exploration or development and production of outer continental shelf oil and gas— all following administrative process, and none at issue here. *Id.* And it requires both that the matter be considered "solely on the record made before the Secretary," *id.* § 1349(c)(6), and that challengers have "participated in the administrative proceedings," *id.* § 1349(c)(3)(A), neither of which is even possible in this case.

Even were the statute ambiguous on this point, legislative history would rule out the interpretation API urges. The House Report describes section 1349(c) as an "exception" to the general rule of district court jurisdiction, under which "the establishment of a leasing program, or the approval, modification, or disapproval of an exploration plan or of a development and production plan, are to be litigated in administrative proceedings and then reviewed in a court of appeals." H.R. Rep. No. 95-590, at 162 (1977), *reprinted in* 1978 U.S.C.C.A.N. 1450, 1568. Neither that narrow, exclusive list of covered decisions nor the rationale that issues be

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                   14

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 23 of 47

readied for direct appellate review through administrative proceedings can be squared with API's theory about section 1349(c)'s application to this case.

API is equally wrong that the purpose of OCSLA's four-part leasing scheme is "to forestall premature litigation" in any way relevant to this case. Dkt. 25 at 19 (quoting *Sec'y of the Interior v. California*, 464 U.S. 312, 341 (1984)). That case discusses the different input opportunities for state and local governments at each of the four OCSLA administrative stages. As *Secretary of the Interior*'s citation to the relevant House Report makes clear, *id.* at 341 n.22 (quoting H.R. Rep. No. 95-590, at 164 (1977)), Congress's differentiation of separate stages was designed to limit the environmental review required early in the agency stages and forestall premature litigation over such review. That the administrative agency process is staged in this fashion thus has no bearing on when or where citizens can press claims that (i) the President (ii) acted *ultra vires* of his authority (iii) independent of these four administrative processes.

API also cites *Village of False Pass v. Clark*, 733 F.2d 605, 608-09 (9th Cir. 1984), for the mistaken proposition that "OCSLA provides the framework for any challenge to the Government's [outer continental shelf] decisions." Dkt. 25 at 8. *Village of False Pass* says nothing of the sort. Instead, the cited passage discusses whether the Secretary of the Interior has specific duties at different

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    15

Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 24 of 47

OCSLA stages. It provides no support for API's argument, untethered from the statute, that this action challenging an *ultra vires* decision by the President should be treated like the different five-year plan decisions made by the Secretary on a record created through public process.

Plaintiffs' claims thus are not, and need not be, asserted pursuant to OCSLA's section 1349(c). Nor do Plaintiffs rely on the Declaratory Judgment Act as a source of jurisdiction, as API wrongly suggests. Dkt. 25 at 20. Rather, as described above, Plaintiffs rely on the long-established jurisdiction of the federal courts to hear claims that the President has acted outside any delegation of powers from Congress and beyond his own constitutional authority, in derogation of the separation of powers.

## IV. THE COURT MAY GRANT THE RELIEF PLAINTIFFS SEEK

The relief Plaintiffs seek is available and appropriate. It does not require an injunction against the President. *Cf. Franklin*, 505 U.S. at 802 (noting that injunctive relief against the President himself is an "extraordinary" remedy). As to the President specifically, Plaintiffs ask that this Court find he acted without statutory or constitutional authority when he attempted to end permanent protections for 128 million acres on the federal outer continental shelf. The Supreme Court has "long held that when the President takes official action, the

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                16

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 25 of 47

Court has the authority to determine whether he has acted within the law." *Clinton v. Jones*, 520 U.S. 681, 703 (1997) (citing *Youngstown*, 343 U.S. 579; *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.")); *see also Franklin*, 505 U.S. at 801 ("[T]he President's actions may still be reviewed for constitutionality . . . ."); *Hawaii v. Trump*, 859 F.3d at 755 ("We conclude that the President, in issuing the Executive Order, exceeded the scope of the authority delegated to him by Congress.").

