
collection was previously published in the **Federal Register** (82 FR 48840) on October 20, 2017, allowing for a 60-day comment period. This notice allows for an additional 30 days for public comments. This process is conducted in accordance with 5 CFR 1320.8. Written comments and suggestions from the public and affected agencies should address one or more of the following four points: (1) Whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (2) the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used; (3) suggestions to enhance the quality, utility, and clarity of the information to be collected; and (4) suggestions to minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses. The comments that are submitted will be summarized and included in the request for approval. All comments will become a matter of public record.

## Overview of This Information Collection

*Title:* Application for Identification Card.

*OMB Number:* 1651–0008.

*Form Number:* CBP Form 3078.

*Action:* CBP proposes to extend the expiration date of this information collection with no change to the estimated burden hours or to CBP Form 3078.

*Type of Review:* Extension (without change).

*Abstract:* CBP Form 3078, *Application for Identification Card,* is filled out in order to obtain an Identification Card which is used to gain access to CBP security areas. This form collects biographical information and is usually completed by licensed Cartmen or Lightermen whose duties require receiving, transporting, or otherwise handling imported merchandise which has not been released from CBP custody. This form is submitted to the local CBP office at the port of entry that the respondent will be requesting access to the Federal Inspection Section. Form 3078 is authorized by 19 U.S.C. 66, 1551, 1555, 1565, 1624, 1641; and 19 CFR 112.42, 118, 122.182, and 146.6. This form is accessible at: *http://www.cbp.gov/sites/default/files/documents/CBP%20Form%203078.pdf.*

*Affected Public:* Businesses.

*Estimated Number of Respondents:* 150,000.

*Estimated Number of Total Annual Responses:* 150,000.

*Estimated Time per Response:* 17 minutes.

*Estimated Total Annual Burden Hours:* 42,450.

Dated: January 2, 2018.

**Seth Renkema,**

*Branch Chief, Economic Impact Analysis Branch, U.S. Customs and Border Protection.*

[FR Doc. 2018–00070 Filed 1–5–18; 8:45 am]

**BILLING CODE 9111–14–P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Ocean Energy Management

[BOEM–2017–0074; MMAA104000]

### Notice of Availability of the 2019–2024 Draft Proposed Outer Continental Shelf Oil and Gas Leasing Program and Notice of Intent To Prepare a Programmatic Environmental Impact Statement

**AGENCY:** Bureau of Ocean Energy Management (BOEM), Interior.

**ACTION:** Notice; request for comments.

**SUMMARY:** BOEM is announcing the availability of, and requests comments on, the Draft Proposed Program (DPP) for the 2019–2024 Outer Continental Shelf Oil and Gas Leasing Program (2019–2024 Program or Program). BOEM is also announcing its decision to prepare a Programmatic Environmental Impact Statement for the 2019–2024 Program (Programmatic EIS) and the initiation of the formal scoping process.

**DATES:** Comments should be submitted by March 9, 2018 to the address specified in the **ADDRESSES** section of this notice. Dates of public meetings to be held between now and March 9, 2018, will be posted on *https://www.BOEM.gov/National-OCS-Program.*

**ADDRESSES:** Comments on the DPP or Programmatic EIS may be submitted in one of the following ways:

1. Mailed in an envelope labeled ''Comments for the 2019–2024 Draft Proposed National Oil and Gas Leasing Program'' and mailed (or hand delivered) to Ms. Kelly Hammerle, Chief, National Oil and Gas Leasing Program Development and Coordination Branch, Leasing Division, Office of Strategic Resources, Bureau of Ocean Energy Management (VAM–LD), 45600 Woodland Road, Sterling, VA 20166–9216, telephone (703) 787–1613. Written comments may also be hand delivered at a public meeting to the BOEM official in charge.

2. Through the *Regulations.gov* web portal: Navigate to *http://www.regulations.gov* and under the Search tab, in the space provided, type in Docket ID: BOEM–2017–0074 to submit comments and to view other comments already submitted. Information on using *www.regulations.gov,* including instructions for accessing documents, submitting comments, and viewing the docket after the close of the comment period, is available through the links under the box entitled ''Are you new to this site?''

