JAHNA LINDEMUTH
ATTORNEY GENERAL
Bradley E. Meyen (AK Bar No. 8506067)
Jennifer E. Douglas (AK Bar No. 1605029)
Assistant Attorneys General
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: brad.meyen@alaska.gov
　　　　jennifer.douglas@alaska.gov

Attorneys for State of Alaska

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEGUE OF CONSERVATION VOTERS, *et al.*,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　　Defendants, | Case No. 3:17-cv-00101-SLG |

**INTERVENOR-DEFENDANT STATE OF ALASKA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. ARGUMENT .................................................................................................. 1

II. CONCLUSION ............................................................................................. 6

# TABLE OF AUTHORITIES

**Constitution and Statutes**

43 U.S.C. § 1335(a)(1) ................................................................................................ 1, 2
43 U.S.C. § 1341(a) .................................................................................................. *passim*
43 U.S.C. § 1341(d) ......................................................................................................... 5
43 U.S.C. § 1347(c) ..................................................................................................... 2, 3
43 U.S.C. § 1351(h)(3) ..................................................................................................... 3

**Other Authorities**

Executive Order No. 13795, 82 Fed. Reg. 20815, § 5, (Apr. 28, 2017) .............................. 6

The State of Alaska ("State") respectfully asserts that summary judgment should be granted in favor of Defendants. Section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA") specifically permits a president to withdraw lands from oil and gas leasing "from time to time," with the sole limitation that this authority be exercised only to affect unleased lands. *See* 43 U.S.C. §1341(a). Plaintiffs' interpretation of Section 12(a) of OCSLA is premised on the fallacy that although Congress did not provide for any meaningful limitations of this presidential authority, this authority is nonetheless limited to only affect lands not addressed by a predecessor. There is no basis to imply such a limitation.[1]

## I. ARGUMENT

Plaintiffs urge the Court to reject as "unfounded" an interpretation of the phrase "from time to time" in Section 12(a) as allowing for withdrawals and subsequent reversals of withdrawals, due to other parts of OCSLA where Congress also uses that phrase. [Dkt. No. 62 at 12.] Plaintiffs' counterarguments are unavailing.

Plaintiffs cite and partially quote 43 U.S.C. § 1335(a)(1), insisting that if the Court were to adopt the State's reading of "from time to time," the phrase in this provision "would have empowered the Secretary to fix a filing period and then pull the rug out from under lease-holders by subsequently un-fixing it." [Dkt. No. 62 at 12.] This result does not, however, follow from the arguments advanced by the State's motion, which did

---

[1] The State adopts and incorporates sections II.A through C of the Federal-Defendants' Reply Memorandum In Support Of Their Motion For Summary Judgment And Opposition To Plaintiffs' Motion For Summary Judgment, Dkt. No. 63, to the extent not inconsistent with the State's position set forth here.

1

not suggest that the phrase should be read in isolation from the statutory provision in which it appears. [*See generally* Dkt. No. 61 at 5-6.] Section 1335(a)(1) required the Secretary to allow existing leases previously issued by states to be maintained under OCSLA if, *inter alia*, they were filed with the Secretary within at least 90 days from August 7, 1953 or "within such further period or periods … as may be fixed from time to time." Lessees would not have suffered the misfortune of having the rug pulled out from under them if the Secretary accorded some additional time for filing the leases, which is the only natural reading of the entirety of this provision. Section 1335(a)(1) allows the Secretary to "fix" an additional filing period beyond the initial period of "within 90 days from August 7, 1953." The "from time to time" phrase makes it clear that the Secretary's authority is not limited to "fixing" just one additional filing period; rather, other filing periods may be fixed. In that section and in Section 12(a), the phrase "from time to time" allows for reversals of prior decisions, either a prior decision to fix just one additional filing period in the case of Section 1335(a)(1), or a decision to reverse prior withdrawals in the case of Section 12(a).

