Erik Grafe (AK Bar No. 0804010)
Hannah Payne Foster (AK Bar No. 2105045)
EARTHJUSTICE
310 K Street Suite 508
Anchorage, AK 99501
T: 907.277.2500
E: egrafe@earthjustice.org
E: hfoster@earthjustice.org

Eric P. Jorgensen (AK Bar No. 8904010)
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: ejorgensen@earthjustice.org

*Attorneys for Plaintiffs League of Conservation Voters; Sierra Club; Alaska Wilderness League; Defenders of Wildlife; Northern Alaska Environmental Center; Center for Biological Diversity; and Greenpeace, Inc.*

Jaclyn H. Prange (CA Bar No. 270929, *pro hac vice motion forthcoming*)
Irene V. Gutierrez (CA Bar No. 252927, *pro hac vice motion forthcoming*)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St., Fl. 21
San Francisco, CA 94104
T: 415-875-6100
E: jprange@nrdc.org
E: igutierrez@nrdc.org

*Attorneys for Plaintiffs League of Conservation Voters; Natural Resources Defense Council; Sierra Club; Alaska Wilderness League; Defenders of Wildlife; Northern Alaska Environmental Center; Center for Biological Diversity; and Greenpeace, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEAGUE OF CONSERVATION VOTERS *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP *et al.*, <br><br> *Defendants*, <br><br> AMERICAN PETROLEUM INSTITUTE and STATE OF ALASKA, <br><br> *Intervenor-Defendants*. | No. 3:17-cv-00101-SLG |

**PLAINTIFFS' RULE 60(b)(6) MOTION**

Pursuant to Federal Rule of Civil Procedure 60(b)(6), Plaintiffs respectfully ask the Court to set aside its dismissal of this case as moot, Doc. 96, and reinstate its order and judgment holding that President Trump acted unlawfully during his first term in office when he purported to revoke President Obama's permanent withdrawals of portions of the Arctic and Atlantic outer continental shelf from future oil leasing, Docs. 80 & 81. The Court's order was vacated and the case dismissed as moot after President Biden rescinded President Trump's revocation, restoring the Arctic and Atlantic withdrawals. Now, as one of the first acts of his second term, President Trump issued an order which reinstates his 2017 revocation of President Obama's withdrawals—the very same revocation this Court previously found unlawful. The areas President Obama withdrew from leasing in the Arctic and Atlantic Oceans are thus again threatened by offshore oil and gas activities. This case is no longer moot. This extraordinary circumstance warrants relief from the Court's dismissal of this case and reinstatement of its order and judgment finding President Trump's 2017 revocation of withdrawals unlawful. Doing so would serve the interest of justice, conserve judicial resources, and protect Plaintiffs' interests.

PLAINTIFFS' RULE 60(B)(6) MOTION
*League of Conservation Voters et al. v. Trump et al.,*
No. 3:17-cv-00101-SLG                    1

# BACKGROUND

This case concerns an order issued by President Trump during his first term pursuant to section 12(a) of the Outer Continental Shelf Lands Act (OCSLA): Executive Order 13,795, Implementing an America-First Offshore Energy Strategy. 82 Fed. Reg. 20,815 (May 3, 2017). Section 5 of the 2017 order (the 2017 Revocation) purports to revoke a series of permanent withdrawals of areas in the Arctic and Atlantic Oceans from future oil and gas leasing put in place by President Obama. *Id.* at 20,816; *see also* Doc. 51 at 12-19. Plaintiffs challenged the 2017 Revocation, arguing that it was *ultra vires* and an unconstitutional violation of separation of powers. *See generally* Docs. 1, 51, 62. This Court agreed, and on March 29, 2019, it issued an order declaring the 2017 Revocation unlawful and invalid and vacating it. Doc. 80 at 32. Based on OCSLA's text, history, and purposes, the Court concluded that when Congress enacted Section 12(a), it delegated to the president the authority to withdraw areas from future leasing but reserved for itself only the power to undo those withdrawals. Doc. 80 at 9-29. The Court thus concluded that "Section 5 of Executive Order 13795, which purported to revoke prior presidential withdrawals of OCS lands for leasing, is unlawful, as it exceeded the President's authority under Section 12(a) of OCSLA." *Id.* at 30.