With such a finding, Plaintiffs' harm can be redressed by an injunction against the Defendant Secretaries. Plaintiffs ask the Court to order that subordinate officials, charged by the President with promoting development of the outer continental shelf, do so only wholly consistent with the previously issued withdrawals permanently protecting 128 million acres of the Arctic and Atlantic Oceans from mineral disposition under OCSLA section 12(a). That injunction is entirely within the long-standing, ordinary power of the federal courts. *See, e.g.*, *Carroll v. Safford*, 44 U.S. (3 How.) 441, 463 (1845) ("[I]n a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer."); *Franklin*, 505 U.S. at 828 (Scalia, J., concurring in part and concurring in the judgment) ("Review of the legality of Presidential action can ordinarily be

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    17

Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 26 of 47

obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive."); *Hawaii v. Trump*, 859 F.3d at 788 (holding that plaintiffs' injuries can be redressed fully by injunctive relief against executive branch officials). Accordingly, federal Defendants are mistaken that the Court lacks authority to declare executive actions unlawful or halt executive branch activities stemming from an illegal executive order; these are core functions of the federal courts.

*Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C. 2005), the out-of-circuit district court case on which federal Defendants rely so heavily, is not to the contrary. The opinion acknowledges that the presidential immunity from injunctions it describes may be "'bypassed'" "where plaintiff's injury 'can be redressed by injunctive relief against subordinate officials.'" *Id.* at 281 (quoting *Swan*, 100 F.3d at 977). That is what Plaintiffs request here. Nor does the *Newdow* decision bar declaratory relief. The district court's refusal to issue a declaratory judgment against the President in that case arose from its conclusion that in the context of the proceedings—a motion for preliminary injunction—it would not provide meaningful relief. *Id.* Reading the opinion to suggest such relief is not available more broadly would be flatly inconsistent with precedent

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                18

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 27 of 47

binding the *Newdow* court. *See, e.g.*, *Nat'l Treasury Emps. Union*, 492 F.2d at 616 (issuing declaratory judgment against the President).

## V.    PLAINTIFFS' ALLEGATIONS ESTABLISH INJURY-IN-FACT

Plaintiffs have alleged facts sufficient to support standing.  As the complaint details, the President's action has the immediate, purposeful effect of removing an absolute bar to new oil and gas leasing and development in protected areas of the Arctic and Atlantic Oceans.  By the time Plaintiffs filed their complaint, both the federal government and industry had signaled their eagerness to launch seismic exploration promptly.  These exploration activities would harm wildlife in ways that impair Plaintiffs' subsistence, recreational, commercial, and aesthetic interests. Defendants do not challenge Plaintiffs' allegations, and the Court must accept them as true.  The allegations are more than sufficient to defeat a motion to dismiss.

The government argues that the allegations in the complaint fail to establish that Plaintiffs will suffer injury-in-fact that is imminent, concrete, and particularized enough to support standing.  Dkt. 13 at 25-32.  In resolving such a facial challenge at this stage of the proceeding, *id.* at 17 (identifying challenge as facial), the court accepts all allegations of fact in the complaint as true and draws all reasonable inferences in favor of the plaintiffs.  *See Leite v. Crane Co.*, 749

F.3d 1117, 1121 (9th Cir. 2014); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element [of standing] must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." (citations omitted)). As described below, Plaintiffs' allegations easily clear this "low bar to establish standing at the pleading stage." *Attias v. CareFirst, Inc.*, 865 F.3d 620, 622 (D.C. Cir. 2017); *see also id.* at 627 (noting the "light burden of proof plaintiffs bear at the pleading stage").[2]

A.      Plaintiffs allege an imminent injury

Plaintiffs establish a "substantial risk" of future harm sufficient to support standing. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (noting that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur" (citation omitted)); *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 805 (9th Cir. 2015). The government's main argument is that harm from *drilling* is not imminent because it is contingent on scheduling lease sales in a five-year program,

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Dkt. 13 at 17, are not to the contrary. Had Plaintiffs merely recited that they met the standards for establishing standing, those cases might apply. Instead, Plaintiffs allege a rich set of facts detailing the ways they meet the standard.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                        20
Case 3:17-cv-00101-SLG      Document 36      Filed 09/08/17      Page 29 of 47

holding those lease sales, and approving drilling permits on leases.  Dkt. 13 at 27-28.  But Plaintiffs also allege imminent harms from seismic exploration likely to occur far sooner.