**FOR FURTHER INFORMATION CONTACT:** For information on the 2019–2024 Program process or BOEM's policies associated with this notice, please contact Ms. Kelly Hammerle, Chief, National Oil and Gas Leasing Program Development and Coordination Branch at (703) 787–1613. For information on the 2019–2024 Programmatic EIS, submission of comments related to potential environmental impacts, or Cooperating Agency status, please contact Dr. Jill Lewandowski, Chief, Division of Environmental Assessment, at (703) 787–1703.

**SUPPLEMENTARY INFORMATION:** On April 28, 2017, Presidential Executive Order 13795: Implementing an America First Offshore Energy Strategy (E.O. 13795), directed the Secretary of the Interior (Secretary) to give full consideration to revising the schedule of proposed oil and gas lease sales adopted in the 2017–2022 Outer Continental Shelf Oil and Gas Leasing Program, which was approved on January 17, 2017. The Secretary issued Secretarial Order 3350 on May 1, 2017, which further directed BOEM to develop a new National Outer Continental Shelf Oil and Gas Leasing Program. As directed by the Secretary, BOEM initiated the development of the 2019–2024 Program by issuing a request for information and comments (RFI) on July 3, 2017 (82 FR 30886). The Program development process required by section 18 of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. 1344, and its implementing regulations, includes the development of a DPP, a Proposed Program, a Proposed Final Program (PFP), and Secretarial approval of the 2019–2024 Program.

This notice serves as the NOA for the DPP and the NOI for the preparation of a Programmatic EIS. The DPP includes the section 18 analysis for the OCS areas of potential interest to the Secretary and his initial proposed schedule of lease sales for the 2019–2024 Program. The

DPP provides the basis for gathering information and conducting analyses to inform the Secretary on which areas to include for further leasing consideration in the 2019–2024 Program.

The DPP for the 2019–2024 Program would make more than 98 percent of the OCS resources available to consider for oil and gas leasing during the 2019–2024 period. Including at this stage nearly the entire OCS for potential oil and gas discovery is consistent with advancing the goal of moving the United States from simply aspiring to energy independence to attaining energy dominance. This DPP would allow for unprecedented increases in access to America's extensive offshore oil and gas resources, a critical component of the Nation's energy portfolio, and emphasizes the importance of producing American energy in America.

The DPP will enable the Secretary to receive information necessary to conduct a thorough consideration of the Section 18(a)(2) factors in order to perform the balancing analysis required by Section 18(a)(3) of the OCS Lands Act. Including areas in the 2019–2024 Program will incentivize industry to employ their world-class geological and technical expertise to assess and evaluate America's potential offshore oil and gas resources. By not prematurely restricting or narrowing OCS areas under consideration, this DPP will allow industry the opportunity to further inform the Secretary of their interest in leasing frontier areas and to collect data in areas that have not been explored in decades, if ever. This will, in turn, further our understanding of the resources available on the OCS to meet national energy needs. The Secretary's approach to the DPP lease sale schedule does not prematurely foreclose exploration planning, but fosters it, to allow for potential for the discovery of oil and gas on the OCS.

Allowing for the potential discovery of new oil and gas reserves on the OCS is consistent with the Administration's America-First Energy Strategy, which seeks to achieve energy security and resilience by reducing U.S. reliance on imported energy. Additionally, OCS oil and gas production benefits the United States by helping to reinvigorate American manufacturing and job growth, and contributes to the gross domestic product. Many of the jobs in the oil and gas industry earn a significant wage premium; these employees have more purchasing power and can consume more goods and services, increasing their standard of living, and contributing more to the economy.

Grounded in the above principles, and after careful consideration of public input and the OCS Lands Act Section 18(a)(2) factors, the DPP proposes a lease sale schedule of 47 lease sales in all four OCS regions and includes 25 of the 26 planning areas: 19 lease sales in the Alaska Region (3 in the Chukchi Sea, 3 in the Beaufort Sea, 2 in Cook Inlet, and 1 sale each in the 11 other available planning areas in Alaska), 7 lease sales in the Pacific Region (2 each for Northern California, Central California, and Southern California, and 1 for Washington/Oregon), 12 lease sales in the Gulf of Mexico (GOM) Region (10 regionwide lease sales for the portions of the Central, Western, and Eastern GOM planning areas that are not currently under moratorium, and 2 sales for the portions of the Central and Eastern GOM planning areas that will no longer be under moratorium in 2022), and 9 lease sales in the Atlantic Region (3 sales each for the Mid- and South Atlantic, 2 for the North Atlantic, and 1 for the Straits of Florida).