Next, Plaintiffs assert that "Congress plainly did not use the phrase to authorize revision or subsequent change when it amended OCSLA to provide that the Coast Guard 'may from time to time modify any regulations … dealing with hazardous working conditions …'" [Dkt. No. 62 at 12.] However, the promulgation of these regulations was, in the first instance, to be undertaken based on the Coast Guard's determination that "such regulations or standards are necessary." 43 U.S.C. § 1347(c). It is possible the Coast Guard may determine at some future point regulations and standards previously

2

adopted are no longer necessary, due to advances in technology or engineering. This assertion is also incongruous with Plaintiffs' later attempt to distinguish case law from the State's brief on the grounds that the repeated exercise of rulemaking authority "almost necessarily overwrites one set of regulations with another." [Dkt. No. 62 at 13.] That Congress included the word "modify" in § 1347(c) is not redundant; that word is included because "from time to time" is an adverb phrase that indicates fluctuations in whatever verb it modifies.

Plaintiffs then turn to 43 U.S.C. § 1351(h)(3), claiming that neither reversal nor abandonment "could have been in Congress' mind when it provided that for development and production plans … 'the Secretary shall, from time to time, review each plan approved under this section.'" [Dkt. No. 62 at 12.] This cannot be squared, however, with the portion of this same section that states, "If the review indicates that the plan should be revised to meet the requirements of this subsection, the Secretary shall require such revision." It is difficult to imagine a clearer statement by Congress that in fact, such approved plans *could* be 'reversed,' i.e., significantly changed following this periodic review.

To reiterate, the State is not arguing that the phrase "from time to time" should be read in isolation from other statutory provisions, but that the phrase is used to allow for subsequent changes. [*See generally* Dkt. No. 61.] Section 12(a) does not, explicitly or implicitly, restrict the president's power to withdraw only lands not already withdrawn by a predecessor. Thus, one president's withdrawals do not preclude another president from making an entirely different withdrawal decision. Plaintiffs concede that the

3

Section 12(a) authority "might be exercised with whatever frequency was thought to be needed" [Dkt. No. 62 at 13], and that it gives "broad discretion about when and how often presidents may withdraw outer continental shelf areas" [Dkt. No. 62 at 14], while ignoring the reality that unless that scope of exercised authority is understood to be inherently subject to change (an interpretation supported by case law analyzing the phrase "from time to time"), one president may preclude a subsequent president from making a judgment on the "frequency" with which the withdrawal authority should be used. Neither the text of Section 12(a) nor its limited legislative history support this interpretation.

Plaintiffs dismiss some of the cases the State cited in its brief by stating that they merely pertain to "authority by its nature or explicit provision allows for reversal," [Dkt. No. 62 at 13], but again, this ignores the fact that the plain language of Section 12(a) supports a determination that the OCSLA authority itself allows reversal by its nature. As described here and in Dkt. No. 61, Section 12(a) permits the executive the 'reversal' power. Plaintiffs repeatedly refer to the withdrawal authority as "protective power" or having a "protective purpose" [Dkt. No. 62 at 13, 17, 18] but there is no requirement that the president exercise this authority to protect something specific or that a withdrawal endures for all time, regardless of however much Plaintiffs may want it to be exercised in only that manner. Plaintiffs also claim that rulemaking-related cases interpreting the phrase "from time to time" are simply "inapposite." [Dkt. No. 62 at 13.] This, too, misses the mark: these cases, as with the cases unrelated to rulemaking,

4

reinforce the point that "from time to time" has a consistent meaning and their interpretation of Section 12(a) impermissibly renders that phrase a nullity.