Defendants and Intervenors appealed the Court's order to the United States Court of Appeals for the Ninth Circuit.  Docs. 82-84.  While the appeals were pending, President Biden took office and issued Executive Order 13,990, Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis.  86 Fed. Reg. 7037 (Jan. 25, 2021) (the Biden Order).  Section 7 of the Biden Order rescinds Executive Order 13,795, thereby undoing the 2017 Revocation at issue in this case.  *Id.* at 7041.  The Ninth Circuit concluded that the Biden Order rendered this action moot.  It explained that "[b]ecause the terms of the challenged Executive Order are no longer in effect, the relevant areas of the OCS in the Chukchi Sea, Beaufort Sea, and Atlantic Ocean will be withdrawn from exploration and development activities regardless of the outcome of these appeals." Appeals Doc. 110 at 4.  It vacated this Court's judgment and instructed the Court to dismiss the case without prejudice, *id.* at 5, which this Court did on April 16, 2021, Doc. 96.

A few weeks ago, however, in one of his first acts in office, President Trump issued an executive order that reinstates the 2017 Revocation, Executive Order 14,153, Initial Rescissions of Harmful Executive Orders and Actions.  90 Fed. Reg. 8237 (Jan. 28, 2025) (the Trump Order).  Section 2(f) of the Trump Order rescinds the Biden Order.  *Id.*  This has the effect of putting back in place the 2017

Revocation, undoing the OCSLA 12(a) withdrawals put in place by President

Obama permanently to protect the sensitive and irreplaceable ocean resources of

the Arctic and Atlantic Oceans.  The Court previously concluded the 2017

Revocation was unlawful.  The Trump Order's reinstatement of the 2017

Revocation removes the predicate event that caused the Court to dismiss this case.[1]

## ARGUMENT

The Court should exercise its authority pursuant to Federal Rule of Civil

Procedure 60(b)(6) to vacate its order dismissing this case as moot, Doc. 96, and

reinstate its order and judgment declaring unlawful and vacating the 2017

---

[1] The (revived) 2017 Revocation is the action that unlawfully purports to undo prior withdrawals, not Section 2(f) of the Trump Order.  Section 2(f) revokes a revocation (Section 7 of the Biden Order).  Unlike other sections of the Trump Order that purport to revoke withdrawals, a revocation of a revocation does not implicate OCSLA section 12(a).  *See* Appeal Doc. 92 at 8-9 (explaining that section 7 of the Biden Order that rescinded the 2017 Revocation did not implicate section 12(a)).  This is why Plaintiffs seek relief from this Court with respect to the 2017 Revocation rather than challenging section 2(f) of the Trump Order directly.

President Trump has also acted to open other permanently withdrawn areas to future leasing by rescinding three other executive orders.  *See* 90 Fed. Reg. at 8239 (section 2(ccc)) (revoking President Biden's withdrawal in the nearshore Beaufort Sea); *id.* at 8240 (section 2(vvv)) (revoking President Biden's withdrawals in the Atlantic, Pacific, and Eastern Gulf); *id.* (section 2(www)) (revoking President Biden's withdrawals in the northern Bering Sea).  With respect to these other areas, the Trump Order purports to revoke permanent withdrawals directly, as opposed to reinstating a prior revocation.  Some Plaintiffs have challenged the new revocations in a separate lawsuit initiated today in this Court.

PLAINTIFFS' RULE 60(B)(6) MOTION
*League of Conservation Voters et al. v. Trump et al.,*
No. 3:17-cv-00101-SLG                          4

Revocation, Docs. 80 & 81.  Rule 60(b) is "available as a vehicle for vacating judgments whenever such action is appropriate to accomplish justice."  *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020) (cleaned up).

Parties must satisfy three requirements to bring a successful Rule 60(b)(6) motion: (1) the motion cannot be based on grounds delineated in Rule 60(b)(1)-(5); (2) it must be timely; and (3) the movants must "demonstrate 'extraordinary circumstances' justifying reopening the judgment."  *Id.* at 979 (citations omitted); *see also Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-cv-00245-SLG, 2024 WL 729530, at *6, n.57 (D. Alaska Feb. 22, 2024) (citing *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 468 (9th Cir. 2023)).  In assessing whether extraordinary circumstances are present, courts may consider "a wide range of factors" that may include "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process."  *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

Plaintiffs meet the rule's requirements: their request does not fall into any other Rule 60(b) category; it is timely, coming within a few weeks of the action that reinstates the 2017 Revocation; and, as described below, circumstances here are extraordinary.