Seismic surveying is one of the most harmful forms of oil and gas exploration.  Dkt. 1 ¶¶ 27-29.  It is also generally one of the first activities companies undertake in offshore areas open to disposition under OCSLA, often years in advance of leasing.  *Id.* ¶¶ 33, 43.  As detailed in the complaint, industry reacted to President Trump's executive order by calling for seismic surveying "without delay"; when this complaint was filed, companies had already sought federal authorization to conduct seismic operations in both the Arctic and Atlantic Oceans and the government had evinced eagerness to speed development.  *Id.* ¶¶ 39-40.  These allegations demonstrate imminence.

To the limited extent the government's brief mentions seismic exploration, it argues that it is not imminent because it is contingent on the government's issuance of permits and third parties' action on those permits.  Dkt. 13 at 27 n.11.  But those contingencies do not make seismic testing unlikely or otherwise defeat imminence.  *See Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (finding plaintiff established injury-in-fact notwithstanding uncertain future contingencies based on third-party actions); *see also City of Oakland v. Lynch*, 798 F.3d 1159, 1164 (9th Cir. 2015)

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                               21

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 30 of 47

(finding plaintiff established injury-in-fact where its harm—lost tax revenue from a marijuana dispensary—depended on a series of uncertain contingent future events: that "a forfeiture [of the dispensary] will be ordered [by a court], that marijuana sales are not diverted to other dispensaries in Oakland, and that the new tenant of the . . . property will provide the City with less revenue than the dispensary"), *cert. denied*, 136 S. Ct. 1486 (2016); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 7 (D.C. Cir. 2017) (recognizing harm contingent on timber companies' future inability to find sources to replace lost timber from land designated as critical habitat).

Courts apply a common-sense test to determine whether a complaint states a plausible claim of injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009); *see also Carpenters Indus. Council*, 854 F.3d at 6 (applying "common sense [as] a useful tool" to assess whether the threat of future harm is imminent). Courts look to actors' motivation or intent. *See, e.g.*, *Attias*, 865 F.3d at 628-29 (holding that plaintiffs whose personal medical insurance accounts had been hacked were at substantial risk of injury because, as a general matter, hackers are motivated, "sooner or later," to file false claims or perpetrate identity theft). They also look to actors' past conduct. *See, e.g.*, *Blum*, 457 U.S. at 1000 (finding injury-in-fact

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG
22

Case 3:17-cv-00101-SLG   Document 36   Filed 09/08/17   Page 31 of 47

based on nursing homes' past conduct in discharging residents and the threat that they would repeat the behavior in the future).[3]

Under this standard, Plaintiffs' complaint plausibly alleges a substantial risk of harm notwithstanding that seismic surveying is contingent on future government and industry action. Both the government and industry exhibit strong intent to initiate seismic surveying, and past actions indicate the likely course of events.