The DPP does not include a sale in the North Aleutian Basin Planning Area. This area was withdrawn on December 16, 2014, from consideration for any oil and gas leasing for a time period without specific expiration.

TABLE 1—2019–2024 DRAFT PROPOSED PROGRAM LEASE SALE SCHEDULE

| Sale year | OCS Region | Program area |
|---|---|---|
| 1. 2019 | Alaska | Beaufort Sea. |
| 2. 2020 | Alaska | Chukchi Sea. |
| 3. 2020 | Pacific | Southern California. |
| 4. 2020 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 5. 2020 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 6. 2020 | Atlantic | South Atlantic. |
| 7. 2020 | Atlantic | Mid-Atlantic. |
| 8. 2021 | Alaska | Beaufort Sea. |
| 9. 2021 | Alaska | Cook Inlet. |
| 10. 2021 | Pacific | Washington/Oregon. |
| 11. 2021 | Pacific | Northern California. |
| 12. 2021 | Pacific | Central California. |
| 13. 2021 | Atlantic | North Atlantic. |
| 14. 2021 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 15. 2021 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 16. 2022 | Alaska | Chukchi Sea. |
| 17. 2022 | Pacific | Southern California. |
| 18. 2022 | Atlantic | Mid-Atlantic. |
| 19. 2022 | Atlantic | South Atlantic. |
| 20. 2022 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 21. 2022 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 22. 2023 | Alaska | Beaufort Sea. |
| 23. 2023 | Alaska | Cook Inlet. |
| 24. 2023 | Alaska | Hope Basin. |
| 25. 2023 | Alaska | Norton Basin. |
| 26. 2023 | Alaska | St. Matthew-Hall. |
| 27. 2023 | Alaska | Navarin Basin. |
| 28. 2023 | Alaska | Aleutian Basin. |
| 29. 2023 | Alaska | St. George Basin. |
| 30. 2023 | Alaska | Bowers Basin. |
| 31. 2023 | Alaska | Aleutian Arc. |
| 32. 2023 | Alaska | Shumagin. |
| 33. 2023 | Alaska | Kodiak. |
| 34. 2023 | Alaska | Gulf of Alaska. |

TABLE 1—2019–2024 DRAFT PROPOSED PROGRAM LEASE SALE SCHEDULE—Continued

| Sale year | OCS Region | Program area |
|---|---|---|
| 35. 2023 | Pacific | Central California. |
| 36. 2023 | Pacific | Northern California. |
| 37. 2023 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 38. 2023 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 39. 2023 | Gulf of Mexico | Eastern and Central Gulf of Mexico.** |
| 40. 2023 | Atlantic | Straits of Florida. |
| 41. 2023 | Atlantic | North Atlantic. |
| 42. 2024 | Alaska | Chukchi Sea. |
| 43. 2024 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 44. 2024 | Gulf of Mexico | Western, Central, and Eastern Gulf of Mexico.* |
| 45. 2024 | Gulf of Mexico | Eastern and Central Gulf of Mexico.** |
| 46. 2024 | Atlantic | South Atlantic. |
| 47. 2024 | Atlantic | Mid-Atlantic. |

\* All available areas, not including those subject to the GOMESA moratorium through June 30, 2022.
\*\* Those areas available following the expiration of the GOMESA moratorium.

Including 25 of the 26 planning areas in the DPP allows for maximum flexibility in the future stages of the process, as well as the opportunity to seek additional input and further coordinate with key stakeholders on those areas. The Secretary is committed to enhancing coordination and collaboration with other governmental entities to discover solutions to multiple use challenges so that oil and gas resources can be extracted, critical military and other ocean uses can continue, and our sensitive physical and biological resources can be protected. The Secretary's goal is to increase access to America's energy resources and to provide environmental stewardship based upon the most up to date environmental information and analysis.