Plaintiffs also speculate that interpreting Section 12(a) withdrawals as permanent better serves what they contend is the purpose for withdrawals: "to protect fragile ocean areas." [Dkt. No. 62 at 17.] While President Obama's withdrawals serve that purpose, other withdrawals, including those made by President George W. Bush, did not. [*See* Dkt. No. 56 at 15, 16, 35.] While Section 12(a) would permit a president to exercise the withdrawal authority for ocean protection, it does not restrict the authority for that purpose. If Section 12(a) explicitly restricted the withdrawal authority for the purposes of protecting oceanic features, Plaintiffs' argument that there is an implied permanence to withdrawals might be stronger. However, the key here is that there is no such limitation in the law. Because *any* purpose for the withdrawal would be valid, one can readily understand why Congress included the phrase "from time to time": to allow a president to adjust withdrawals based on changes in national priorities, including national security and domestic energy production.

Plaintiffs also claim, albeit only in response to arguments advanced by API, that 43 U.S.C. § 1341(d) is representative of Congress being "explicit when it meant restrictions to be impermanent" in OCSLA. [Dkt. No. 62 at 19.] Plaintiffs continue to overlook the fact that Section 12(a) explicitly provides for impermanent restrictions as well, through the phrase "from time to time." Plaintiffs refer back to their brief to allegedly demonstrate that "a long history of uplands legislation prior to OCSLA (and since) demonstrates that Congress is explicit when it intends to grant the power to both

5

protect and undo protections" [Dkt. No. 62 at 19], but those statutes have different terms. [Dkt. No. 61 at 6-7.] The legislative history, which indicates only that the OCSLA presidential withdrawal authority is "comparable" to that pertaining to the uplands [*see* Dkt. No. 63 at 23], does not mean that the terms of some particular uplands statute that contains different wording is relevant here, much less outcome determinative. Plaintiffs' contention that "withdrawal" and "reservation" were interchangeable by 1910 also has no bearing on the State's analysis of an 1891 statute. [*Cf.* Dkt. No. 61 at 6-7; Dkt. No. 62 at 14-15.]

## II. CONCLUSION

Section 12(a) of OCSLA clearly authorized President Trump's change to President Obama's prior withdrawal of federal outer continental shelf lands from leasing. The withdrawal authority can be exercised "from time to time," and contains no limitations that would prevent it from affecting a predecessor's withdrawals. Section 5 of Executive Order 13795 was therefore not *ultra vires* and Defendants are entitled to summary judgment.

If stakeholders in a national policy debate wish to reduce the vagaries occasioned by the periodic and inherently impermanent nature of presidential outer continental shelf withdrawals, their relief is with Congress, not in a judicial challenge to a withdrawal that does not fit their perceived view of what constitutes a desirable withdrawal. Plaintiffs clearly preferred the substance of President Obama's outer continental shelf withdrawals to President Trump's, but so long as the authority for a president to withdraw unleased portions of the outer continental shelf "from time to time" persists, they—along with all

6
Case 3:17-cv-00101-SLG   Document 67   Filed 10/12/18   Page 9 of 10

other stakeholders, including the State—are subject to future disappointment regarding executive actions with which they disagree.

         JAHNA LINDEMUTH
         ATTORNEY GENERAL

         By: /s/ Jennifer E. Douglas
           Jennifer E. Douglas
           Assistant Attorney General
           AK Bar No. 1605029
           Department of Law
           1031 West Fourth Avenue, Suite 200
           Anchorage, AK 99501
           Phone: (907) 269-5232
           Facsimile: (907) 276-3697
           Email: jennifer.douglas@alaska.gov

           /s/ Bradley E. Meyen
           Bradley E. Meyen
           Senior Assistant Attorney General
           AK Bar No. 8506067
           Department of Law
           1031 West Fourth Avenue, Suite 200
           Anchorage, AK 99501
           Phone: (907) 269-5232
           Facsimile: (907) 276-3697
           Email: brad.meyen@alaska.gov

**CERTIFICATE OF SERVICE**

  I certify that on October 12th, 2018, the foregoing was served electronically on all parties via CM/ECF.

           /s/Jennifer E Douglas
           Jennifer E. Douglas
           Assistant Attorney General