President Trump's order reinstating his 2017 Revocation upends the core reason for this case's dismissal. When this case was dismissed as moot in 2021, it was because the 2017 Revocation was "no longer in effect," Appeals Doc. 110 at 4, and not foreseen to be in effect again. Indeed, the federal government specifically addressed the possibility of recurrence and rejected it, arguing that neither of the exceptions to mootness applied because President Biden's executive order undoing the 2017 Revocation was not "provisional[]" and there was "no 'reasonable expectation' that the President will reinstate Section 5 of the 2017 Executive Order." Appeal Doc. 88 at 11-12. The court had good reason not to expect that a president would again try to revoke a withdrawal. Prior to President Trump's 2017 Revocation, no president had ever purported to revoke a permanent withdrawal under OCSLA section 12(a). Doc. 62 at 21-22. Yet, as part of his extraordinary run of actions, some of which courts have already enjoined as likely unlawful, *see, e.g.*, *Washington v. Trump*, No. 2:25-cv-00127-JCC, 2025 WL 415165, at *7 (W.D. Wa. Feb. 6, 2025) (enjoining enforcement of birthright-citizenship-stripping executive order); *Am. Foreign Serv. Ass'n v. Trump*, 1:25-cv-00352-CJN, 2025 WL 435415, at *3 (D.D.C. Feb. 7, 2025) (enjoining placement of USAID workers on administrative leave); *New York v. Trump*, No. 25-cv-39-JJM-PAS, 2025 WL 357368, at *5 (D.R.I. Jan. 31, 2025) (enjoining freeze on

federal aid), this is exactly what President Trump has just done.  In short, what was

not reasonable to expect in 2021—"reinstat[ing]Section 5 of the 2017 Executive

Order," Appeal Doc. 88 at 11-12—is the unexpected reality in 2025.

Reinstating the Court's 2019 order would serve justice, *Bynoe*, 966 F.3d at

980, and conserve judicial resources, *see United States v. Strain*, No. 3:97-cr-

00004-TMB, 2019 WL 5399475, at *1 (D. Alaska Oct. 22, 2019) (citing *Carroll v.

Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)).  President Trump's recent executive

order simply brings his prior Executive Order 13,795, and the 2017 Revocation it

contains, back into existence.  The question at hand today of whether section 5 of

that very executive order is lawful is the same as it was in 2017.  It is a purely legal

question about the president's authority to unilaterally revoke permanent

withdrawals under OCSLA section 12(a), and it has already been fully briefed by

all parties and addressed by the Court.  Essential threshold questions have already

been briefed (in fact, twice)—whether sovereign immunity bars Plaintiffs' claims,

whether Plaintiffs require a private right of action to pursue their claims, whether

the Court may issue declaratory relief against the President, and whether Plaintiffs

adequately demonstrated standing when they commenced this case.  Doc. 45 at 8-

24 (order denying motion to dismiss) & Doc. 80 at 8-9 (order granting summary

judgment).  Requiring the parties to brief these issues anew would serve no

purpose.

Other factors that the Court considers in this "case-by-case inquiry," *Hall v.*

*Haws*, 861 F.3d 977, 987 (9th Cir. 2017), such as the lack of prejudice to the other

parties and the weak interest in judicial finality, *see Buck*, 580 U.S. at 123; *Bynoe*,

966 F.3d at 983, also weigh in favor.  Reinstating the Court's 2019 order would not

prejudice the non-moving parties.  It would be consistent with *United States v.*

*Munsingwear*, 340 U.S. 36, 39 (1950), pursuant to which the Ninth Circuit vacated

this Court's judgment.  Appeals Doc. 110 at 5.  Under *Munsingwear*, where a case

becomes moot due to happenstance while an appeal is pending, as it did in this

case, the appellate court will usually vacate the lower court judgment on appeal.