The stated purpose of President Trump's order is to expedite energy production in the Arctic and Atlantic Oceans. Dkt. 1 ¶ 53; *see also* Dkt. 13-1 at 2. In addition to precipitating the process of preparing a leasing schedule, holding leases, and approving exploration and development drilling, the order immediately sets in motion several other processes designed specifically to catalyze rapid seismic exploration. It (i) mandates expedited processing of seismic permits under the existing permitting regime, Dkt. 1 ¶ 53; *see also* Dkt. 13-1 at 4; (ii) directs the Secretary of the Interior to develop and implement a new, streamlined approach to approving seismic surveying for the express purpose of expeditiously determining offshore resource potential, Dkt. 1 ¶ 53; *see also* Dkt. 13-1 at 2; and (iii) directs review of existing offshore safety and pollution regulations—including noise-

---

[3] The Supreme Court in *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013), recognized the continuing vitality of cases such as *Blum v. Yaretsky* and their formulation of the imminence inquiry.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    23

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 32 of 47

limiting guidance for seismic surveying—for consistency with the order's directive to encourage energy exploration and development, Dkt. 1 ¶ 53; Dkt. 13-1 at 3-4.

As Plaintiffs allege, industry, too, has expressed keen interest in hastening seismic surveying in the Arctic and Atlantic Oceans. Dkt. 1 ¶ 39. Indeed, six seismic operators were already actively pursuing permits to conduct seismic surveying in the Atlantic, including deepwater canyons of the Mid-Atlantic, when the complaint was filed. *Id.* ¶¶ 40-42.

Past conduct also provides strong evidence of imminent harm here. Over the decade prior to the withdrawals, the government authorized a substantial amount of oil and gas activity in the Arctic and Atlantic Oceans, including seismic surveying. *Id.* ¶ 34. Pursuant to these authorizations, industry conducted large-scale seismic surveying covering tens of thousands of square miles across much of the Arctic Ocean. *Id.* ¶ 38. The National Marine Fisheries Service predicts that, assuming the Arctic Ocean is open for leasing, there could be multiple seismic surveying operations every year in federal waters. *Id.* ¶ 39. Thus, Plaintiffs have established a "substantial risk" of harm from seismic exploration.

Finally, contrary to the government's argument, Dkt. 13 at 26-27, Plaintiffs' harm is far less attenuated than that in *United States v. Students Challenging Regulatory Agency Procedures* (*SCRAP*), 412 U.S. 669 (1973). SCRAP's theory,

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                                    24

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 33 of 47

accepted by the Supreme Court, involved a long list of contingencies. *Id.* at 688-89. Plaintiffs' allegation of harm from President Trump's executive order, by contrast, requires only that the government follow the order (to expedite seismic permitting) and industry continue its current behavior (seeking seismic permits) and act consistent with its past behavior (conducting seismic exploration). The fact that the challenged decision in *SCRAP* (railroad rates) was "going into effect," Dkt. 13 at 27, does not differentiate it from the decision at issue here. President Trump's order also has gone into effect.

B.    Plaintiffs allege a geographically specific injury

The government's assertion that Plaintiffs have failed to allege a "'geographically specific' injury" from the President's order, Dkt. 13 at 29, is wrong for two reasons: it ignores the degree of evidence required at this stage in the proceedings, and it mischaracterizes the nature of the harm Plaintiffs allege. Contrary to the government's argument, Plaintiffs allege the requisite "geographical nexus between the individual asserting the claim and the location suffering the environmental impact." *Jayne v. Sherman*, 706 F.3d 994, 999 (9th Cir. 2013) (quoting *W. Watersheds Project v. Kraayenbrink*, 620 F.3d 1187, 1199 (9th Cir. 2010)); *see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000).

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                                    25

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 34 of 47

The government makes two unavailing arguments. First, it argues that Plaintiffs must "identify [a] particular area within th[e] 128 million acres" subject to President Trump's order in which their use will overlap a specific future exploration or development project. Dkt. 13 at 29-30. Second, it argues that Plaintiffs "cannot identify the area that could potentially be affected by the complained of action" because areas have not yet been leased or subject to exploration. *Id.* at 30. Relevant to both arguments, on a Rule 12(b) motion to dismiss, courts do not require specific evidence. They "presume that general allegations embrace those specific facts that are necessary to support the claim." *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1196 (9th Cir. 2012) (alteration omitted) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *see also Defs. of Wildlife*, 504 U.S. at 561.[4] Plaintiffs' allegations easily satisfy this light burden. *See Pub. Lands for the People*, 697 F.3d at 1195-96.