The DPP serves as the basis for the proposed action to be evaluated in the Programmatic EIS. This NOI starts the formal scoping process for the Programmatic EIS under 40 CFR 1501.7 of the Council on Environmental Quality (CEQ) National Environmental Policy Act (NEPA) regulations and solicits input from the public regarding alternatives, impacting factors, and environmental resources and issues of concern in the DPP areas that should be evaluated in the Programmatic EIS. The purpose of scoping for the Programmatic EIS is to determine the appropriate content and scope for a focused and balanced programmatic environmental analysis by ensuring significant issues are identified early and properly studied during development of the Programmatic EIS. BOEM expects to consider environmentally sensitive areas in the Programmatic EIS that could be considered for exclusion as part of the Section 18 winnowing process.

Please go to *https://www.boem.gov/National-OCS-Oil-and-Gas-Leasing-Program-for-2019-2024/* for additional information about the Programmatic EIS and the 2019–2024 Program.

*Public Comment:* All interested parties, including Federal, state, tribal, and local governments and others, can submit written comments on the DPP and the scope of the Programmatic EIS, significant issues that should be addressed, and the types of oil and gas activities of interest in OCS planning areas included in the DPP (*e.g.,* gas in shallow water and industry interest in leasing and/or exploring planning areas not included in previous National OCS Programs). Comments on individual lease sale EIS documents should be submitted separately through the unique docket for each sale. Comments that provide scientific information, geospatial or other data, or anecdotal evidence to support your input are most useful and such information can be provided as attachments to comments.

BOEM will protect privileged or proprietary information that you submit in accordance with the Freedom of Information Act (FOIA) and OCSLA requirements. To avoid inadvertent release of such information, interested parties should mark all documents and every page containing such information with "Confidential—Contains Proprietary Information." To the extent a document contains a mix of proprietary and nonproprietary information, interested parties should mark clearly which portion of the document is proprietary and which is not. Exemption 4 of FOIA applies to trade secrets and commercial or financial information that you submit that is privileged or confidential. The OCSLA states that the "Secretary shall maintain the confidentiality of all privileged or proprietary data or information for such period of time as is provided for in this subchapter, established by regulation, or agreed to by the parties" (43 U.S.C. 1344(g)). BOEM considers each interested party's nominations of specific blocks to be proprietary, and therefore BOEM will not release information that identifies any particular nomination, so as not to compromise the competitive position of any participants in the process of indicating interest.

However, please be aware that BOEM's practice is to make all other public comments, including the names and addresses of individuals, available for public inspection. Before including your address, phone number, email address, or other personal identifying information in your comment, please be advised that your entire comment, including your personal identifying information, may be made publicly available at any time. While you can ask us in your comment to withhold from public review your personal identifying information, we cannot guarantee that we will be able to do so. In order for BOEM to consider withholding from disclosure your personal identifying information, you must identify any information contained in the submittal of your comments that, if released, would constitute a clearly unwarranted invasion of your personal privacy. You must also briefly describe any possible harmful consequence(s) of the disclosure of information, such as embarrassment, injury or other harm. Note that BOEM will make available for public inspection, in their entirety, all comments submitted by organizations and businesses, or by individuals identifying themselves as representatives of organizations or businesses.

*Public Meetings:* BOEM will hold a series of public meetings to provide information and the opportunity for public comment on the 2019–2024 Program and the Programmatic EIS. BOEM's public meetings will be held

using an open house format. The open house format allows members of the public to come to a meeting any time during meeting hours to view information, provide comments, and discuss the 2019–2024 Program and the Programmatic EIS with BOEM staff.