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).  The

doctrine seeks to ensure that appealing parties, whose appeal was dismissed as

moot through no fault of their own, will have a future opportunity to litigate the

issues that were on appeal.  *Munsingwear*, 340 U.S. at 39-40.  Here, Intervenors

(and Defendants) would be free to appeal the reinstated order.  They would "pick

up where they left off."  *See Bynoe*, 966 F.3d at 985 (citation omitted) (noting this

as a factor supporting a Rule 60(b) motion); *Kelly v. Wengler*, 822 F.3d 1085, 1098

(9th Cir. 2016) ("[M]odification of a court order is suitably tailored to the changed

circumstance when it would return both parties as nearly as possible to where they would have been absent the changed circumstances." (cleaned up)).

Although extraordinary circumstances, by definition, resist easy comparison, the circumstances here share characteristics with other situations in which courts have granted relief under Rule 60(b)(6). In *Keeling v. Sheet Metal Workers International Association Local Union 162*, for example, the court had originally dismissed a case when the parties entered into a settlement agreement. 937 F.2d 408, 410 (9th Cir. 1991). Following the dismissal, one party repudiated the agreement. *Id.* This post-judgment action undid the event (there, a settlement) that caused the court to dismiss the case. Accordingly, and even though the aggrieved party could "sue anew" for breach of the agreement, it was within the court's discretion under Rule 60(b)(6) to vacate its dismissal and return the parties to their pre-settlement status quo. *Id.* So too here, where President Trump's order in 2025 undid the Biden Order that had settled Plaintiffs' claims in 2021. *See also Stratman v. Babbitt*, 42 F.3d 1402 at *1 (9th Cir. 1994) (unpublished) (affording Rule 60(b)(6) relief when a settlement agreement was defective and the movant did not deliberately choose to ignore the risk of the defect); *Kelly*, 822 F.3d at 1098 (affirming post-dismissal modification of a settlement agreement and noting that

Rule 60(b) codifies courts' "inherent power to modify court orders in changed circumstances").

The change-of-law context is also roughly analogous. Courts act within their Rule 60(b)(6) discretion when they vacate dismissals due to an event (a change in the law) that undermines a key rationale for the court's ruling, particularly if, like here, the movant acted diligently to bring the matter to the court's attention and there is little prejudice to the other party. *See, e.g.*, *In re Pac. Far E. Lines, Inc.*, 889 F.2d 242, 250 (9th Cir. 1989) (approving Rule 60(b)(6) vacatur of dismissal based on a settlement agreement where a "complete surprise" post-judgment law undermined the settlement terms); *Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 WL 1090947, at *2 (9th Cir. Apr. 12, 2022) (mem.) (finding district court abused its discretion not to vacate a dismissal following a change in the law on which it relied).

For all these reasons, Plaintiffs respectfully request that the Court set aside its dismissal of this case as moot, Doc. 96, and reinstate its order and judgment, Docs. 80 & 81.

Respectfully submitted this 19th day of February, 2025.

_s/ Erik Grafe_

Erik Grafe (Alaska Bar No. 0804010)
Eric P. Jorgensen (Alaska Bar No. 8904010)
Hannah Payne Foster (Alaska Bar No. 2105045)
EARTHJUSTICE

_Attorneys for Plaintiffs League of Conservation Voters,
Sierra Club, Alaska Wilderness League, Defenders of
Wildlife, Northern Alaska Environmental Center, Center
for Biological Diversity, and Greenpeace, Inc._

Jaclyn H. Prange (CA Bar No. 270929, _pro hac vice
motion forthcoming_)
Irene V. Gutierrez (CA Bar No. 252927, _pro hac vice
motion forthcoming_)
NATURAL RESOURCES DEFENSE COUNCIL

_Attorneys for Plaintiffs League of Conservation Voters,
Natural Resources Defense Council, Sierra Club,
Alaska Wilderness League, Defenders of Wildlife,
Northern Alaska Environmental Center, Center for
Biological Diversity, and Greenpeace, Inc._

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITS**

I certify that this document contains 2,285 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule 7.4(a)(2).

Respectfully submitted this 19th day of February, 2025.

*s/ Erik Grafe*
Erik Grafe
EARTHJUSTICE

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2025, a copy of the foregoing

PLAINTIFFS' RULE 60(b)(6) MOTION was served electronically on all counsel

of record using the CM/ECF system.

*s/ Erik Grafe*
Erik Grafe
EARTHJUSTICE