Here, the specific facts Plaintiffs allege support standing: seismic exploration will affect vast areas of the oceans enjoyed by Plaintiffs' members and

---

[4] The government has identified no case in which a court has required anything but general allegations at the pleading stage. In fact, the government cites only inapplicable cases addressing summary judgment motions under the more demanding standard of Rule 56. *See Nat'l Wildlife Fed'n*, 497 U.S. at 889 (noting that different standards apply at the motion to dismiss and motion for summary judgment stages).

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    26

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 35 of 47

impair their interests. *See* Dkt. 1 ¶¶ 15-16. Seismic surveying sparked by the President's order could cover thousands of square miles and "ensonify" large areas of the ocean to dangerous levels. *Id.* ¶¶ 27, 38. The large-scale seismic surveying currently proposed for the Atlantic Ocean would cover over 100,000 linear kilometers and traverse areas subject to President Trump's order. Dkt. 1 ¶¶ 40-42. The deafening noise from seismic surveying is harmful or lethal to many species of marine mammals, affecting them at various life stages, as well as fish and shellfish. *Id.* ¶¶ 28, 29. The government has estimated that a single, two-month-long Arctic Ocean survey would disturb over 60,000 ringed seals and 4,600 beluga whales, and that multiple seismic surveys in the Atlantic Ocean would disturb 13.4 million marine mammals, injuring 138,000 of them. *Id.* ¶ 28. These effects will injure Plaintiffs' members by diminishing their ability to use and enjoy the affected areas and the species that depend on them. *Id.* ¶¶ 15-16.[5] Plaintiffs' allegations connect

_____

[5] Plaintiffs also allege harm from the risk of potential large oil spills, which can occur during exploration drilling, are likely to occur if the areas subject to President Trump's order are developed, and would have widespread geographic effects. Dkt. 1 ¶ 31. These effects, too, satisfy the geographical nexus test, because, contrary to the government's suggestion, Dkt. 13 at 29, standing can be based on potential effects to an area from remote or catastrophic accidents like oil spills. *See Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859-60 (9th Cir. 2005) (holding that an environmental group had standing when its members enjoyed photographing and watching marine life that would potentially be affected by an oil spill from expanded tanker traffic due to the challenged action, a pier expansion).

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 36 of 47

the impacts from seismic surveying that are likely to occur as a result of the challenged decision—which are geographically widespread—to the areas used by Plaintiffs' members and to resources, such as marine mammals, that are used by Plaintiffs' members both within the region and beyond.  *Id.* ¶ 15.

Contrary to the government's assertions, Dkt. 13 at 28-29, *Kunaknana v. U.S. Army Corps of Engineers*, 23 F. Supp. 3d 1063 (D. Alaska 2014), also affirmatively supports Plaintiffs' standing.  *Kunaknana* involved a challenge to a site-specific development drilling proposal, the effects of which, this Court concluded, were confined to a relatively small geographic area surrounding the project.  *Id.* at 1082, 1084.  Unremarkably, this Court held that environmental plaintiffs lacked standing when, on a motion for summary judgment, they failed to show that their members had plans to use areas affected by the development project.  *Id.* at 1082-83.  By contrast, the Court concluded that other plaintiffs, who used the areas affected by the project (as Plaintiffs here allege their members do), did demonstrate standing.  *Id.* at 1084-85.  Similarly, in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), which the government also cites, Dkt. 13 at 28, the challenged decision—a regulation exempting small post-fire timber-salvage projects from certain public notice and appeal procedures—affected only specific and relatively small geographic areas, and plaintiffs who did not establish their use

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    28

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 37 of 47

of those affected areas at the summary judgment stage lacked standing. *Id.* at 498-500.