Public meetings will be held between now and March 9, 2018 to receive scoping comments on the Programmatic EIS. Meetings are being planned for, but are not necessarily limited to the following cities:

- Washington, DC;
- Augusta, ME;
- Concord, NH;
- Boston, MA;
- Providence, RI;
- Hartford, CT;
- Albany, NY;
- Trenton, NJ;
- Dover, DE;
- Annapolis, MD;
- Richmond, VA;
- Raleigh, NC;
- Columbia, SC;
- Atlanta, GA;
- Tallahassee, FL;
- Montgomery, AL;
- Jackson, MS;
- Baton Rouge, LA;
- Austin, TX;
- Sacramento, CA;
- Salem, OR;
- Olympia, WA;
- Anchorage, AK.

Specific dates, times, and venues will be posted on *https://www.boem.gov/National-OCS-Program.*

*Cooperating Agencies:* BOEM invites other Federal agencies and state, tribal, and local governments to consider becoming cooperating agencies in the preparation of the Programmatic EIS. Pursuant to CEQ regulations and guidelines, qualified agencies and governments are those with ''jurisdiction by law or special expertise.'' Potential cooperating agencies and governments should consider their authority and capacity to assume the responsibilities of a cooperating agency and remember that an agency's role as a cooperating agency in the environmental analysis neither enlarges nor diminishes its authority in the NEPA process. BOEM will provide potential cooperating agencies with a written summary of expectations for cooperating agencies, including schedules, milestones, responsibilities, scope and expected detail of cooperating agencies' contributions, and availability of predecisional information. BOEM anticipates this summary will form the basis for a Cooperating Agency Agreement between BOEM and any cooperating agency. Agencies should also consider the ''Factors for Determining Cooperating Agency Status'' in CEQ's January 30, 2002, Memorandum for the Heads of Federal Agencies: *Cooperating Agencies in Implementing the Procedural Requirements of the National Environmental Policy Act.* This document is available on the website, *https://ceq.doe.gov/guidance/guidance.html.* BOEM, as lead agency, does not plan to provide financial assistance to cooperating agencies. Even if an organization is not a cooperating agency, opportunities will exist to provide information and comments to BOEM during the normal public input stages of the NEPA process.

**Authority:** This NOA for the DPP for the 2019–2024 Program is published in accordance with section 18 of OCSLA and its implementing regulations (30 CFR part 556). This NOI to prepare the 2019–2024 Programmatic EIS is published pursuant to the regulations (40 CFR 1501.7 and 43 CFR 46.235) implementing the provisions of NEPA.

Dated: December 11, 2018.

**Walter Cruickshank,**

*Acting Director, Bureau of Ocean Energy Management.*

BILLING CODE 4310–MR–P

Figure 1: DPP Map - Contiguous United States





Figure 2: DPP Map - Alaska

[FR Doc. 2018–00083 Filed 1–5–18; 8:45 am]
**BILLING CODE 4310–MR–C**

**INTERNATIONAL TRADE COMMISSION**

**[Investigation No. 337–TA–1093]**

**Certain Mobile Electronic Devices and Radio Frequency and Processing Components Thereof (II); Institution of Investigation**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on November 30, 2017, under section 337 of the Tariff Act of 1930, as amended, on behalf of Qualcomm Incorporated of San Diego, California. The complaint alleges violations of section 337 based upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain mobile electronic devices and radio frequency and processing components thereof by reason of infringement of certain claims of U.S. Patent No. 9,154,356 (''the '356 patent''); U.S. Patent No. 9,473,336 (''the '336 patent''); U.S. Patent No. 8,063,674 (''the '674 patent''); U.S. Patent No. 7,693,002 (''the '002 patent''); and U.S. Patent No. 9,552,633 (''the '633 patent''). The complaint further alleges that an industry in the United States exists as required by the applicable Federal Statute.

The complainant requests that the Commission institute an investigation and, after the investigation, issue a limited exclusion order and a cease and desist order.

**ADDRESSES:** The complaint, except for any confidential information contained therein, is available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW, Room 112, Washington, DC 20436, telephone (202) 205–2000. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at (202) 205–2000. General information concerning the Commission may also be obtained by accessing its internet server at *https://www.usitc.gov.* The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:** Pathenia M. Proctor, The Office of Unfair Import Investigations, U.S. International Trade Commission, telephone (202) 205–2560.

**SUPPLEMENTARY INFORMATION:**

*Authority:* The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337 and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2017).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on January 2, 2018, ordered that—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after