Plaintiffs' allegations are more akin to the facts at issue in *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), also cited in the government's brief, Dkt. 13 at 28. Even applying the more exacting standard applicable on summary judgment, the court found that plaintiffs had standing to challenge a regulation governing the take of polar bears across the entire Beaufort Sea and coastal areas, without identifying the overlap of specific projects with specific areas plaintiffs used. This was because the effects of the regulation extended—and were felt by plaintiffs—across a broad geographic area (everywhere polar bears roam). *Kempthorne*, 588 F.3d at 707-08. Likewise, Plaintiffs here allege facts that connect the harm from the challenged decision—which will have widespread consequences—to the areas and species used by Plaintiffs.

C.    Plaintiffs allege a particularized injury

The government's several arguments that Plaintiffs have failed to allege particularized injury also fall short. The government wrongly asserts that, by pursuing constitutional and statutory *ultra vires* claims, Plaintiffs raise only a "generally available grievance," Dkt. 13 at 31 (quoting *Defs. of Wildlife*, 504 U.S.

at 573).  In fact, the claims Plaintiffs raise are "available" to them because they can, and do, connect the challenged activity to specific injuries not shared by the general public.  As described above, Plaintiffs allege their members have an interest in visiting, using, inhabiting, studying, and recreating in—or viewing wildlife that depend on—areas affected by President Trump's order.  The order threatens their use and enjoyment of these specific areas and species.  It is this particularized injury that gives them—and not the general public—standing to raise their claims.  *See, e.g.*, *Alaska Wildlife All. v. Jensen*, 108 F.3d 1065, 1068 (9th Cir. 1997) (plaintiffs "demonstrate aesthetic and recreational harm that will support standing" when noise, trash, and wakes of vessels in national park diminish plaintiffs' enjoyment of the land); *see also Ocean Advocates*, 402 F.3d at 860.

The government fails to advance its position by citing cases, Dkt. 13 at 30-32, that demonstrate only how different a "generalized grievance" is from the particularized injury Plaintiffs allege here.  *See Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (prisoner pursuing claim that another prisoner's execution was unconstitutional); *Allen v. Wright*, 468 U.S. 737, 746, 755-56 (1984) (plaintiffs challenging admissions practices at schools to which their children had not applied and would not apply), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static*

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    30
Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 39 of 47

*Control Components*, 134 S. Ct. 1377 (2014); *Valley Forge Christian Coll. v. Ams.*

*United for Separation of Church & State, Inc.*, 454 U.S. 464, 486-87 (1982)

(plaintiffs challenging as unconstitutional the transfer of federal land they never

visited or planned to visit); *Schlesinger v. Reservists Comm. to Stop the War*, 418

U.S. 208, 216-17 (1974) (plaintiffs suing on behalf of all citizens of the United

States). The additional cases the government cites, Dkt. 13 at 31-32, are also

inapposite because plaintiffs there failed to establish how the harmful effect (the

worsening of climate change by the challenged decision) impaired their use of an

area or species. Plaintiffs here have made such allegations.

## VI.    PLAINTIFFS' CLAIMS ARE RIPE

There is no dispute that this case is constitutionally ripe for adjudication, so

long as Plaintiffs demonstrate standing. The government acknowledges, as it must,

that constitutional ripeness is coextensive with the injury-in-fact requirement for

standing. Dkt. 13 at 23 n.8. For the reasons discussed above, Plaintiffs have

alleged facts sufficient to meet the injury-in-fact requirement, and they thus satisfy

the constitutional component of ripeness. Thus, the government asks the Court to

decline jurisdiction over the dispute under the doctrine of "prudential" ripeness.

*Id.* at 23. Plaintiffs' complaint, however, readily passes muster under that doctrine,

to the extent it still applies.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    31

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 40 of 47

Though not affecting the outcome here, it bears noting that the Supreme Court has cast serious doubt on the doctrine's continuing viability. A recent line of unanimous Supreme Court cases reaffirms the principle "that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Susan B. Anthony List*, 134 S. Ct. at 2347 (quoting *Lexmark Int'l*, 134 S. Ct. at 1386 (in turn quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013))). In general, "[f]ederal courts . . . have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Commc'ns*, 134 S. Ct. at 590 (citation omitted). Accordingly, the Supreme Court has recently refused to affirm a doctrine of "prudential standing," instead applying only constitutional and statutory limitations. *Lexmark Int'l*, 134 S. Ct. at 1386-88. These cases compel the same conclusion for ripeness. *See Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 n.3, 1191 (9th Cir. 2014) (noting that *Susan B. Anthony* calls the doctrine into question and upholding dismissal on constitutional ripeness grounds only).[6]

---

[6] Even assuming the doctrine has vitality, as the Ninth Circuit has described, "[p]rudential considerations of ripeness are discretionary," *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000) (en banc). So the Court, in the exercise of its discretion, may forgo a prudential ripeness inquiry altogether. It should do so here.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    32
Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 41 of 47

Regardless, even if the doctrine remains viable, Plaintiffs satisfy it here. Prudential ripeness tests "the fitness of the issues for judicial decision and the hardship of withholding court consideration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (internal quotation marks and citation omitted); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 71 (1993) (O'Connor, J., concurring) (same); *Thomas*, 220 F.3d at 1142. These principles weigh in favor of immediate review here.

Plaintiffs' claims are unquestionably fit for judicial review. "[A] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 833 (9th Cir. 2016) (internal quotation marks and citation omitted). President Trump's executive order is final, and resolution of Plaintiffs' claims turns on purely legal issues, i.e., whether that order is *ultra vires* of his statutory and constitutional authority, in violation of the separation of powers. Dkt. 1 ¶¶ 60, 65. To the extent the government's arguments relate to fitness, none is persuasive. Fuller development of a record underlying a five-year program, Dkt. 13 at 24, would not aid review of the different decision at issue here—the President's reversal of section 12(a) withdrawals. Nor would review now create inappropriate "interference in further administrative action." *Id.* To

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                    33

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 42 of 47

the contrary, all parties benefit from resolution in this case of whether it is lawful to undo withdrawals, before further harmful activities are allowed to proceed and resources are expended in a public process to consider whether to schedule lease sales for the areas at issue. Accordingly, the lawfulness of President Trump's reversal of the Arctic and Atlantic Ocean withdrawals is fit for immediate resolution.

Where, as here, the fitness factors favor immediate review, a court need not even reach the hardship prong. *Chamber of Commerce of the U.S. v. Reich*, 57 F.3d 1099, 1101 (D.C. Cir. 1995); *see also Eagle Picher Indus. v. EPA*, 759 F.2d 905, 918 (D.C. Cir. 1985) (concluding that "mechanical application" of the hardship element "could work mischief" when applied in situations where the institutional interests sought to be served by the doctrine militate in favor of early review). At all events, this factor would also favor the immediate exercise of jurisdiction. Plaintiffs' demonstration of injury-in-fact weighs in favor of adjudicating their claims now. *See Thomas*, 220 F.3d at 1142 ("The hardship analysis . . . dovetails, in part, with the constitutional consideration of injury."). As described above, Plaintiffs are harmed by the increased risk of near-term oil and gas activities caused by the President's action. Moreover, the President's reversal of the Arctic and Atlantic Ocean withdrawals is not just a general statement of

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                34
Case 3:17-cv-00101-SLG   Document 36   Filed 09/08/17   Page 43 of 47

policy, *see Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 809 (2003); rather, it has formal legal consequences.  It immediately alters the status of the formerly withdrawn areas from permanently closed to open for disposition of oil and gas resources.  Thus, the hardship factor also favors immediate review.

The government's arguments to the contrary are unavailing.  It suggests that the multi-stage nature of oil and gas development pursuant to OCSLA renders the claim unripe, pointing to a D.C. Circuit decision addressing a past five-year leasing schedule, *Center for Biological Diversity v. U.S. Department of the Interior (CBD)*, 563 F.3d 466 (D.C. Cir. 2009).  Dkt. 13 at 24-25.  But *CBD* compels the conclusion that Plaintiffs' claims here are ripe.  In *CBD*, the D.C. Circuit heard challenges to the agency's compliance with OCSLA and the National Environmental Policy Act (NEPA) when it promulgated a five-year leasing program.  Reasoning that no NEPA violation had yet occurred at the time of the agency's decision, the court held the NEPA challenge unripe.  *CBD*, 563 F.3d at 481-82.  By contrast, the court concluded that the *OCSLA-based* claims *were* ripe because the legal violations underlying them—the agency's failure to abide by OCSLA section 18's prescriptions regarding the promulgation of a leasing program—"are implicated at the initial stage of a leasing program."  *Id.* at 484.  So too Plaintiffs' claims here.  The violations underlying Plaintiffs' claims—the

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                    35

Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 44 of 47

President's failure to act within his constitutional and OCSLA section 12(a) authority—are implicated now, by the President's existing order to undo the Arctic and Atlantic Ocean withdrawals, not at some later date or OCSLA stage.

The government's remaining ripeness argument—that activities such as seismic surveying will require additional permits before commencing in the areas opened by President Trump's order, Dkt. 13 at 25—also misses the mark. This Court rejected a similar argument in an analogous context. In evaluating the ripeness of a challenge to a decision to reverse roadless area protections on the Tongass National Forest, the Court refused to await further advancement of on-the-ground projects and planning for the newly unprotected areas. *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 776 F. Supp. 2d 960, 969 (D. Alaska 2011), *aff'd*, 795 F.3d 956 (9th Cir. 2015) (en banc). The Court concluded the challenge was ripe because—like the President's action here—the decision at issue "has already removed additional protections afforded" under a previous rule. *Id.*; *see also Hawaii v. Trump*, 859 F.3d at 767 (rejecting argument that the court should exercise discretion under the prudential ripeness doctrine to defer adjudication of a challenge to an executive order restricting immigration until it was applied).

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                      36

Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 45 of 47

# CONCLUSION

The Court may review and grant relief for President Trump's unprecedented reversal of permanent protections for sensitive areas of the outer continental shelf—an action beyond the President's statutory and constitutional authority. For all the reasons presented above, the Court should deny the motions to dismiss.

Respectfully submitted this 8th day of September, 2017.

*s/ Erik Grafe*

Erik Grafe (Alaska Bar No. 0804010)
Eric P. Jorgensen (Alaska Bar No. 8904010)
EARTHJUSTICE

Nathaniel S.W. Lawrence (Wash. Bar No. 30847)
(admitted *pro hac vice*)
Nancy S. Marks (N.Y. Bar No. 2121820) (admitted *pro hac vice*)
NATURAL RESOURCES DEFENSE COUNCIL

*Attorneys for Plaintiffs League of Conservation Voters;*
*Natural Resources Defense Council; Sierra Club;*
*Alaska Wilderness League; Defenders of Wildlife;*
*Northern Alaska Environmental Center; Resisting*
*Environmental Destruction on Indigenous Lands;*
*Center for Biological Diversity; Greenpeace, Inc.; and*
*The Wilderness Society*

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                37

Case 3:17-cv-00101-SLG    Document 36    Filed 09/08/17    Page 46 of 47

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2017, a copy of the foregoing

Plaintiffs' Memorandum in Opposition to Defendants' and Intervenor-Defendants'

Motions to Dismiss was served electronically on all counsel of record using the

CM/ECF system.

*s/ Erik Grafe*

Erik Grafe
EARTHJUSTICE

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS
*League of Conservation Voters et al. v. Trump et al.*,
No. 3:17-cv-00101-SLG                                38

Case 3:17-cv-00101-SLG     Document 36     Filed 09/08/17     Page 47 of 47